**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HOUTEX BUILDERS, LLC,** *et al.*, | § | **Case No. __-_____** |
| | § | **Chapter 11** |
| **DEBTORS.** | § | |
| | § | |
| | § | |

**DEBTORS' EMERGENCY MOTION FOR ORDER COMPELLING PRODUCTION**
**OF RECORDED INFORMATION PURSUANT TO 11 U.S.C. § 542(E)**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Houtex Builders, LLC ("HTB"), 2203 Looscan, LLC ("Looscan") and 415 Shadywood, LLC ("Shadywood") (collectively, the "Debtors") file this *Debtors' Emergency Motion for Order Compelling Production of Recorded Information Pursuant to 11 U.S.C. § 542(e)* (the "Motion") requesting that this Court order that Robert Parker ("Parker") and CD Homes, LLC ("CD Homes") produce recorded

information, including books, documents, records, and papers, relating to the Debtors' property and financial affairs.  In support of the Motion, the Debtors respectfully submit the following:

## INTRODUCTION

1.       Section 542(e) of the Bankruptcy Code provides that this Court may compel any person to produce recorded information, including books, documents, records, and papers, relating to the Debtors' property and financial affairs.  The Debtors are entitled to these documents not only because they are property of the estates, but also because the documents are necessary for the orderly administration of the bankruptcy, including preparation of the Debtors' schedules. Moreover, the documents and information requested herein are necessary so that the Debtors may proceed with the sale of their assets.

2.       The Debtors were special purposes entities created for the purposes of constructing and selling new homes in Houston and the surrounding area.  Each of the Debtors had a construction contract with CD Homes, which was managed by Parker.  Until recently, the Debtors were also managed by Parker.  Despite the revocation of Parker's authority, the Debtors' requests for recorded information have largely been ignored.  Now that they have filed voluntary petitions for bankruptcy, the Debtors request the Court's assistance in retrieving the information that rightfully belongs to them, including the Debtors' financial records, business records, and other documents that relate to the construction of the homes, including construction plans and permits.

## JURISDICTION AND VENUE

3.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are §§ 542(e) of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

### A.    The Debtor's Bankruptcy Case

4.    On August 22, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").

5.    The Debtors continue to administer their assets as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtor's bankruptcy case.

6.    The purpose of the Debtors filing chapter 11 is to wind-down the Debtor's residential construction business operations for the benefit of creditors, including, but not limited to, monetizing the Debtors' assets (including real property, improvements and fixtures located thereon, rights to prepaid services and rights to construction warranties associated with the property), liquidating claims through the claims objection process and, if sufficient funds exist, confirming a liquidating plan under the Bankruptcy Code.

### B.    The Debtors' Formation and Operations

7.    The Debtors are special purpose entities established for the purpose of constructing new houses.  Debtor Houtex Builders, LLC owns the properties located at 3 Thornblade Circle, The Woodlands, TX 77389 ("Thornblade") and 5325 Lynbrook Dr., Houston, TX 77056 ("Lynbrook"). The houses on Thornblade and Lynbrook are completely built and these properties are currently being marketed for sale through a real estate agent.  Debtor 215 Shadywood, LLC owns the property located at 415 Shadywood Rd, Houston, TX 77057 ("Shadywood").  The construction of the house on Shadywood is incomplete.  Debtor 2203 Looscan Lane, LLC owns the property located at 2203 Looscan Ln., Houston, TX 77019 ("Looscan" and collectively with Thornblade, Lynbrook, and Shadywood, the "Properties").  The construction of the house on Looscan is incomplete.

8.      The Debtors are each owned 100% by Charles C. Foster and Lily Foster (together, the "Fosters").

9.      Each of the Debtors is a party to a certain Contractor Agreement with CD Homes. CD Homes is the general contractor for the houses on the Properties. As a result, CD Homes was responsible for obtaining necessary permits and preparing documentation for loan draws. Moreover, the construction contracts provided that CD Homes would provide the Debtors with copies of all bills and invoices as requested. Parker is the principal of CD Homes.

10.      The Fosters and Parker have had a business relationship spanning approximately ten years. Over the course of this time, Parker, through CD Homes, has constructed custom built homes that the Fosters have financed by providing capital and guaranteeing construction loans. As a general rule, Parker was charged with the responsibility of managing the project, including purchasing the property, securing appropriating financing for the project, construction of the home, and managing the sale process. With regard to earlier projects, the Fosters and Parker had several successful ventures and several others that barely broke even. As the relationship progressed, however, Parker's poor management practices led to excessive spending and out-of-control borrowing.

11.      Charles Foster met with Parker periodically in order to discuss the progress of the various projects. Parker would often provide sales and marketing information regarding the properties that ultimately turned out to be extremely over optimistic. Parker would also regularly provided Charles Foster with financing documents for execution on the various properties. Originally, these documents generally consisted of construction loans and accompanying guarantees. As time progressed, Parker began the practice of presenting Charles Foster with documents for lines of credit for the properties "just in case."

12.     During the relationship, the Fosters discovered that they were able to borrow money at a rate lower than those from traditional construction loans through their own banking relationships.  The Fosters presented this information to Parker with the idea that the reduced interest would decrease the carrying costs of the homes, thereby decreasing the overall risk of the projects.  Parker agreed, and the Fosters began utilizing these personal lines to provide equity infusions for the entities to use in developing the properties.

13.     The Fosters became concerned upon the sale of a property located at 5305 Green Tree, Houston, Texas ("Green Tree") in February of 2016.  The Fosters financed the home by borrowing money personally to provide equity infusions for the entity.  The Fosters estimated that they would receive approximately $2 million from the sale, which would thereby provide them with the ability to retire the loans and achieve a profit distribution.  To their dismay, this did not occur.  When questioning Parker about the proceeds from the sale, Parker explained that he needed the funds the Fosters originally provided for use in the other developments.  Foster further learned that Parker had been financing the construction of Green Tree through hard money loans.  Given that the loans on Green Tree carried a 15% interest rate, the proceeds that Foster anticipated based on his 2% rate on his personal line had quickly evaporated.

14.     When Charles Foster raised concerns about the lending on Green Tree, Parker told him not to worry, and that the Fosters would get their money back through the sale of a property located at 5428 Longmont, Houston, Texas ("Longmont").  Of course, when Longmont was sold in January of 2017, the story was the same.  Parker again stated that the money the Fosters personally borrowed was used on other properties, and Longmont needed a hard money loan to complete construction.  At this point, the Fosters felt they were in too deep, with their money spread across too many different projects.  Moreover, the Fosters were left in a position of not knowing exactly where their equity injection had been deployed.

15.     The sale of 5341 Cedar Creek Dr., Houston, TX 77056 ("Cedar Creek") raised further concerns for the Fosters.  At the closing of Cedar Creek in January 2018, Charles Foster was informed there was a new lien filed against the property that had not shown up on the earlier title report and had been placed on the property just before the scheduled closing.  The Fosters learned that new lien had been placed on the property by Parker as manager of entity that owned the property and was made for the benefit of Hampton Lane Builders, LLC, another entity owned by Parker.  Because the title company would not close the transaction without satisfying these liens, the Fosters authorized this newly discovered lien to be paid at the closing of Cedar Creek.

16.     In January 2018, the relationship between the Fosters and Parker changed drastically when Parker started asking Charles Foster to loan him money.   Parker's requests for loans started becoming more frequent and urgent.  The Fosters started taking a more hands-on role monitoring the invoices related to the construction of the Properties.  These expenses included payments of $60,000 per month to Parker to manage construction plus paying two other supervisors $20,000 per month.  Further, the Fosters discovered that Parker was drawing down on the construction loans to cover expenses already paid by the Fosters.

17.     The Debtors have only recently discovered several liens that have been placed on the Properties other than the liens for the construction loans.  The Debtors dispute the validity of the liens and believe that the liens are made by entities affiliated with Parker.  The Debtors commenced these chapter 11 cases to sell the properties free and clear of the liens and have the Bankruptcy Court determine the validity of these liens and the associated claims.

18.     Based on their increasing concerns regarding Parkers management and construction practices, the Fosters revoked Parker's authority and role as manager of the Debtors during 2018.  Despite requests for the Debtors' records, Parker has failed to turnover requested information.

## RELIEF REQUESTED

19.     The Debtors file this Motion and requests that the Court enter an order compelling Parker and CD Homes turn over the following categories of documents within five (5) days from the date of the order compelling production:

(a)  The Debtors' books and records of accounts;

(b)  Minutes of the proceedings of the owners or members of the governing authority relating to the Debtors;

(c)  A current record of the name and mailing address of each owner or member of the Debtors;

(d)  Copies of the Debtors' federal, state, and local tax returns along with any other information related to taxation of the Entities;

(e)  All of the Debtors' bank statements;

(f)  All documents reflecting any loans, lines of credit, or other debts incurred by the Debtors, including copies of any related guaranties;

(g)  All of the Debtors' financial reports and statements of any kind;

(h)  All documents provided to any accounting, auditing firm, bank, or other third party related to the Debtors;

(i)  All of the Debtors' insurance policies;

(j)  Any and all documents evidencing payments, distributions, or other transfers made by the Debtors;

(k)  All invoices for work performed related to the Debtors;

(l)  Any contracts, agreements, or other documents executed by or on behalf of the Debtors;

(m) All documents relating to any existing or prospective liens against the Debtors' assets;

(n)  Any and all records relating to permitting related to the Debtors;

(o)  All plans, blueprints, or any other similar documentation related to the Debtors and their assets, including the paper permitted plans red-stamped by the City of Houston or other governmental entity or city;

(p)  All documents related to services or items that have been pre-paid by or on behalf of the Debtors;

(q)  All documents related to contractor/sub-contractor warranties associated with properties owned by the Debtors;

(r)  All information necessary to access any internet based record keeping programs or software, including both user names and passwords for the Debtors; and

(s)  Any and all other documents that are the property of the Debtors that are not otherwise described herein.

## ARGUMENTS AND AUTHORITIES

20.    The Bankruptcy Code provides plainly provides that Parker and CD Homes are required to turn over documents they have related to the Debtors.  More specifically, 11 U.S.C. § 542(e) states as follows:

> Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.[1]

The nineteen categories of information described above fall under Section 542(e)'s purview because they relate to the Debtors' property or financial affairs.  Therefore, the Debtors request the Court enter an order compelling Parker and CD Homes to turn over the requested documents so that the Debtors may prepare their schedules for filing and otherwise prepare for the sale of the Properties.

## NOTICE

21.    Notice of this Motion has been provided by delivery to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) each of the creditors identified on each

---

[1]    Although the statute specifically references providing such information to the trustee, 11 U.S.C. § 1107(a) provides that a debtor in possession "shall have all the rights . . . and powers . . . of a trustee."

Debtors' list of twenty largest unsecured creditors; and (c) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002.

22.     Notice has also been provided to both Parker and CD Homes.  Parker has been served via email at jpparker2004@yahoo.com and FedEx overnight to 2402 Elmen Street, Houston, Texas 77019.  CD Homes was served via FedEx overnight addressed to its registered agent, Harold N. May at 1500 South Dairy Ashford, Suite 325, Houston, Texas 77077.

23.     In light of the nature of the relief requested in this Motion, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

24.     No prior motion or application for the relief requested herein has been made to this Court or any other court.

## EMERGENCY CONSIDERATION

25.     The Debtors require the information requested in order to prepare their bankruptcy schedules in the time period required by the Bankruptcy Code.  Furthermore, the Debtors require this information in order to prepare for and consummate the sale of the Properties.  Given that the Debtors have already formally requested this information from Parker multiple times, including via letter from the undersigned counsel dated August 13, 2018, both Parker and CD Homes should be able to turn these documents over in short order.  Accordingly, the Debtors respectfully request that the Court consider this Motion on an emergency basis.

Dated:  August 23, 2018

Respectfully submitted,

DIAMOND McCARTHY LLP

/s/ Charles M. Rubio
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
J. Maxwell Beatty
TBA No. 24051740
Two Houston Center
909 Fannin, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

*Proposed Counsel to Debtors
and Debtors-In-Possession*

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on (a) the Office of the United States Trustee for the Southern District of Texas; (b) each of the creditors identified on each of the Debtors' list of twenty largest unsecured creditors; and (c) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002, within one business day of the filing.  This document was also served on the Robert Parker and CD Homes, LLC as described below:

Robert Parker via email and FedEx overnight at the following addresses:

**Email:**
jpparker2004@yahoo.com

**FedEx:**
2402 Elmen Street
Houston, Texas 77019

CD Homes, LLC via FedEx overnight addressed to its registered agent, Harold N. May at the following address:

1500 South Dairy Ashford
Suite 325
Houston, Texas 77077

*/s/ Charles M. Rubio*