UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| **HOUTEX BUILDERS, LLC,** *et al.*, | § § | Case No. \_\_-\_\_\_\_\_ |
| DEBTORS. | § § § | Chapter 11 |

**EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTORS
TO OBTAIN CREDIT AND USE PROCEEDS**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Houtex Builders, LLC; 415 Shadywood, LLC and 2203 Looscan Lane, LLC, as debtors and debtors in possession (collectively, the "Debtors") file this motion (the "Motion") for authorization to obtain credit pursuant to section 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") and for authorization to use the proceeds pursuant to § 363 of the Bankruptcy Code.

MOTION FOR ORDER AUTHORIZING DEBTORS TO OBTAIN CREDIT

**JURISDICTION**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are §§ 363 and 364 of the Bankruptcy Code and rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

4. The Debtors are special purpose entities established for the purpose of constructing new houses. Debtor Houtex Builders, LLC owns the properties located at 3 Thornblade Circle, The Woodlands, TX 77389 ("Thornblade") and 5325 Lynbrook Dr, Houston, TX 77056 ("Lynbrook"). The houses on Thornblade and Lynbrook are completely built and these properties are currently being marketed for sale through a real estate agent. Debtor 415 Shadywood, LLC owns the property located at 415 Shadywood Rd., Houston, TX 77057 ("Shadywood"). The construction of the house on Shadywood is incomplete. Debtor 2203 Looscan Lane, LLC owns the property located at 2203 Looscan Ln., Houston, TX 77019 ("Looscan" and collectively with Thornblade, Lynbrook, and Shadywood, the "Properties"). The construction of the house on Looscan is incomplete.

5. The Debtors are each owned 100% by Charles C. Foster and Lily Foster (together, the "Fosters").

6. Each of the Debtors is a party to a certain Contractor Agreement with CD Homes, LLC ("CD Homes"). CD Homes is the general contractor for the building the houses on the Properties. Robert Parker ("Parker") is the principal of CD Homes.

7. The Fosters and Parker have had a business relationship spanning approximately ten years. Over the course of this time, Parker, through CD Homes, has constructed custom built

homes that the Fosters have financed by providing capital and guaranteeing construction loans. As a general rule, Parker was charged with the responsibility of managing the project, including purchasing the property, securing appropriating financing for the project, construction of the home, and managing the sale process. With regard to earlier projects, the Fosters and Parker had several successful ventures and several others that barely broke even. As the relationship progressed, however, Parker's poor management practices led to excessive spending and out-of-control borrowing.

8.  Charles Foster met with Parker periodically in order to discuss the progress of the various projects. Parker would often provide sales and marketing information regarding the properties that ultimately turned out to be extremely over optimistic. Parker would also regularly provided Charles Foster with financing documents for execution on the various properties. Originally, these documents generally consisted of construction loans and accompanying guarantees. As time progressed, Parker began the practice of presenting Charles Foster with documents for lines of credit for the properties "just in case."

9.  During the relationship, the Fosters discovered that they were able to borrow money at a rate lower than those from traditional construction loans through their own banking relationships. The Fosters presented this information to Parker with the idea that the reduced interest would decrease the carrying costs of the homes, thereby decreasing the overall risk of the projects. Parker agreed, and the Fosters began utilizing these personal lines to provide equity infusions for the entities to use in developing the properties.

10. The Fosters became concerned upon the sale of a property located at 5305 Green Tree, Houston, Texas ("Green Tree") in February of 2016. The Fosters financed the home by borrowing money personally to provide equity infusions for the entity. The Fosters estimated that they would receive approximately $2 million from the sale, which would thereby provide them with

the ability to retire the loans and achieve a profit distribution.  To their dismay, this did not occur.  When questioning Parker about the proceeds from the sale, Parker explained that he needed the funds the Fosters originally provided for use in the other developments.  Foster further learned that Parker had been financing the construction of Green Tree through hard money loans.  Given that the loans on Green Tree carried a 15% interest rate, the proceeds that Foster anticipated based on his 2% rate on his personal line had quickly evaporated.

11. When Charles Foster raised concerns about the lending on Green Tree, Parker told him not to worry, and that the Fosters would get their money back through the sale of a property located at 5428 Longmont, Houston, Texas ("Longmont").  Of course, when Longmont was sold in January of 2017, the story was the same.  Parker again stated that the money the Fosters personally borrowed was used on other properties, and Longmont needed a hard money loan to complete construction.  At this point, the Fosters felt they were in too deep, with their money spread across too many different projects.  Moreover, the Fosters were left in a position of not knowing exactly where their equity injection had been deployed.

12. The sale of 5341 Cedar Creek Dr., Houston, TX 77056 ("Cedar Creek") raised further concerns for the Fosters.  At the closing of Cedar Creek in January 2018, Charles Foster was informed there was a new lien filed against the property that had not shown up on the earlier title report and had been placed on the property just before the scheduled closing.  The Fosters learned that new lien had been placed on the property by Parker as manager of entity that owned the property and was made for the benefit of Hampton Lane Builders, LLC, another entity owned by Parker.  Because the title company would not close the transaction without satisfying these liens, the Fosters authorized this newly discovered lien to be paid at the closing of Cedar Creek.

13. In January 2018, the relationship between the Fosters and Parker changed drastically when Parker started asking Charles Foster to loan him money.   Parker's requests for loans started

becoming more frequent and urgent.  The Fosters started taking a more hands-on role monitoring the invoices related to the construction of the Properties.  These expenses included payments of $60,000 per month to Parker to manage construction plus paying two other supervisors $20,000 per month.  Further, the Fosters discovered that Parker was drawing down on the construction loans to cover expenses already paid by the Fosters.

14. The Debtors have only recently discovered several liens that have been placed on the Properties other than the liens for the construction loans.  The Debtors dispute the validity of the liens and believe that the liens are made by entities affiliated with Parker.  The Debtors commenced these chapter 11 cases to sell the properties free and clear of the liens and have the Bankruptcy Court determine the validity of these liens and the associated claims.

## **PRE-PETITION LIENS**

15. The real property liens recorded against each of the Debtors as of the Petition Date is described in the following chart:

| Grantor | Grantee | Property | Date of Document | Date Recorded | Stated Amount of Lien |
|---|---|---|---|---|---|
| 415 Shadywood, LLC | Independent Bank | Shadywood | October 24, 2014 | October 27, 2014 | $3,375,000 |
| 415 Shadywood, LLC | PENSCO Trust Company, LLC | Shadywood | June 15, 2017 | May 10, 2018 | $347,600 |
| 2203 Looscan Lane, LLC | Community Bank of Texas, N.A. | Looscan | August 29, 2014 | September 2, 2014 | $3,618,875 |
| 2203 Looscan Lane, LLC | Hmaidan & Hmaidan, LLC | Looscan | June 1, 2017 | June 8, 2018 | $783,000 |
| Houtex Builders, LLC | Community Bank of Texas, N.A. | Lynbrook | May 15, 2013 | May 17, 2013 | $1,921,000 |
| Houtex Builders, LLC | Jim D. Nored | Lynbrook | May 13, 2013 | May 22, 2018 | $339,000 |

| Houtex Builders, LLC | Jim D. Nored | Lynbrook | December 23, 2014 | May 22, 2018 | $90,640 |
| Houtex Builders, LLC | Spirit of Texas Bank | Thornblade | July 3, 2014 | July 7, 2014 | $2,605,250 |
| Houtex Builders, LLC | Great Southwest Fincial Corp. | Thornblade | July 2, 2014 | July 18, 2018 | $223,000 |
| Houtex Builders, LLC | Great Southwest Fincial Corp. | Thornblade | February 5, 2015 | July 18, 2018 | $126,500 |
| Houtex Builders, LLC | Jim D. Nored | Thornblade | September 29, 2017 | August 8, 2018 | $244,00 |
| Houtex Builders, LLC | Jim D. Nored | Thornblade | September 29, 2017 | August 8, 2018 | $118,650 |

## **RELIEF REQUESTED**

16.     The Debtors seek entry of an order substantially in the form of the attached hereto to authorize the Debtors obtain credit from Charles Foster (in such capacity, the "Lender") pursuant to the commitment letter attached hereto as Exhibit A.  The purpose of these funds is pay for the chapter 11 bankruptcy process and maintenance of the Properties so that the Debtors can conduct an organized sale of the Properties "free and clear" of the disputed liens and maximize the value to all stakeholders while a determination can be made on the validity of the disputed liens.

17.     The Debtors request authority to use the proceeds pursuant to their respective budgets attached hereto as Exhibit B (the "Houtex Budget"), Exhibit C (the "Shadywood Budget") and Exhibit D (the "Looscan Budget").

18.     The Debtors request that the advances made by the Lender receive the following protections: (1) (a) with respect amounts owed to the Lender by Houtex Builders, LLC (the "Houtex Loan"), the Lender will receive an administrative expense claims against Houtex Builders, LLC, (b) with respect to amounts owed to the Lender by 415 Shadywood LLC (the "Shadywood Loan"), the

Lender will receive an administrative expense claim against 415 Shadywood, LLC, (c) with respect to amounts owed to the Lender by 2203 Looscan Lane, LLC (the "Looscan Loan"), the Lender will receive an administrative expense claim against 2203 Looscan Lane, LLC; (2) a lien on property of the Debtors' estates that is not otherwise subject to a lien, and (3) a lien on the Debtors' Properties as follows: (a) with respect to the Houtex Loan, a second lien immediately following the first lien of Spirit of Texas Bank on the property known as Thornblade, and a second lien immediately following the first lien of Community Bank on Lynbrook; (b) with respect to the Shadywood Loan, a second lien immediately following the first lien of Independent Bank on Shadywood; (c) with respect to the Looscan Loan, a second lien immediately following the first lien of Community Bank on the property known as 2203 Looscan Lane.

## SUMMARY OF PRINCIPAL TERMS OF DIP FACILITY

19.     Pursuant to Bankruptcy Rule 4001(c) and (d), the following is a concise statement and summary of the proposed material terms of Commitment Letter and the Interim Order:[1]

| Material Provision | Summary Description of Material Provision |
|---|---|
| **DIP Credit Agreement Parties** Fed. R. Bankr. P. 4001(c)(1)(B) | **Borrowers**: Houtex Builders, LLC; 415 Shadywood, LLC and 2203 Looscan Lane, LLC <br> **DIP Lender**: Charles C. Foster |
| **Amount of Borrowing** Fed. R. Bankr. P. 4001(c)(1)(B) | Commitment to loan up to $186,000.00 (the "Commitment") to the Debtors as follows: <br> 1. Up to $60,000.00 to HOUTEX Builders, LLC (the actual amount loaned together with any applicable interest and fees, the "Houtex Loan"); <br> 2. Up to $65,000.00 to 415 Shadywood, LLC (the actual amount loaned together with any applicable interest and fees, the "Shadywood Loan"); <br> 3. Up to $61,000.00 to 2203 Looscan Lane, LLC (the actual amount loaned together with any applicable interest and fees, the "Looscan Loan"). |

---

[1] This summary is qualified, in its entirety by the provisions of the Commitment Letter.

| Material Provision | Summary Description of Material Provision |
|---|---|
| **Purpose/Use of Funds** Fed. R. Bankr. P. 4001(c)(1)(B) | The proceeds shall generally be used (1) to pay for the necessary costs to maintain the Properties until they can be sold; these costs include security, utilities, and insurance; (2) to pay the fees, costs and expenses of the Debtor's professionals; and (3) to pay the fees for the U.S. Trustee. |
| **Maturity Date** Fed. R. Bankr. P. 4001 (c)(1)(B) | The amounts owed to Lender will become immediately due and owing on the date that is 6 months from August 23, 2018. |
| **Interest Rate** Fed. R. Bankr. P. 4001(c)(1)(B) | Three percent (3%) |
| **Fees** Fed. R. Bankr. P. 4001(c)(1)(B) | No fees. |
| **Events of Default** Fed. R. Bankr. P. 4001 (c)(1)(B)(iii) | The loans become immediately due and owing upon any of the following: (i) any of the Chapter 11 Cases convert to a case under chapter 7 of the Bankruptcy Code, (ii) a chapter 11 trustee is appointed in any of the Chapter 11 Cases, (iii) the confirmation of a plan in the Chapter 11 Cases, or (iv) the principal asset of each Debtor is sold. |
| **Liens and Priorities** Fed. R. Bankr. P. 4001(c)(1)(B)(i), (ii) | The Lender's claim shall be secured by a lien as follows: <br><br>1. With respect to the Houtex Loan, the claim will be secured by a second lien immediately following the first lien of Spirit of Texas Bank on Thornblade, and the claim will be secured by a second lien immediately following the first lien of Community Bank on Lynbrook; <br>2. With respect to the Shadywood Loan, the claim will be secured by a second lien immediately following the first lien of Independent Bank on Shadywood; <br>3. With respect to the Looscan Loan, the claim will be secured by a second lien immediately following the first lien of Community Bank on Looscan. |
| **Conditions Precedent to All Drawing** Fed. R. Bankr. P. 4001(c)(1)(B) | The Bankruptcy Court must approve the commitment facility. The draws must be for Permitted Expenses (as defined in the Commitment Letter) as set out in the Budget. |

**BASIS FOR RELIEF**

A.  **Financing Under § 364(c)**

20. Bankruptcy Code § 364 authorizes a debtor to obtain, in certain circumstances, post-petition financing on a secured basis. Specifically, § 364(c) of the Bankruptcy Code states that the Court, after notice and a hearing, may authorize a debtor that is unable to obtain credit allowable as an administrative expense under § 503(b)(1) of the Bankruptcy Code to obtain credit or incur debt:

> a) with priority over any or all administrative expenses of the kind specified in § 503(b) or 507(b) of the Bankruptcy Code;
>
> b) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> c) secured by a junior lien on property of the estate that is subject to a lien.

Thus, a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has been unable to obtain adequate unsecured credit, and the proposed borrowing is in the best interests of its estate. *See, e.g., In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating that, with respect to post-petition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *Richmond Leasing Co. v. Capital Bank, NA.*, 762 F.2d 1303, 1311 (5th Cir. 1985) (noting that "more exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially"); *see also* 3 Collier on Bankruptcy ¶ 364.03, at 364-7-18 (15th ed. rev.).

21. The statutory requirement for obtaining post-petition credit under § 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that the debtor-in-possession is "unable to obtain unsecured credit allowable under § 503(b)(l) of [the Bankruptcy Code] as an administrative expense." *See Ames Dep't Stores*, 115 B.R. at 37–39 (holding that a debtor must show it

has made a reasonable effort to seek other sources of financing under Bankruptcy Code §§ 364(a) and (b)).

22. Given the Debtors' asset base and balance sheet, the Debtors are unable to borrow money on an unsecured basis. Thus, the Debtors believe entering Commitment Letter with superpriority administrative claims, a lien on unencumbered property of the estate, a junior lien on encumbered property of the estate is appropriate under the circumstances of these Chapter 11 Cases.

23. The loans under the Commitment Letter are necessary to preserve the assets of the Debtors' estates. The Properties require security, utilities, and insurance. In order to fund those expenses, the Debtors need access to the liquidity provided by the Commitment Letter.

24. For these reasons, the Debtor submits that entry into the Commitment Letter is in the best interests of the Debtors' estates, is necessary to preserve the value of the Properties, and is an exercise of the Debtors' sound and reasonable business judgment.

**B.     Financing Under § 364(d)**

25. In addition to authorizing financing under § 364(c) of the Bankruptcy Code, courts also may authorize a debtor to obtain post-petition credit secured by a lien that is senior or equal in priority to existing liens on the encumbered property, without the consent of the existing lien holders, if the debtor cannot otherwise obtain such credit and the interests of existing lien holders are adequately protected. *See* 11 U.S.C. § 364(d)(1). The Debtors seek approval of the Commitment Letter under § 364(d)(1) of the Bankruptcy Code as follows:

(a) with respect to the Houtex Loan, a second lien immediately following the first lien of Spirit of Texas Bank on the property known as Thornblade, and a second lien immediately following the first lien of Community Bank on Lynbrook;

(b) with respect to the Shadywood Loan, a second lien immediately following the first lien of Independent Bank on Shadywood; and

(c) with respect to the Looscan Loan, a second lien immediately following the first lien of Community Bank on the property known as 2203 Looscan Lane.

26. When determining whether to authorize a debtor to obtain credit secured by a "priming" lien as authorized by § 364(d) of the Bankruptcy Code, courts focus on whether the transaction will enhance the value of the debtor's assets and provides "adequate protection" to those parties whose liens are primed. *See* 11 U.S.C. § 364(d)(1)(B). What constitutes adequate protection is decided on a case-by-case basis, and adequate protection may be provided in various forms, including payment of adequate protection fees, payment of interest, or granting of replacement liens or administrative claims. *See, e.g., In re Realty Sw. Assocs.*, 140 B.R. 360 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process" (citations omitted)).

27. The loans provided under the Commitment Letter will enhance the value of the Properties for all creditors and stakeholders. The loan proceeds are being used to fund an organized sale process of the Properties. The sale process will allow for competitive bidding to maximize the value of the Properties. The Debtors contend that the sale process will result in substantially higher value for the Properties rather than having the Properties sold pursuant to a foreclosure sale outside of bankruptcy or pursuant to a chapter 7 proceeding. Considering the relatively small size of the budget compared to the value of the Properties, the Debtors contend that funding an organized sale process adequately protects the interests of any valid junior lien holder.

**EMERGENCY INTERIM RELIEF**

28. Bankruptcy Rule 4001(c)(2) governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

29. The Debtors have an immediate post-petition need to access the funds provided by the Commitment Letter. The Debtors cannot maintain the value of their Properties during the pendency of its Chapter 11 Case without access to cash and therefore the Debtors' estates would suffer immediate and irreparable harm to the detriment of all creditors and other parties-in-interest without access to funds.

30. The Debtors, therefore, seeks immediate authority to access the funds available under the Commitment Letter on an interim basis and as set forth in this Motion and in the Interim Order to prevent immediate and irreparable harm to its estate pending the Final Hearing pursuant to Bankruptcy Rules 4001(b) and 4001(c). Accordingly, to the extent the Debtors require post-petition financing, the Debtors respectfully submit they have satisfied the requirements of Bankruptcy Rule 4001 to support an expedited preliminary hearing and relief on an interim basis.

**REQUEST FOR FINAL HEARING**

31. Pursuant to Bankruptcy Rule 4001(c)(2), the Court may commence a final hearing on a motion for authority to obtain credit no earlier than fourteen (14) days after service of the motion. The Debtors request the Court set a date for the final hearing as soon as practicable and fix the date and time prior to the final hearing for parties to file objections to the relief requested by this Motion.

## WAVIER OF BANKRUPTCY RULES REGARDING
## NOTICE OF STAY OF AN ORDER

32. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rules 6004(h), 7062, 9014 or otherwise for all of the reasons described above.

## NOTICE

33. Notice of this Motion has been provided by e-mail, facsimile, or overnight delivery to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the creditors identified on the Debtors' list of 20 largest unsecured creditors; and (c) those persons who have formally appeared in the Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002;

## NO PRIOR REQUEST

34. No prior motion for the relief requested herein has been made to this Court or any other court.

**CONCLUSION**

35. The Debtors respectfully request that this Court enter an order substantially in the form of the proposed order attached hereto and grant any other relief that is just and proper.

Dated: August 23, 2018

Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/ Charles M. Rubio*
Charles M. Rubio
TBA No. 24083768
J. Maxwell Beatty
TBA No. 24051740
Thomas H. Moss
TBA No. 24090282
909 Fannin, Suite 3700
Houston, TX 77010
(713) 333-5100
crubio@diamondmccarthy.com
mbeatty@diamondmccarthy.com
tmoss@diamondmccarthy.com

*Proposed Counsel to Debtors
and Debtors-In-Possession*