**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HOUTEX BUILDERS, LLC,** *et al.,* | § | **Case No. 18-34658** |
| | § | **Chapter 11** |
| **DEBTORS.** | § | |
| | § | |
| | § | |

**EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTORS**
**TO OBTAIN CREDIT AND USE PROCEEDS PURSUANT TO**
**SECOND FUNDING COMMITMENT LETTER**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Houtex Builders, LLC; 415 Shadywood, LLC and 2203 Looscan Lane, LLC, as debtors and debtors in possession (collectively, the "Debtors") file this motion (the "Motion") for authorization to obtain credit pursuant to section 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") and for authorization to use the proceeds pursuant to

MOTION FOR ORDER AUTHORIZING DEBTORS TO OBTAIN CREDIT

the second funding commitment letter attached hereto as <u>Exhibit A</u> (the "<u>Second Funding</u> <u>Commitment Letter</u>").

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are §§ 363 and 364 of the Bankruptcy Code and rule 4001 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy</u> <u>Rules</u>").

## BACKGROUND

4. On August 23, 2018 ("<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code thereby commencing the Chapter 11 Cases.

5. Prior to the Petition Date, the Debtors operated as special-purpose entities established for the purpose of constructing new houses.

## A. Debtor-in-Possession Financing

6. On August 23, 2018, the Debtors filed their *Emergency Motion for Order Authorizing Debtors to Obtain Credit and Use Proceeds* [ECF No. 5] (the "<u>DIP Motion</u>"). Through the DIP Motion, the Debtors sought authority to collectively borrow up to $186,000.00 from Charles Foster (the "<u>DIP Financing</u>") in order to pay for chapter 11 expenses, maintenance for the Debtors' properties, and U.S. Trustee fees. DIP Motion at ¶ 16–19.

7. On September 7, 2018, the Court entered an *Interim Order Authorizing Debtors to Obtain Credit* [ECF No. 36] (the "<u>Interim DIP Order</u>"). The Interim DIP Order permits each of the

Debtors to borrow specific amounts[1] pursuant to the terms of the original commitment letter (the "First Funding Commitment Letter") and use such amounts to "pay all ordinary and necessary expenses in the ordinary course of its business" for the purposes contained in the Debtors' budgets, which were attached to the Interim DIP Order (the "Original Budgets").

8.     Each Original Budget covered a thirteen-week period beginning the week of August 20, 2018 and ending November 17, 2018.

9.     On September 27, 2018, the Court issued a *Final Order Authorizing Debtors to Obtain Credit* [ECF No. 70] (the "Final DIP Order").  Like the Interim DIP Order, the Final DIP order approved the Original Budgets, though the Final DIP Order specifies that "unused amounts under the Budgets SHALL NOT roll forward and are NOT available to the Debtors for future periods under the Budgets."

**B.     Sale Process**

10.     On August 23, 2018, the Debtors filed their *Motion, pursuant to Bankruptcy Code Sections 105(a), 363, and 365, and Bankruptcy Rules 2002, 6004, and 6006, for Entry of: (I) Order (A) Approving Sale and Bidding Procedures in Connection with Sale of Assets of the Debtors (B) Approving Form and Manner of Notice, (C) Scheduling Auction and Sale Hearing, (D) Authorizing Procedures Governing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (E) Granting Related Relief; and (II) Orders (A) Approving Purchase Contract, (B) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (C) Granting Related Relief* [ECF No. 3] (the "Sale Motion").  The Sale Motion sought authority to sell the Debtors' properties known as 2203 Looscan Lane ("Looscan") and 415 Shadywood ("Shadywood") properties (collectively, the "Properties").

---

[1]     Specifically, $60,000 for Houtex; $65,000 for Shadywood; and $61,000 for Looscan.

11.     The Court granted the Sale Motion on September 27, 2018.  ECF No. 71.  Attached to the Court's order approving the Sale Motion (the "Sale Procedures Order") are bidding procedures that govern the auction of the Properties.

12.     The Sale Procedures Order sets the following deadlines in connection with the sale of the Properties:

| Event | Date & Time |
|---|---|
| Bid Deadline (Shadywood and Looscan) | Monday, December 3, 2018 (no time specified) |
| Auction (Shadywood and Looscan) | Friday, December 7, 2018 at 10:00 a.m. |
| General Objection Deadline | Monday, December 10, 2018 at 5:00 p.m. |
| Supplemental Objection Deadline | Friday, December 14, 2018 at 5:00 p.m. |
| Sale Hearing (Shadywood and Looscan) | Monday, December 17, 2018 at 9:30 a.m. |

13.     The Debtors' Original Budgets extend only to November 17, 2018.  However, the Properties will not be sold until December 21, 2018.

14.     Meanwhile, Houtex is continuing to market its two properties: 3 Thornblade ("Thornblade") and 5325 Lynbrook ("Lynbrook" and collectively with Looscan, Shadywood and Thornblade, the "Properties").

15.     To accommodate the ongoing sale processes, the Debtors will need to continue to satisfy general and administrative expenses, construction vendor/supplier payments, utilities, insurance, and legal fees.

16.     The Debtors have entered into a Second Funding Commitment Letter with Charles Foster (in his capacity as lender, the "Lender") which includes supplements to the earlier, approved Original Budgets to account for the additional need for post-petition credit.  These new budgets (the

"<u>Supplemental Budgets</u>") are attached as Exhibits B-1, B-2 and B-3 to the Second Funding Commitment Letter.

17.    The Supplemental Budgets continue the accrual of expenses in amounts, and at rates, comparable if not identical to those approved in the Original Budgets.

18.    With respect to Thornblade and Lynbrook, the budget provides for monthly interest-only payments to the first-lien construction lenders, Spirit of Texas Bank and Community Bank of Texas, respectively.

19.    Further, certain amounts provided for during the Original Budget period but unused during such period including the Debtor's professional fees are provided for in the Second Funding Commitment Letter.

## **RELIEF REQUESTED**

20.    The Debtors seek entry of an order substantially in the form of the attached hereto to authorize the Debtors obtain credit from the Lender pursuant to the Second Funding Commitment Letter on an interim basis.  The purpose of these funds is pay for the chapter 11 bankruptcy process and maintenance of the Properties so that the Debtors can conduct an organized sale of the Properties "free and clear" of the disputed liens and maximize the value to all stakeholders.

21.    The Debtors request authority to borrow funds from the Lender as follows:

(a)    The Debtor Houtex Builders, LLC may incur debt in the principal sum not to exceed $106,521.00 in accordance with the budget (the "<u>Houtex Budget</u>") attached as <u>Exhibit B</u> plus $35,653.00 for unused Chapter 11 Related Expenses from the First Funding Commitment Letter (the actual amount borrowed together with interest, the "<u>Houtex Loan</u>").

(b)      The Debtor 215 Shadywood, LLC may to incur debt in the principal sum not to exceed $55,887.00 in accordance with the budget (the "Shadywood Budget") attached as Exhibit C plus $35,653.00 for unused Chapter 11 Related Expenses from the First Funding Commitment Letter (the actual amount borrowed together with interest, the "Shadywood Loan").

(c)      The Debtor 2203 Looscan, LLC may incur debt in the principal sum not to exceed $55,666.00 in accordance with the budget (the "Looscan Budget" and together with the Houtex Budget and Shadywood Budget, the "Budgets") attached as Exhibit D plus $35,653.00 for unused Chapter 11 Related Expenses from the First Funding Commitment Letter (the actual amount borrowed together with interest, the "Looscan Loan").

22.      The Debtor requests authority to provide the Lender administrative expense claims pursuant to § 503(b) and 507(b) of the Bankruptcy Code as follows:

(a)      With respect amounts owed to the Lender under the Houtex Loan, the Lender will receive an administrative expense claims against Debtor Houtex Builders, LLC.

(b)      With respect to amounts owed to the Lender under the Shadywood Loan, the Lender will receive an administrative expense claim against Debtor 215 Shadywood, LLC.

(c)      With respect to amounts owed to the Lender under the Looscan Loan, the Lender will receive an administrative expense claim against Debtor 2203 Looscan, LLC.

23.      The Lender's administrative expense claim will be subject to and subordinate to the administrative expense claims for the items incurred and paid for pursuant to the Supplemental Budgets.

24.      Further, the Debtor requests authority to grant a lien to Lender on property of the Debtors' estates that is not otherwise subject to a lien and to grant to Lender a junior lien on

property of the estate that is subject to a lien; provided that the Debtors reserve their rights to challenge the validity of any pre-petition liens and associated claims and/or avoid the liens by an avoidance action.

25.     For avoidance of doubt, the liens for the Houtex Loan are on the property of Houtex, the liens for the Shadywood Loan are on the property of Shadywood, and the liens for the Looscan Loan are on the property of Looscan; the liens are not cross-collateralized between the Debtors.

## SUMMARY OF PRINCIPAL TERMS OF DIP FACILITY

26.     Pursuant to Bankruptcy Rule 4001(c) and (d), the following is a concise statement and summary of the proposed material terms of Commitment Letter and the Interim Order:[2]

| Material Provision | Summary Description of Material Provision |
|---|---|
| **DIP Credit Agreement Parties** Fed. R. Bankr. P. 4001(c)(1)(B) | **Borrowers**: Houtex Builders, LLC; 415 Shadywood, LLC and 2203 Looscan Lane, LLC<br><br>**DIP Lender**: Charles C. Foster |
| **Amount of Borrowing** Fed. R. Bankr. P. 4001(c)(1)(B) | Commitment to loan up to $325,033.00 (the "Commitment") to the Debtors as follows:<br><br>1. Up to $142,174.00 to Debtor Houtex Builders, LLC which includes up to $106,521.00 in accordance with the Houtex Budget plus $35,653.00 for unused Chapter 11 Related Expenses from the First Funding Commitment Letter;<br><br>2. Up to $91,540.00 to Debtor 415 Shadywood, LLC which includes up to $55,887.00 in accordance with the Shadywood Budget plus $35,653.00 for unused Chapter 11 Related Expenses from the First Funding Commitment Letter; and<br><br>3. Up to $91,319.00 to Debtor 2203 Looscan Lane, LLC which includes up to $55,666.00 in accordance with the Looscan Budget plus $35,653.00 for unused Chapter 11 Related Expenses from the First Funding Commitment |

---

[2]     This summary is qualified, in its entirety by the provisions of the Commitment Letter.

| Material Provision | Summary Description of Material Provision |
|---|---|
| | Letter. |
| **Purpose/Use of Funds** Fed. R. Bankr. P. 4001(c)(1)(B) | The proceeds shall generally be used (1) to pay for the necessary costs to maintain the Properties until they can be sold; these costs include security, utilities, and insurance; (2) to pay the fees, costs and expenses of the Debtor's professionals; (3) adequate protection interest-only payments to Spirit of Texas Bank and Community Bank on account of their first-lien construction loans on the property known as 3 Thornblade and the property known as 2325 Lynbrook, respectively and (4) to pay the fees for the U.S. Trustee. |
| **Maturity Date** Fed. R. Bankr. P. 4001 (c)(1)(B) | The amounts owed to Lender will become immediately due and owing on the date that is 6 months from the date of the Second Funding Commitment Letter. |
| **Interest Rate** Fed. R. Bankr. P. 4001(c)(1)(B) | Three percent (3%) |
| **Fees** Fed. R. Bankr. P. 4001(c)(1)(B) | No fees. |
| **Events of Default** Fed. R. Bankr. P. 4001 (c)(1)(B)(iii) | The loans become immediately due and owing upon any of the following: (i) any of the Chapter 11 Cases convert to a case under chapter 7 of the Bankruptcy Code, (ii) a chapter 11 trustee is appointed in any of the Chapter 11 Cases, (iii) the confirmation of a plan in the Chapter 11 Cases, or (iv) the principal asset of each Debtor is sold. |
| **Liens and Priorities** Fed. R. Bankr. P. 4001(c)(1)(B)(i), (ii) | Liens on property of the Debtors' estates that is not otherwise subject to a lien  and to grant to Lender a junior lien on property of the estate that is subject to a lien |
| **Conditions Precedent to All Drawing** Fed. R. Bankr. P. 4001(c)(1)(B) | The Bankruptcy Court must approve the commitment facility. The draws must be for Permitted Expenses (as defined in the Commitment Letter) as set out in the Budget. |

## BASIS FOR RELIEF

**A.     Financing Under § 364(c)**

27.     Bankruptcy Code § 364 authorizes a debtor to obtain, in certain circumstances, post-

petition financing on a secured basis.  Specifically, § 364(c) of the Bankruptcy Code states that the

Court, after notice and a hearing, may authorize a debtor that is unable to obtain credit allowable as an administrative expense under § 503(b)(1) of the Bankruptcy Code to obtain credit or incur debt:

a)  with priority over any or all administrative expenses of the kind specified in § 503(b) or 507(b) of the Bankruptcy Code;

b)  secured by a lien on property of the estate that is not otherwise subject to a lien; or

c)  secured by a junior lien on property of the estate that is subject to a lien.

Thus, a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has been unable to obtain adequate unsecured credit, and the proposed borrowing is in the best interests of its estate. *See, e.g., In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating that, with respect to post-petition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *Richmond Leasing Co. v. Capital Bank, NA.*, 762 F.2d 1303, 1311 (5th Cir. 1985) (noting that "more exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially"); *see also* 3 Collier on Bankruptcy ¶ 364.03, at 364-7-18 (15th ed. rev.).

28.   The statutory requirement for obtaining post-petition credit under § 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that the debtor-in-possession is "unable to obtain unsecured credit allowable under § 503(b)(l) of [the Bankruptcy Code] as an administrative expense." *See Ames Dep't Stores*, 115 B.R. at 37–39 (holding that a debtor must show it has made a reasonable effort to seek other sources of financing under Bankruptcy Code §§ 364(a) and (b)).

29.   Given the Debtors' asset base and balance sheet, the Debtors are unable to borrow money on an unsecured basis. Thus, the Debtors believe entering Second Funding Commitment

Letter with superpriority administrative claims, a lien on unencumbered property of the estate, and a junior lien on encumbered property of the estate is appropriate under the circumstances of these Chapter 11 Cases.

30.     The loans under the Second Funding Commitment Letter are necessary to preserve the assets of the Debtors' estates.  The Properties require security, utilities, and insurance.   In order to fund those expenses, the Debtors need access to the liquidity provided by the Commitment Letter.

31.     For these reasons, the Debtor submits that entry into the Second Funding Commitment Letter is in the best interests of the Debtors' estates, is necessary to preserve the value of the Properties, and is an exercise of the Debtors' sound and reasonable business judgment.

**B.     <u>Adequate Protection Payments are Appropriate</u>**

32.     With respect to Thornblade and Lynbrook, the Debtor Houtex Builders, LLC seeks to provide monthly interest-only payments to Spirit of Texas Bank and Community Bank of Texas on account of their first-lien construction loans against such Properties.   There are no formal sale procedures established for the sale of the Thornblade and Lynbrook Properties.    Instead, the Debtors are marketing these properties through traditional real estate brokerage services.

33.      The Debtors seek to provide Spirit of Texas Bank and Community Bank of Texas adequate protection to prevent these lender's from attempting to terminate the automatic stay pursuant to Section 362(d) of the Bankruptcy Code.

34.     Section 361 of the Bankruptcy Code provides some examples of adequate protection.  These examples include periodic cash payments.   See 11 U.S.C. § 361(1).

35.     The Debtors contend that monthly interest-only payments to Spirit of Texas Bank and Community Bank of Texas on account of their first-lien construction loans on the Thornblade and Lynbrook Properties, respectively, are appropriate and adequately protects these lenders' interest

in these Properties while the Debtor is marketing these Properties to under Section 363 of the Bankruptcy Code.     Accordingly, the Debtors should be authorized to make these adequate protection payments consistent with the Houtex Budget.

## EMERGENCY INTERIM RELIEF

36.     Bankruptcy Rule 4001(c)(2) governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

37.     The Debtors' available funding under the First Funding Commitment Letter lasts through November 17, 2018.   The Debtors have an immediate need to access the funds provided by the Second Funding Commitment Letter.   The Debtors should maintain the Properties during the pendency of its Chapter 11 Case.   Without access to cash, the Debtors' estates would suffer immediate and irreparable harm to the detriment of all creditors if it does not have the ability to pay for the expenses set forth on the Supplemental Budgets.

38.     The Debtors, therefore, seeks immediate authority to access the funds available under the Second Funding Commitment Letter on an interim basis and as set forth in this Motion and in the Interim Order attached hereto to prevent immediate and irreparable harm to its estate pending the final hearing pursuant to Bankruptcy Rules 4001(b) and 4001(c).   Accordingly, to the extent the Debtors require post-petition financing, the Debtors respectfully submit they have satisfied the requirements of Bankruptcy Rule 4001 to support an expedited preliminary hearing and relief on an interim basis.

## REQUEST FOR FINAL HEARING

39.     Pursuant to Bankruptcy Rule 4001(c)(2), the Court may commence a final hearing on a motion for authority to obtain credit no earlier than fourteen (14) days after service of the motion. The Debtors request the Court set a date for the final hearing as soon as practicable and fix the date and time prior to the final hearing for parties to file objections to the relief requested by this Motion.

## WAVIER OF BANKRUPTCY RULES REGARDING
## NOTICE OF STAY OF AN ORDER

40.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rules 6004(h), 7062, 9014 or otherwise for all of the reasons described above.

## NOTICE

41.     Notice of this Motion has been provided by e-mail, facsimile, or overnight delivery to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the creditors identified on the Debtors' list of 20 largest unsecured creditors; and (c) those persons who have formally appeared in the Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002.

[Remainder of Page Intentionally Left Blank]

## CONCLUSION

The Debtors respectfully request that this Court enter an order substantially in the form of the proposed order attached hereto and grant any other relief that is just and proper.

Dated:  November 14, 2018          Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/ Charles M.  Rubio*
Charles M.  Rubio
TBA No. 24083768
J. Maxwell Beatty
TBA No. 24051740
909 Fannin, Suite 3700
Houston, TX 77010
(713) 333-5100
crubio@diamondmccarthy.com
mbeatty@diamondmccarthy.com

*Counsel to Debtors and Debtors-In-Possession*

**<u>Exhibit A</u>**

**Commitment Letter**

Charles C. Foster
17 Courtlandt Place
Houston, Texas 77006
713.335.3904
cfoster@FosterGlobal.com

November 13, 2018

HOUTEX Builders, LLC
17 Courtlandt Place
Houston, Texas 77006

415 Shadywood, LLC
17 Courtlandt Place
Houston, Texas 77006

2203 Looscan Lane, LLC
17 Courtlandt Place
Houston, Texas 77006

Re: Second Funding Commitment

Ladies and Gentlemen:

HOUTEX Builders, LLC, 415 Shadywood, LLC and 2203 Looscan Lane, LLC (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") commencing chapter 11 cases (the "Chapter 11 Cases") on August 23, 2018.

Pursuant to that certain funding Commitment Letter, dated August 23, 2018 (the "First Funding Commitment"), Charles Foster (the "Lender") committed to loan up to $186,000.00 (the "First Funding Commitment Amount") to the Debtors as follows:

1. Up to $60,000.00 to HOUTEX Builders, LLC;

2. Up to $65,000.00 to 415 Shadywood, LLC;

3. Up to $61,000.00 to 2203 Looscan Lane, LLC.

As of the date hereof, the Debtors have borrowed and the Lender has advanced the following amounts to each of the Debtors as follows:

1. $7,593.26 on account of the Houtex Loan, as more particularly described on Exhibit A-1;

2. $10,102.00 on account of the Shadywood Loan, as more particularly described on Exhibit A-2;

3. $8,037.00 on account of the Looscan Loan; as more particularly described on Exhibit A-3;

Accordingly, of the $186,000 of availability under the First Funding Commitment Amount, the Debtors have borrowed $25,732.26.

Pursuant to this Second Funding Commitment Letter ("Second Funding Commitment") Lender will commit to loan up to $325,033.00 (the "Commitment"):

1. Up to $106,521.00 to HOUTEX Builders, LLC in accordance with the budget attached hereto as Exhibit B-1 (the "Second Houtex Budget"), plus $35,653 for unused Chapter 11 Related Expenses from the First Commitment Letter (the actual amount loaned together with any applicable interest and fees, the "Houtex Loan");

2. Up to $55,887.00 to 415 Shadywood, LLC in accordance with the budget attached hereto as Exhibit B-2 (the "Second Shadywood Budget") plus $35,653 for unused Chapter 11 Related Expenses from the First Commitment Letter (the actual amount loaned together with any applicable interest and fees, the "Shadywood Loan");

3. Up to $55,666.00 to 2203 Looscan Lane, LLC in accordance with the budget attached hereto as Exhibit B-3 (the "Second Looscan Budget") plus $35,653 for unused Chapter 11 Related Expenses from the First Commitment Letter (the actual amount loaned together with any applicable interest and fees, the "Looscan Loan").

For avoidance of doubt, the Commitment of $325,033.00 under this Second Funding Commitment is in addition to the $25,732.26 the Lender has already advanced to the Debtors under the First Funding Commitment, for a total possible principal advances of $350,762.26 under both the First Funding Commitment and the Second Funding Commitment.

Use of Proceeds. The proceeds of the Commitment will used by the Debtors to pay for the following (the "Permitted Expenses"): (i) upon allowance by the Bankruptcy Court, the fees and expenses incurred by the Debtors' professionals in the Chapter 11 Cases, (ii) the fees charged by the Office of the United States Trustee in connection with the Bankruptcy Cases, (iii) the Bankruptcy Court approved adequate protection interest-only payments to Spirit of Texas Bank and Community Bank on account of their first-lien construction loans on the property known as 3 Thornblade and the property known as 2325 Lynbrook, respectively, and (iv) the other items set forth in the budgets attached hereto, upon approval of the budget by the Bankruptcy Court.

Advances.   Upon approval of this Commitment Letter with an order acceptable to the Lender, the Lender shall make advances (each, an "Advance") to each Debtor up to each Debtor's respective Commitment amount. The Lender shall make an advance to the Debtor within three business days from the date that the Debtor provides written notice to the Lender that a Permitted Expense has become due and payable. The Advances will incur interest at a rate of three percent (3%) per annum until paid in full.

Lender Protections. The Debtors shall stipulate to the amounts advanced to the Debtors under the First Commitment Letter as set forth herein. The Lender shall have an administrative expense claim against each Debtor for the amounts advanced to such Debtor under this commitment letter and the associated interest, and, in the event of a default under the order approving the loans set out herein (the "DIP Financing Order"), the Lender shall be entitled to seek and be reimbursed for reasonable legal fees associated with the default and exercise of remedies by the Lender. The Lender's claim, including reasonable attorneys' fees in the event of a default, against each Debtor will have priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title with respect to such Debtor. In addition, the Debtor grants the Lender a lien on property of the Debtors' estates that is not otherwise subject to a lien and grants the Lender a junior lien on property of the estate that is subject to a lien; provided that the Debtors and the Lender reserve their rights to challenge the validity of any pre-petition liens and associated claims and/or avoid the liens by an avoidance action.

Conditions. Until and unless the Bankruptcy Court shall have approved in an order acceptable to the Lender the loans set out herein, this commitment shall have no force and effect.

Enforceability. Upon approval by the Bankruptcy Court of this commitment letter, this commitment letter may be enforced by the Debtors against the Lender. Notwithstanding anything to the contrary in this commitment letter, none of the Debtors' creditors shall have the right to enforce this commitment letter.

Termination. The Lender's claims shall become immediately due and owing and the Lender's obligations to make further advance shall immediately terminate upon the first to occur of the following (each a "Termination Event"): (i) any of the Chapter 11 Cases convert to a case under chapter 7 of the Bankruptcy Code, (ii) a chapter 11 trustee is appointed in any of the Chapter 11 Cases, (iii) the confirmation of a plan in the Chapter 11 Cases, (iv) the principal asset of each Debtor is sold pursuant to a Bankruptcy Code § 363 sale, or (v) the date that is six months from the date of this letter; provided however, the Lender is still obligated to fund the fees and expenses of the Debtors' professionals and the fees charged by the Office of the United States Trustee in connection with the Bankruptcy Cases incurred, but not yet paid, through the date of the Termination Event.

No Modification; Entire Agreement. This agreement may not be amended, modified or supplemented except by an agreement in writing signed by the Debtors and the Lender and with the approval of the Bankruptcy Court.

Parties in Interest; Third Party Beneficiaries. This letter agreement is for the sole benefit of and shall be binding upon the Lender and the Debtors. Nothing in this commitment letter, express or implied, is intended to or shall confer upon any person other than the Debtors and the Lender any legal or equitable right, benefit or remedy of any nature whatsoever, under or by reason of this letter agreement.

Governing Law; Submission to Jurisdiction; Venue. This commitment letter shall be governed by and construed in accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule. The parties agree that the Bankruptcy Court has authority to interpret and enforce the terms of this commitment letter. The

3

parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action or proceeding in the Bankruptcy Cout and irrevocably waive and agree not to plead or claim that any such suit, action or proceeding brought in the Bankruptcy Court has been brought in an inconvenient forum.

       <u>Waiver of Jury Trial</u>. Each party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this commitment letter or the transactions contemplated hereby.

       <u>No Assignment</u>. The Commitment evidenced by this commitment letter shall not be assignable by Lender without the Debtors' prior written consent.

       <u>Counterparts</u>. This commitment letter may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this letter delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this commitment letter.

<em>[Remainder of Page Intentionally Left Blank]</em>

The Lender acknowledges that the Debtors are relying on this Commitment and the Lender agrees to be bound to the terms of the Commitment once approved by the Bankruptcy Court.

Very truly yours,

Charles Foster

ACCEPTED:

HOUTEX Builders, LLC, Debtor and Debtor in Possession

By
Charles Foster
Manager

415 Shadywood, LLC, Debtor and Debtor in Possession

By
Charles Foster
Manager

2203 Looscan Lane, LLC, Debtor and Debtor in Possession

By
Charles Foster
Manager

5

Exhibit A-1

**Houtex Borrowings Under First Commitment**

| Item | Date | Amount |
|---|---|---|
| Utilities | 10/1/18 | $1,309.43 |
| Utilities | 10/5/18 | $63.88 |
| Utilities | 10/26/18 | $756.93 |
| Insurance Premium Payment | 9/27/18 | $786.63 |
| Insurance Premium Payment | 9/28/18 | $715.11 |
| Repairs | 10/1/18 | $75.00 |
| Repairs | 10/8/18 | $917.00 |
| Professional fees[1] | 10/10/18 | $2,266.00 |
| Security fence | 11/2/18 | $122.00 |
| Utilities | 11/2/18 | $10.65 |
| US Trustee fees | 11/5/18 | $325.00 |
| Utilities | 11/8/18 | $245.63 |
| **Total** | | **$7,593.26** |

---

[1]    Accounting fees incurred by Schmuck, Smith Tees Co, PC for the benefit of the Debtor, subject to retention application and fee application for Schmuck, Smith Tees Co, PC.

<u>Exhibit A-2</u>

**Shadywood Borrowings Under First Commitment**

| Item | Date | Amount |
|---|---|---|
| Utilities | 10/26/18 | $1,409.00 |
| Professional fees[1] | 10/10/18 | $2,266.00 |
| Insurance premium | 11/2/18 | $6,102.00 |
| US Trustee fees | 11/5/18 | $325.00 |
| **Total** | | **$10,102.00** |

---

[1] Accounting fees incurred by Schmuck, Smith Tees Co, PC for the benefit of the Debtor, subject to retention application and fee application for Schmuck, Smith Tees Co, PC.

Exhibit A-3

**Looscan Borrowings Under First Commitment**

| Item | Date | Amount |
|---|---|---|
| Repairs | 10/14/18 | $122.00 |
| Professional fees[1] | 10/10/18 | $2,266.00 |
| Insurance premium | 11/2/18 | $4,025.00 |
| US Trustee fees | 11/5/18 | $325.00 |
| Security | 11/1/18 | $1,299.00 |
| **Total** | | **$8,037.00** |

---

[1] Accounting fees incurred by Schmuck, Smith Tees Co, PC for the benefit of the Debtor, subject to retention application and fee application for Schmuck, Smith Tees Co, PC.

Exhibit B-1

**Houtex Second Budget**

**Houwin Builders LLC**
**Weekly Cash Forecast**
12/10/2018

| | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | # of Days 177 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week # | | | | | | | | | | | | | | Total |
| Week Start | 11/19/2018 | 11/24/2018 | 12/1/2018 | 12/8/2018 | 12/15/2018 | 12/22/2018 | 12/29/2018 | 1/5/2019 | 1/12/2019 | 1/19/2019 | 1/26/2019 | 2/2/2019 | 2/9/2019 | |
| Week Ended | 11/24/2018 | 12/1/2018 | 12/8/2018 | 12/15/2018 | 12/22/2018 | 12/29/2018 | 1/5/2019 | 1/12/2019 | 1/19/2019 | 1/26/2019 | 2/2/2019 | 2/9/2019 | 2/16/2019 | |
| **CASH RECEIPTS** | | | | | | | | | | | | | | |
| Sales Proceeds, net of closing costs | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| **DIP CASH RECEIPTS** | | | | | | | | | | | | | | |
| Total DIP Availability | 165,000 | 88,512 | 84,562 | 73,537 | 71,452 | 70,179 | 53,426 | 38,361 | 36,316 | 35,043 | 17,655 | 18,380 | 417 | |
| DIP Balance | – | 59,335 | 76,408 | 78,438 | 91,483 | 93,546 | 94,821 | 113,574 | 126,619 | 128,684 | 129,957 | 147,245 | 149,620 | 149,620 |
| Draw/(Repayment) of DIP | 1,273 | 17,153 | 1,950 | 13,045 | 2,065 | 1,273 | 18,753 | 13,045 | 2,065 | 1,273 | 17,288 | 2,275 | 14,963 | 106,521 |
| Ending DIP Balance | 59,335 | 76,408 | 78,438 | 91,483 | 93,546 | 94,821 | 113,574 | 126,619 | 128,684 | 129,957 | 147,245 | 149,620 | 164,583 | 164,583 |
| **TOTAL SOURCES OF CASH** | $ 1,273 | $ 17,153 | $ 1,950 | $ 13,045 | $ 2,065 | $ 1,273 | $ 18,753 | $ 13,045 | $ 2,065 | $ 1,273 | $ 17,288 | $ 2,275 | $ 14,963 | $ 106,521 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | |
| G&A Expenses | 1,000 | 1,000 | 1,000 | 2,275 | 1,000 | 1,000 | 1,000 | 2,275 | 1,000 | 1,000 | 1,000 | 2,275 | 1,000 | 16,825 |
| Construction vendor/supplier payments | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| Utilities and insurance | 273 | | 950 | | 1,065 | 273 | 950 | | 1,065 | 273 | 235 | | 500 | 5,584 |
| Interest on first lien | | 16,153 | | | | | 16,153 | | | | 16,153 | | | 48,459 |
| **TOTAL OPERATING EXPENSES** | $ 1,273 | $ 17,153 | $ 1,950 | $ 2,275 | $ 2,065 | $ 1,273 | $ 18,103 | $ 2,275 | $ 2,065 | $ 1,273 | $ 17,388 | $ 2,275 | $ 1,500 | $ 70,868 |
| **CHAPTER 11 RELATED EXPENSES** | | | | | | | | | | | | | | |
| U.S. Trustee | – | – | – | – | – | – | 650 | – | – | – | – | – | – | 650 |
| Debtor Legal Fees | – | – | – | 10,770 | – | – | – | 10,770 | – | – | – | – | 13,463 | 35,000 |
| First Lien Lender Interest Expense and Lender Fees | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| **TOTAL CHAPTER 11 RELATED EXPENSES** | $ – | $ – | $ – | $ 10,770 | $ – | $ – | $ 650 | $ 10,770 | $ – | $ – | $ – | $ – | $ 13,463 | $ 35,653 |
| **TOTAL USES OF CASH** | $ 1,273 | $ 17,153 | $ 1,950 | $ 13,045 | $ 2,065 | $ 1,273 | $ 18,753 | $ 13,045 | $ 2,065 | $ 1,273 | $ 17,388 | $ 2,275 | $ 14,963 | |
| **BEGINNING CASH** | $ – | – | – | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) |
| **ENDING CASH** | $ – | – | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | 0 | |

Exhibit B-2

**Shadywood Second Budget**

415 Shadywood LLC
Weekly Cash Forecast
11/19/2018

| | Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | # of Days |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Week Start | 11/19/2018 | 11/24/2018 | 12/1/2018 | 12/8/2018 | 12/15/2018 | 12/22/2018 | 12/29/2018 | 1/5/2019 | 1/12/2019 | 1/19/2019 | 1/26/2019 | 2/2/2019 | 2/9/2019 | 89 |
| | Week Ended | 11/24/2018 | 12/1/2018 | 12/8/2018 | 12/15/2018 | 12/22/2018 | 12/29/2018 | 1/5/2019 | 1/12/2019 | 1/19/2019 | 1/26/2019 | 2/2/2019 | 2/9/2019 | 2/16/2019 | Total |
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Sales Proceeds, net of closing costs and First Lien | | | | | | - | | | | | | | | | - |
| **DIP CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Total DIP Availability | | 131,000 | 52,533 | 51,230 | 36,845 | 38,645 | 34,445 | 32,995 | 19,950 | 18,950 | 17,950 | 16,950 | 14,675 | 212 | |
| DIP Balance | | - | 66,454 | 68,467 | 69,870 | 84,355 | 65,355 | 66,355 | 89,005 | 101,050 | 102,050 | 103,050 | 104,050 | 106,325 | 106,325 |
| Draws/(Repayments) of DIP | | 1,553 | 2,013 | 1,403 | 14,485 | 1,000 | 1,000 | 1,650 | 13,045 | 1,000 | 1,000 | 1,000 | 2,275 | 14,463 | 55,867 |
| Ending DIP Balance | | 66,454 | 68,467 | 69,870 | 84,355 | 85,355 | 86,355 | 88,005 | 101,050 | 102,050 | 103,050 | 104,050 | 106,325 | 120,788 | |
| **TOTAL SOURCES OF CASH** | | 1,553 | 2,013 | 1,403 | 14,485 | 1,000 | 1,000 | 1,650 | 13,045 | 1,000 | 1,000 | 1,000 | 2,275 | 14,463 | 55,867 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| G&A Expenses | | 1,000 | 1,000 | 1,000 | 2,275 | 1,000 | 1,000 | 1,000 | 2,275 | 1,000 | 1,000 | 1,000 | 2,275 | 1,000 | 16,825 |
| Construction vendor/supplier payments | | 553 | 403 | 403 | 1,396 | | | | | | | | | | 2,755 |
| Utilities and insurance | | | 610 | | 44 | | | | | | | | | | 654 |
| **TOTAL OPERATING EXPENSES** | | 1,553 | 2,013 | 1,403 | 3,715 | 1,000 | 1,000 | 1,000 | 2,275 | 1,000 | 1,000 | 1,000 | 2,275 | 1,000 | 20,234 |
| **CHAPTER 11 RELATED EXPENSES** | | | | | | | | | | | | | | | |
| US Trustee | | | | | | | | 650 | | | | | | | 650 |
| Debtor Legal Fees | | | | | 10,770 | | | | 10,770 | | | | | 13,463 | 35,003 |
| First Lien Lender Interest Expense and Lender Fees | | | | | | | | | | | | | | | |
| **TOTAL CHAPTER 11 RELATED EXPENSES** | | - | - | - | 10,770 | - | - | 650 | 10,770 | - | - | - | - | 13,463 | 35,653 |
| **TOTAL USES OF CASH** | | 1,553 | 2,013 | 1,403 | 14,485 | 1,000 | 1,000 | 1,650 | 13,045 | 1,000 | 1,000 | 1,000 | 2,275 | 14,463 | 55,867 |
| **BEGINNING CASH** | | - | - | - | - | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | |
| **ENDING CASH** | | - | - | - | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | 0 | |

Exhibit B-3

**Looscan Second Budget**

2205 Lenox LLC
Weekly Cash Forecast
11/16/2018

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total | # of Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week # | | | | | | | | | | | | | | | 89 |
| Week Start | 11/19/2018 | 11/24/2018 | 12/1/2018 | 12/8/2018 | 12/15/2018 | 12/22/2018 | 12/29/2018 | 1/5/2019 | 1/12/2019 | 1/19/2019 | 1/26/2019 | 2/2/2019 | 2/9/2019 | | |
| Week Ended | 11/24/2018 | 12/1/2018 | 12/8/2018 | 12/15/2018 | 12/22/2018 | 12/29/2018 | 1/5/2019 | 1/12/2019 | 1/19/2019 | 1/26/2019 | 2/2/2019 | 2/9/2019 | 2/16/2019 | | |
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Sales Proceeds, net of closing costs | | | | | - | | | | | | | | | | - |
| **DIP CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Total DIP Availability | 117,600 | 53,166 | 51,771 | 37,336 | 35,909 | 34,909 | 32,259 | 20,214 | 19,214 | 18,214 | 17,214 | 14,939 | 476 | | |
| DIP Balance | - | 62,435 | 63,832 | 65,229 | 79,664 | 81,091 | 82,091 | 83,741 | 96,786 | 97,786 | 98,786 | 99,786 | 102,061 | 102,061 | |
| Draw/(Repayment) of DIP | 1,577 | 1,397 | 1,397 | 14,435 | 1,427 | 1,000 | 1,650 | 13,045 | 1,000 | 1,000 | 1,040 | 2,275 | 14,463 | 53,666 | |
| Ending DIP Balance | 62,435 | 63,832 | 65,229 | 79,664 | 81,091 | 82,091 | 83,741 | 96,786 | 97,786 | 98,786 | 99,786 | 102,061 | 116,524 | | |
| **TOTAL SOURCES OF CASH** | $ 1,577 | $ 1,397 | $ 1,397 | $ 14,435 | $ 1,427 | $ 1,000 | $ 1,650 | $ 13,045 | $ 1,000 | $ 1,000 | $ 1,000 | $ 2,275 | $ 14,463 | $ 53,664 | |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| G&A Expenses | 1,000 | 1,000 | 1,000 | 2,275 | 1,800 | 1,000 | 1,000 | 2,275 | 1,000 | 1,000 | 1,070 | 2,275 | 1,000 | 16,825 | |
| Construction vendor/supplier payments | 547 | 397 | 397 | 1,390 | 397 | | | | | | | | | 3,128 | |
| Utilities and insurance | 30 | | | | 30 | | | | | | | | | 60 | |
| **TOTAL OPERATING EXPENSES** | $ 1,577 | $ 1,397 | $ 1,397 | $ 3,665 | $ 1,427 | $ 1,000 | $ 1,000 | $ 2,275 | $ 1,000 | $ 1,000 | $ 1,000 | $ 2,275 | $ 1,000 | $ 20,013 | |
| **CHAPTER 11 RELATED EXPENSES** | | | | | | | | | | | | | | | |
| U.S. Trustee | - | - | - | - | - | - | 650 | - | - | - | - | - | - | 650 | |
| Debtor Legal Fees | - | - | - | 10,770 | - | - | - | 10,770 | - | - | - | - | 13,463 | 35,003 | |
| First Lien Lender Interest Expense and Lender Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| **TOTAL CHAPTER 11 RELATED EXPENSES** | - | - | - | 10,770 | - | - | 650 | 10,770 | - | - | - | - | 13,463 | 35,653 | |
| **TOTAL USES OF CASH** | $ 1,577 | 1,397 | 1,397 | 14,435 | 1,427 | 1,000 | 1,650 | 13,045 | 1,000 | 1,000 | 1,000 | 2,275 | 14,463 | | |
| **BEGINNING CASH** | - | - | - | - | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | | |
| **ENDING CASH** | $ - | - | - | - | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | 0 | | |