

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

ENTERED
11/26/2018

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **HOUTEX BUILDERS, LLC,** *et al.,*[1] | § | **Case No. 18-34658** |
| | § | **Chapter 11** |
| | § | |
| **DEBTORS.** | § | |

## ORDER APPROVING SALE OF REAL PROPERTY

Upon consideration of the motion (the "Motion")[2] [ECF No. 154 filed by HOUTEX

Builders, LLC (the "Debtor") seeking entry of an order authorizing and approving, among other

things, the sale of real property (the "Sale") known as 3 Thornblade Circle, The Woodlands, Texas

77389 together with (i) improvements, fixtures and all other property owned by the Debtor and

located on or in the property; and (ii) all rights, privileges and appurtenances thereto, including but

not limited to: permits, easements, and cooperative and association memberships, (collectively, the

"Property"), free and clear of liens and claims, pursuant to that certain New Home Contract dated

November 2, 2018 (the "New Home Contract") attached hereto as **Exhibit A**, by and between the

Debtor and Boris Alain Otto (the "Buyer"), and this Court having determined that the relief

requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other

parties-in-interest; and after due deliberation thereon, and good and sufficient cause appearing

therefor, including for the reasons stated on the record at the hearing seeking approval of the Sale

(the "Sale Hearing"):

---

[1] The names of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: HOUTEX Builders, LLC (2111); 2203 Looscan Lane, LLC (1418); and 415 Shadywood, LLC (7627).

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the form of special warranty deed attached hereto as **Exhibit B**.

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.      The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 1334.  Venue of this chapter 11 bankruptcy case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.      The statutory and legal predicates for the relief requested in the Motion are §§ 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101−1532 (as amended, the "Bankruptcy Code") and Rules 2002, 6004, 9006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

C.      Good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

D.      The Debtor and the Buyer negotiated the New Home Contract without collusion, in good faith, and from arm's-length bargaining positions.

E.      The Buyer is not an "insider" or "affiliate" of the Debtor as those terms are defined in §§ 101(31) and 101(2) of the Bankruptcy Code.  Neither the Debtor nor the Buyer have engaged in any conduct that would cause or permit the New Home Contract to be avoided under § 363(n) of the Bankruptcy Code.

F.      The Buyer is purchasing the Property in good faith and is a good-faith Buyer within the meaning of § 363(m) of the Bankruptcy Code.  The Buyer proceeded in good faith in connection

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* Fed. R. Bankr. P. 7052.

with all aspects of the Sale.  Accordingly, the Buyer is entitled to all of the protections afforded under § 363(m) of the Bankruptcy Code.

G.      Other parties have had a reasonable opportunity to make a higher or otherwise better offer to purchase the Property.  The Debtor's determination that the New Home Contract constitutes the highest and best offer for the Property constitutes a valid and sound exercise of the Debtor's business judgment.

H.      The consideration provided by the Buyer pursuant to the New Home Contract (i) is fair and adequate, (ii) is the highest or otherwise best offer for the Property, (iii) will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and § 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under applicable law.

I.      The Buyer is not a mere continuation of the Debtor or its estate, and there is no continuity of enterprise between the Buyer and the Debtor.  The Buyer is not holding himself out to the public as a continuation of the Debtor.  The Buyer is not a successor to the Debtor or its estate and the Sale does not amount to a consolidation, merger, or de facto merger of the Buyer and the Debtor.  The Buyer will not have any successor or transferee liability for liabilities of the Debtor or any affiliate of the Debtor (whether under federal or state law or otherwise) as a result of the sale of the Property.

J.      All parties-in-interest have the ability and the opportunity to assert claims against the Debtor.

K.      The consummation of the sale of the Property to the Buyer is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, §§ 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable

requirements of such sections have been complied with in respect of the Sale. In particular, the Debtor may sell the Property free and clear of all liens and claims of any kind or nature whatsoever because, in each case, one or more of the standards set forth in §§ 363(f)(l)-(5) of the Bankruptcy Code have been satisfied. Any party with an interest in the Property who did not object, or who withdrew its objection, to the Sale or the Motion is deemed to have consented pursuant to § 363(f)(2) of the Bankruptcy Code. Any party with a lien, claim, or other interest in the Property who did object falls within one or more of the other subsections of § 363(f) of the Bankruptcy Code and is adequately protected by having its lien, claim, or other interest, if any, attach to the net cash proceeds of the Sale ultimately attributable to the Property against or in which such liens or other interests are asserted with the same validity, enforceability, priority, and force and effect as they had against the Property or their proceeds as of the Petition Date.

L.    Spirit of Texas Bank (the "SOTB") has a valid, perfected, enforceable and non-avoidable first lien and security interest in the Property for the amounts owed under that certain Real Estate Secured Balloon Promissory Note, dated January 3, 2016 in the original principal amount of $2,605,250.00 (the "First Lien Note").

M.    SOTB and Great Southwestern Financial Group each claim to have a valid, perfected, enforceable and non-avoidable second lien and security interest in the Property.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.    The Motion is GRANTED as set forth herein.

2.    All objections to the Motion, as they pertain to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

3.    Pursuant to §§ 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtor is authorized to sell and transfer all of the Debtor's right, title and interest in and to the Property to the Buyer in accordance with the New Home Contract (including any ancillary documents) on the

4

Closing Date and such sale and transfer shall (a) constitute a legal, valid, binding, and effective transfer of the Property, (b) upon the title company's receipt of the Sales Price at Closing and distribution of such funds at Closing pursuant to the Sale Order, vest the Buyer with all right, title and interest of the Debtor to the Property, free and clear of all liens, claims, and other interests in and on the Property pursuant to § 363(f) of the Bankruptcy Code (other than the liens created by the Buyer), and (c) constitute transfers for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the state in which the Debtor is incorporated and any other applicable non-bankruptcy laws.

4.      Except as otherwise provided in the New Home Contract, all persons (including, without limitation, customers, vendors, lessors, warehousemen, mechanics, repairmen, repair facility operators, storage facility operators, bailees, consignees, and other parties in possession of any of the Property at any time) holding liens or claims of any kind or nature whatsoever against the Debtor or the Property shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim, or other proceeding of any kind, directly or indirectly, against the Buyer (as they existed immediately prior to the Closing), or the Property, including any action, claim, or other proceeding seeking to prevent or interfere with the consummation of the Sale, with the retrieval by the Buyer or the delivery to the Buyer of possession of the Property, or with any access to or any use, benefit, or enjoyment of the Property by the Buyer.  All Persons that are in possession of any of the Property on the Closing Date are directed to surrender possession of such Property to the Buyer or his assignee on the Closing Date (or as soon as possible after demand is made by the Buyer following the Closing Date).  Following the Closing Date, no holder of a lien, claim or other interest in or against the Debtor or the Property shall interfere with the Buyer's title to or use and enjoyment of the Property based on or related to such lien, claim, or other interest.

5.      The provisions of this Order are non-severable and mutually dependent.

6.      The Buyer will not have any successor or transferee liability for liabilities of the Debtor or any Affiliate of the Debtor (whether under law or otherwise) as a result of the sale of the Property.

7.      All other liens or other interests in or on the Property attach to the net cash proceeds of the Sale ultimately attributable to the Property against or in which such liens or other interests are asserted, subject to the terms of such liens or other interests, with the same validity, enforceability, priority, and force and effect as they had against the Property or its proceeds as of the Petition Date, subject to any rights, claims and defenses the Debtor or any other parties-in-interest may possess with respect thereto.

8.      Except for RE/MAX Carlton Woods, no broker or party has a claim to any commission, broker's fee, finder's fee, or similar fee as a result of having negotiated the New Home Contract for, or on behalf of, the Debtor or the Buyer.

9.      A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder of any state, county, or local authority to act to cancel any of the liens and claims of record except the Permitted Exceptions.

10.      The Debtor is hereby authorized to pay from the Sale proceeds the broker's commission owed to RE/MAX Carlton Woods, any prorations required under the New Home Contract, any specific repairs required under the New Home Contract, any closing costs required to be paid by the Debtor under the New Home Contract, and any other reasonable and necessary closing cost (the remaining Sale proceeds after all such payments are referred to herein as the "Net Sale Proceeds").

11.      At the Closing, the title company shall indefeasibly pay the total amount due to SOTB on account of its First Lien Note.  Such proceeds shall be applied to SOTB's claim against

6

the Debtor in an amount equal to the outstanding balance of the principal, interest, and other amounts owed by Debtor to SOBT on account of the First Lien Note.

12.     Any remaining Net Sale Proceeds after satisfaction of the First Lien Note shall remain in the Debtor's post-petition bank account until a determination is made as to the priority and validity of the remaining liens asserted against the Property.  Such liens, claims, or other interests, if any, attach to such net cash proceeds attributable to the Property against or in which such liens or other interests are asserted with the same validity, enforceability, priority, and force and effect as they had against the Property or their proceeds as of the Petition Date.

13.     The Debtor is hereby authorized to take any and all actions necessary to consummate the transactions contemplated by the New Home Contract (including any ancillary documents) and this Order.

14.     The terms of this Order shall be binding on and inure to the benefit of the Debtor, the Buyer, all creditors and all other parties-in-interest, and any successors of such parties including, but not limited to, any trustee or examiner with expanded powers appointed in this Chapter 11 Case or upon the conversion of this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code.

15.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms of this order shall be immediately effective and enforceable upon its entry and not subject to any stay, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

16.     To the extent that this order is inconsistent with the New Home Contract or any prior order or pleading with respect to the Motion in this Chapter 11 Case, the terms of this order shall govern.

17.     All amounts to be paid to Buyer pursuant to the New Home Contract constitute administrative expenses under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, and are immediately

payable, if and when the obligations of the Debtor arise under the New Home Contract, without any further order of the Bankruptcy Court.

18.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this order, the New Home Contract, all amendments thereto, and any waivers and consents thereunder, and each ancillary document executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining  jurisdiction to (a) compel delivery of the Property to the Buyer, (b) interpret, implement, and enforce the provisions of this order, and (c) protect the Buyer against any liens or claim in or against the Debtor or the Property of any kind or nature whatsoever; provided, however, that in the event the Court abstains from exercising or declines to exercise jurisdiction or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

Signed: November 26, 2018

Jeffrey P. Norman
United States Bankruptcy Judge

8

## <u>EXHIBIT A</u>

New Home Contract

DocuSign Envelope ID: 697FC0F0-AB38-454F-9702-77B0DE9731C9



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)    2-12-18
**NEW HOME CONTRACT**
(Completed Construction)
NOTICE: Not For Use For Condominium Transactions or Closings Prior to Completion of Construction



1. **PARTIES:** The parties to this contract are _____ **Houtex Builders LLC** _____
(Seller) and _____ **Boris Alain Otto** _____ (Buyer). Seller agrees
to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:** Lot _____ **1** _____, Block _____ **2** _____,
_____ **THE WOODLANDS CARLTON WOODS CREEKSIDE 3** _____ Addition,
City of _____ **The Woodlands** _____, County of _____ **Harris** _____,
Texas, known as _____ **3 Thornblade Circle** _____ **77389** _____
(address/zip code), or as described on attached exhibit, together with: (i) improvements,
fixtures and all other property located thereon; and (ii) all rights, privileges and appurtenances
thereto, including but not limited to: permits, easements, and cooperative and association
memberships. All property sold by this contract is called the "Property".
RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests
is made in accordance with an attached addendum.

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing . . . . . . . . . . . . . . . $ _____ **2,575,000.00**
   B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum,
      ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum . . . . . . . . . $ _____
   C. Sales Price (Sum of A and B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ **2,575,000.00**

4. **LICENSE HOLDER DISCLOSURE:** Texas law requires a real estate license holder who is
a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which
the license holder owns more than 10%, or a trust for which the license holder acts as trustee or
of which the license holder or the license holder's spouse, parent or child is a beneficiary, to
notify the other party in writing before entering into a contract of sale. Disclose if applicable: _____

5. **EARNEST MONEY:** Within 3 days after the Effective Date, Buyer must deliver
$ **27,000.00** _____ as earnest money to _____ **Erin Alexander** _____
as escrow agent, at _____ **61 Carlton Woods Dr. The Woodlands TX 77382** _____ (address).
Buyer shall deliver additional earnest money of $ **n/a** _____ to escrow agent within
_____ days after the Effective Date of this contract. If Buyer fails to deliver the earnest money
within the time required, Seller may terminate this contract or exercise Seller's remedies under
Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money. If
the last day to deliver the earnest money falls on a Saturday, Sunday, or legal holiday, the time
to deliver the earnest money is extended until the end of the next day that is not a Saturday,
Sunday, or legal holiday. **Time is of the essence for this paragraph.**

6. **TITLE POLICY AND SURVEY:**
   A. **TITLE POLICY:** Seller shall furnish to Buyer at ☒ Seller's ☐ Buyer's expense an owner policy of
   title insurance (Title Policy) issued by _____ **Great American Title** _____.
   (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer
   against loss under the provisions of the Title Policy, subject to the promulgated exclusions
   (including existing building and zoning ordinances) and the following exceptions:
      (1) Restrictive covenants common to the platted subdivision in which the Property is located.
      (2) The standard printed exception for standby fees, taxes and assessments.
      (3) Liens created as part of the financing described in Paragraph 3.
      (4) Utility easements created by the dedication deed or plat of the subdivision in which the
          Property is located.
      (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by
          Buyer in writing.
      (6) The standard printed exception as to marital rights.
      (7) The standard printed exception as to waters, tidelands, beaches, streams, and related
          matters.
      (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary
          lines, encroachments or protrusions, or overlapping improvements:
          ☐ (i) will not be amended or deleted from the title policy; or
          ☒ (ii) will be amended to read, "shortages in area" at the expense of ☐ Buyer ☒ Seller.
      (9) The exception or exclusion regarding minerals approved by the Texas Department of
          Insurance.
   B. **COMMITMENT:** Within 20 days after the Title Company receives a copy of this contract, Seller
   shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's
   expense, legible copies of restrictive covenants and documents evidencing exceptions in the
   Commitment (Exception Documents) other than the standard printed exceptions. Seller
   authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer

RE/MAX The Woodlands, 6620 Woodlands Parkway The Woodlands, TX 77382          Phone: 281.796.6620          Fax: 281.362.2525          3 Thornblade
Aaron Harris                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Contract Concerning _____ **3 Thornblade Circle** _____ **The Woodlands, TX 77389** _____ Page 2 of 10  2-12-18
(Address of Property)

at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C.  SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)

[X] (1)  Within _____ **3** _____ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s), Buyer shall obtain a new survey at [X] Seller's [ ] Buyer's expense no later than 3 days prior to Closing Date.

[ ] (2)  Within _____ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

[ ] (3)  Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

D.  OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (9) above; or which prohibit the following use or activity: _____

_____

Buyer must object the earlier of (i) the Closing Date or (ii) _____ **5** _____ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or Survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or Survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, Survey, or Exception Document(s) is delivered to Buyer.

E.  TITLE NOTICES:

(1)  ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2)  MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property [X] is [ ] is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instruments may be obtained from the county clerk. **You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.**

Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request.

| Contract Concerning | 3 Thornblade Circle | The Woodlands, TX 77389 | Page 3 of 10  2-12-18 |
|---|---|---|---|

(Address of Property)

If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association should be used.

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

7. **PROPERTY CONDITION:**

A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

B. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7B(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.

Contract Concerning _____ **3 Thornblade Circle**    **The Woodlands, TX  77389**    Page 4 of 10  2-12-18
(Address of Property)

(Check one box only)

[X] (1)  Buyer accepts the Property As Is.

[ ] (2)  Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____

(Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)

C.  **WARRANTIES:** Except as expressly set forth in this contract, a separate writing, or provided by law, Seller makes no other express warranties. Seller shall assign to Buyer at closing all assignable manufacturer warranties.

D.  **INSULATION:** As required by Federal Trade Commission Regulations, the information relating to the insulation installed or to be installed in the Improvements at the Property is: (check only one box below)

[X] (1)  as shown in the attached specifications.

[ ] (2)  as follows:

    a)  Exterior walls of improved living areas: insulated with _____ insulation to a thickness of _____ inches which yields an R-Value of _____.

    b)  Walls in other areas of the home: insulated with _____ insulation to a thickness of _____ inches which yields an R-Value of _____.

    c)  Ceilings in improved living areas: insulated with _____ insulation to a thickness of _____ inches which yields an R-Value of _____.

    d)  Floors of improved living areas not applied to a slab foundation: insulated with _____ _____ insulation to a thickness of _____ inches which yields an R-Value of _____ .

    e)  Other insulated areas: insulated with _____ insulation to a thickness of _____ inches which yields an R-Value of _____.

All stated R-Values are based on information provided by the manufacturer of the insulation.

E.  **LENDER REQUIRED REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F.  **COMPLETION OF REPAIRS, TREATMENTS, AND IMPROVEMENTS:** Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs, treatments, and improvements (Work) prior to the Closing Date; and (ii) all required permits must be obtained, and Work must be performed by persons who are licensed to provide such Work or, if no license is required by law, are commercially engaged in the trade of providing such Work. At Buyer's election, any transferable warranties received by Seller with respect to the Work will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed Work prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete Work.

G.  **ENVIRONMENTAL MATTERS:** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H.  **SELLER'S DISCLOSURE:** Except as otherwise disclosed in this contract, Seller has no knowledge of the following:

    (1)  any flooding of the Property which has had a material adverse effect on the use of the Property;

    (2)  any pending or threatened litigation, condemnation, or special assessment affecting the Property;

    (3)  any environmental hazards that materially and adversely affect the Property;

    (4)  any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;

    (5)  any wetlands, as defined by federal or state law or regulation, affecting the Property; or

    (6)  any threatened or endangered species or their habitat affecting the Property.

I.  **RESIDENTIAL SERVICE CONTRACTS:** Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ **1,000.00** _____ . Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

8.  **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

---

DocuSign Envelope ID: 697FC0F0-AB38-454F-9702-77B0DE9131C9

| Contract Concerning | 3 Thornblade Circle | The Woodlands, TX 77389 | Page 5 of 10  2-12-18 |
|---|---|---|---|
| | | (Address of Property) | |

9. **CLOSING:**
   A. The closing of the sale will be on or before _____ **December 14** _____, **2018** _____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
   B. At closing:
      (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
      (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
      (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
      (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing payment of any loans assumed by Buyer and assumed loans will not be in default.

10. **POSSESSION:**
    A. Buyer's Possession: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: [X] upon closing and funding [ ] according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**
    B. Leases: After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.

11. **SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holders from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.) **ACE Builders warrantee and an appliance/ home warrantee for up to $2,000.**

12. **SETTLEMENT AND OTHER EXPENSES:**
    A. The following expenses must be paid at or prior to closing:
       (1) Expenses payable by Seller (Seller's Expenses):
          (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
          (b) Seller shall also pay an amount not to exceed $ **N/A** _____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
       (2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.
    B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

13. **PRORATIONS AND ROLLBACK TAXES:**
    A. PRORATIONS: Taxes for the current year, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer will be obligated to pay taxes for the current year.

| TAR 1604 | Initialed for identification by Buyer _____ and Seller _____ | TREC NO. 24-15 |
|---|---|---|

(Address of Property)

    B. **ROLLBACK TAXES:** If additional taxes, penalties, or interest (Assessments) are imposed because of Seller's use or change in use of the Property prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Subject to applicable law, any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**

    A. **ESCROW:** The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.

    B. **EXPENSES:** At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.

    C. **DEMAND:** Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

    D. **DAMAGES:** Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

    E. **NOTICES:** Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

Contract Concerning _____ **3 Thornblade Circle** _____ **The Woodlands, TX  77389** _____ Page 7 of 10  2-12-18
(Address of Property)

21. **NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

| To Buyer | To Seller |
|---|---|
| at: _____ | at: **17 Courtlandt Place** |
| _____ | **Houston, TX 77006** |
| Phone: _____ | Phone: **(832)794-3971** |
| Fax: _____ | Fax: **(713)228-1303** |
| E-mail: **Borrisottolira@gmail.com** | E-mail: **cfoster@fosterglobal.com** |

22. **AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

☐ Third Party Financing Addendum

☐ Seller Financing Addendum

☒ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

☐ Buyer's Temporary Residential Lease

☐ Loan Assumption Addendum

☐ Addendum for Sale of Other Property by Buyer

☐ Addendum for Reservation of Oil, Gas and Other Minerals

☐ Addendum for "Back-Up" Contract

☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal

☐ Addendum for Coastal Area Property

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Seller's Temporary Residential Lease

☐ Short Sale Addendum

☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☐ Addendum for Property in a Propane Gas System Service Area

☒ Other (list): **IABS, Addendum to new Home Contract** _____
_____
_____
_____

23. **TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ **N/A** (Option Fee) within 3 days after the Effective Date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ **N/A** _____ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☐ will ☒ will not be credited to the Sales Price at closing. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

TAR 1604    Initialed for identification by Buyer _____ and Seller _____ _____    TREC NO. 24-15

DocuSign Envelope ID: 697FC0F0-AB38-454F-9702-77B0DE9131C9

Contract Concerning _____**3 Thornblade Circle**_____ _____**The Woodlands, TX 77389**_____ Page 8 of 10  2-12-18

(Address of Property)

24. **CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

| | |
|---|---|
| Buyer's Attorney is: _____ | Seller's Attorney is: _____ |
| _____ | _____ |
| Phone: _____ | Phone: _____ |
| Fax: _____ | Fax: _____ |
| E-mail: _____ | E-mail: _____ |

EXECUTED the **1 9** day of **Navmbr** _____, 20 **1 8** (Effective Date).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

This contract is subject to Chapter 27 of the Texas Property Code. The provisions of that chapter may affect your right to recover damages arising from a construction defect. If you have a complaint concerning a construction defect and that defect has not been corrected as may be required by law or by contract, you must provide the notice required by Chapter 27 of the Texas Property Code to the contractor by certified mail, return receipt requested, not later than the 60th day before the date you file suit to recover damages in a court of law or initiate arbitration. The notice must refer to Chapter 27 of the Texas Property Code and must describe the construction defect. If requested by the contractor, you must provide the contractor an opportunity to inspect and cure the defect as provided by Section 27.004 of the Texas Property Code.

Buyer _____
**Boris Alain Otto**

Buyer _____

Seller _____
**Houtex Builders LLC**

Seller _____



The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 24-15. This form replaces TREC NO. 24-14.

TAR 1604

TREC NO. 24-15
3 Thornblade

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 697FC0F0-AB38-454F-9702-77B0DE9131C9

Contract Concerning _____**3 Thornblade Circle**_____ **The Woodlands, TX  77389**  Page 9 of 10   2-12-18
(Address of Property)

### BROKER INFORMATION
(Print name(s) only. Do not sign)

|  |  |  |  |
|---|---|---|---|
| | | **RE/MAX Carlton Woods Sales** | **0475259** |
| Other Broker Firm | License No. | Listing Broker Firm | License No. |

represents ☐ Buyer only as Buyer's agent

represents ☐ Seller and Buyer as an intermediary

☐ Seller as Listing Broker's subagent

☐ Seller only as Seller's agent

| | | **Aaron Harris** | **048814** |
|---|---|---|---|
| Associate's Name | License No. | Associate's Name | License No. |

| | | **aaronharris@carltonwoodssales.com** | **(281)796-6620** |
|---|---|---|---|
| Associate's Email Address | Phone | Listing Associate's Email Address | Phone |

| | | **Raul Giorgi** | **041852** |
|---|---|---|---|
| Licensed Supervisor of Associate | License No. | Licensed Supervisor of Listing Associate | License No. |

| | | **61 Carlton Woods Dr.** | **(281)367-7770** |
|---|---|---|---|
| Other Broker's Address | Phone | Listing Broker's Office Address | Phone |

| | | | **The Woodlands** | **TX** | **77382** |
|---|---|---|---|---|---|
| City | State | Zip | City | State | Zip |

| | |
|---|---|
| Selling Associate's Name | License No. |

| | |
|---|---|
| Selling Associate's Email Address | Phone |

| | |
|---|---|
| Licensed Supervisor of Selling Associate | License No. |

| | |
|---|---|
| Selling Associate's Office Address | |

| | | |
|---|---|---|
| City | State | Zip |

Listing Broker has agreed to pay Other Broker _____**3.000%**_____ of the total sales price when the Listing Broker's fee is received. Escrow agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 697FC0F0-AB38-454F-9702-77B0DE9131C9

Contract Concerning _____ **3 Thornblade Circle** _____ **The Woodlands, TX 77389** _____ Page 10 of 10   2-12-18
(Address of Property)

---

### OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____
is acknowledged.

_____     _____
Seller or Listing Broker                                                              Date

---

### EARNEST MONEY RECEIPT

Receipt of $_____ Earnest Money in the form of _____
is acknowledged.

| | | | |
|---|---|---|---|
| Escrow Agent | Received by | Email Address | Date/Time |
| Address | | | Phone |
| City | State | Zip | Fax |

---

### CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

*Erin Alexander*                    *[signature]*                                          11/19
Escrow Agent                    Received by         Email Address                    Date

| | | | |
|---|---|---|---|
| Address | | | Phone |
| City | State | Zip | Fax |

---

### ADDITIONAL EARNEST MONEY RECEIPT

Receipt of $_____ additional Earnest Money in the form of _____
is acknowledged.

| | | | |
|---|---|---|---|
| Escrow Agent | Received by | Email Address | Date/Time |
| Address | | | Phone |
| City | State | Zip | Fax |

---

TAR 1604

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

TREC NO. 24-15
3 Thornblade

DocuSign Envelope ID: 697FC0F0-AB38-454F-9702-77B0DE9131C9



TEXAS ASSOCIATION OF REALTORS®
# INTERMEDIARY RELATIONSHIP NOTICE
USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2004

| | | |
|---|---|---|
| **To:** | Houtex Builders LLC | (Seller or Landlord) |
| | and Boris Alain Otto | (Prospect) |
| **From:** | RE/MAX Carlton Woods Sales | (Broker's Firm) |
| | 3 Thornblade Circle | |
| **Re:** | The Woodlands, TX 77389 | (Property) |
| **Date:** | November 17, 2018 | |

A.   Under this notice, "owner" means the seller or landlord of the Property and "prospect" means the above-named prospective buyer or tenant for the Property.

B.   Broker's firm represents the owner under a listing agreement and also represents the prospect under a buyer/tenant representation agreement.

C.   In the written listing agreement and the written buyer/tenant representation agreement, both the owner and the prospect previously authorized Broker to act as an intermediary if a prospect who Broker represents desires to buy or lease a property that is listed by the Broker. When the prospect makes an offer to purchase or lease the Property, Broker will act in accordance with the authorizations granted in the listing agreement and in the buyer/tenant representation agreement.

D.   Broker ☐ will ☒ will not appoint licensed associates to communicate with, carry out instructions of, and provide opinions and advice during negotiations to each party. If Broker makes such appointments, Broker appoints:

_____ to the owner; and

_____ to the prospect.

E.   By acknowledging receipt of this notice, the undersigned parties reaffirm their consent for broker to act as an intermediary.

F.   <u>Additional information:</u> *(Disclose material information related to Broker's relationship to the parties, such as personal relationships or prior or contemplated business relationships.)*

The undersigned acknowledge receipt of this notice

| | | | |
|---|---|---|---|
| *Charles C. Foster* | 11/18/2018 **11/17/2018** | *Signature* | 11/17/2018 **11/17/2018** |
| Seller or Landlord | Date | Prospect | Date |
| **Houtex Builders LLC** | | **Boris Alain Otto** | |

| | | | |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Seller or Landlord | Date | Prospect | Date |

(TAR-1409) 1-7-04                                                                                                                  Page 1 of 1

DocuSign Envelope ID: 697FC0F0-AB38-454F-9702-77B0DE9131C9

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)                    08-18-2014

**ADDENDUM FOR PROPERTY SUBJECT TO**
**MANDATORY MEMBERSHIP IN A PROPERTY**
**OWNERS ASSOCIATION**
(NOT FOR USE WITH CONDOMINIUMS)
**ADDENDUM TO CONTRACT CONCERNING THE PROPERTY AT**

| 3 Thornblade Circle | The Woodlands |
|---|---|

(Street Address and City)

Principal Management of Houston /713-329-7100

(Name of Property Owners Association, (Association) and Phone Number)

**A. SUBDIVISION INFORMATION:** "Subdivision Information" means: (i) a current copy of the restrictions applying to the subdivision and bylaws and rules of the Association, and (ii) a resale certificate, all of which are described by Section 207.003 of the Texas Property Code.

(Check only one box):

☐ 1. Within _____ days after the effective date of the contract, Seller shall obtain, pay for, and deliver the Subdivision Information to the Buyer. If Seller delivers the Subdivision Information, Buyer may terminate the contract within 3 days after Buyer receives the Subdivision Information or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer. If Buyer does not receive the Subdivision Information, Buyer, as Buyer's sole remedy, may terminate the contract at any time prior to closing and the earnest money will be refunded to Buyer.

☐ 2. Within _____ days after the effective date of the contract, Buyer shall obtain, pay for, and deliver a copy of the Subdivision Information to the Seller. If Buyer obtains the Subdivision Information within the time required, Buyer may terminate the contract within 3 days after Buyer receives the Subdivision Information or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer. If Buyer, due to factors beyond Buyer's control, is not able to obtain the Subdivision Information within the time required, Buyer may, as Buyer's sole remedy, terminate the contract within 3 days after the time required or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer.

☐ 3. Buyer has received and approved the Subdivision Information before signing the contract. Buyer ☐ does ☐ does not require an updated resale certificate. If Buyer requires an updated resale certificate, Seller, at Buyer's expense, shall deliver it to Buyer within 10 days after receiving payment for the updated resale certificate from Buyer. Buyer may terminate this contract and the earnest money will be refunded to Buyer if Seller fails to deliver the updated resale certificate within the time required.

☒ 4. Buyer does not require delivery of the Subdivision Information.

**The title company or its agent is authorized to act on behalf of the parties to obtain the Subdivision Information ONLY upon receipt of the required fee for the Subdivision Information from the party obligated to pay.**

**B. MATERIAL CHANGES.** If Seller becomes aware of any material changes in the Subdivision Information, Seller shall promptly give notice to Buyer. Buyer may terminate the contract prior to closing by giving written notice to Seller if: (i) any of the Subdivision Information provided was not true; or (ii) any material adverse change in the Subdivision Information occurs prior to closing, and the earnest money will be refunded to Buyer.

**C. FEES:** Except as provided by Paragraphs A, D and E, Buyer shall pay any and all Association fees or other charges associated with the transfer of the Property not to exceed $ 970.00 _____ and Seller shall pay any excess.

**D. DEPOSITS FOR RESERVES:** Buyer shall pay any deposits for reserves required at closing by the Association.

**E. AUTHORIZATION:** Seller authorizes the Association to release and provide the Subdivision Information and any updated resale certificate if requested by the Buyer, the Title Company, or any broker to this sale. If Buyer does not require the Subdivision Information or an updated resale certificate, and the Title Company requires information from the Association (such as the status of dues, special assessments, violations of covenants and restrictions, and a waiver of any right of first refusal), ☒ Buyer ☐ Seller shall pay the Title Company the cost of obtaining the information prior to the Title Company ordering the information.

**NOTICE TO BUYER REGARDING REPAIRS BY THE ASSOCIATION:** The Association may have the sole responsibility to make certain repairs to the Property. If you are concerned about the condition of any part of the Property which the Association is required to repair, you should not sign the contract unless you are satisfied that the Association will make the desired repairs.

| Buyer Boris Alain Otto | Seller Houtex Builders LLC |
|---|---|

| Buyer | Seller |
|---|---|

The form of this addendum has been approved by the Texas Real Estate Commission for use only with similarly approved or promulgated forms of contracts. Such approval relates to this contract form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (www.trec.texas.gov ) TREC No. 36-8. This form replaces TREC No. 36-7.

TREC NO. 36-8

DocuSign Envelope ID: 697FC0F0-AB38-454F-9702-77B0DE9131C9



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)          11-02-2015

# DISCLOSURE OF RELATIONSHIP
# WITH RESIDENTIAL SERVICE COMPANY

**RESIDENTIAL SERVICE CONTRACTS.** A residential service contract is a product under which a residential service company, for a fee, agrees to repair or replace certain equipment or items in a property. Co-payments typically apply to most service calls. Residential service companies are licensed and regulated by the Texas Real Estate Commission. The extent of coverage and the cost of coverage will vary. Before buying a residential service contract, the buyer should read the contract and consider comparing it with the extent of coverage and costs from several other residential service companies. You may obtain a list of the residential service companies licensed in Texas at http://www.trec.texas.gov. **YOU MAY CHOOSE ANY COMPANY.**

**THE PURCHASE OF A RESIDENTIAL SERVICE CONTRACT IS OPTIONAL.** The TREC promulgated residential contract forms contain a paragraph in which the parties may negotiate whether the seller will reimburse the buyer the cost of a residential service contract. The choice of the residential service company and extent of coverage lies with the buyer. **NEITHER A BROKER/SALES AGENT NOR A SELLER MAY CONDITION THE SALE OF A PROPERTY ON THE BUYER'S PURCHASE OF A RESIDENTIAL SERVICE CONTRACT.**

[X]  Other Broker/Sale Agent will receive no compensation from a residential service company.

[X] Listing Broker/Sales Agent will receive no compensation from a residential service company.

[ ]  Other Broker/Sales Agent receives compensation from the following residential service company

[ ] Listing Broker/Sales Agent receives compensation from the following residential service company:

_____

_____

for providing the following services:

for providing the following services:

_____

_____

_____

_____

The compensation is not contingent upon a party to the real estate transaction purchasing a contract or services from the residential service company.

The compensation is the fee for the services that Listing Broker or Other Broker, either directly or through an agent, provides to the company. As required by the Real Estate Settlement Procedures Act and HUD Regulation X, any fees paid to a settlement services provider are limited to the reasonable value of services actually rendered.

RE/MAX Carlton Woods Sales
Other Broker's Name   0475259          License No.

RE/MAX Carlton Woods Sales
Listing Broker's Name   0475259          License No.

By: _____
   **Aaron Harris**

By: _____
   **Aaron Harris**

The undersigned acknowledges receipt of this notice:

_____
Buyer **Boris Alain Otto**

_____
Seller **Houtex Builders LLC**

_____
Buyer

_____
Seller

The form of this addendum has been approved by the Texas Real Estate Commission for use only with similarly approved or promulgated forms or contracts. Such approval relates to this contract form only. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) RSC-2.

(TAR-2513)                                                                                                                      RSC-2

ADDENDUM TO NEW HOME CONTRACT
(Completed Construction)
Between
HOUTEX BUILDERS, LLC as Seller and
BORIS ALAIN OTTO as Buyer

THIS ADDENDUM is attached to and made a part of that certain New Home Contract (Completed Construction) between HOUTEX BUILDERS, LLC ("Seller") and BORIS ALAIN OTTO ("Buyer" herein referred to in the singular whether one or more). In the event of any conflict or inconsistency between the terms of the attached and foregoing printed form contract and this Addendum, this Addendum shall control.

1. **BANKRUPTCY COURT APPROVAL.** Seller has disclosed to Buyer that Seller is the subject of Chapter 11 bankruptcy proceedings currently pending under Cause No. 18-BK-34658 before the United States Bankruptcy Court, Southern District of Texas. Seller's obligation to perform under this contract is expressly made subject to and contingent upon the approval of this Contract and the closing thereof by the bankruptcy court. If the bankruptcy court does not approve this contract and the sale of the Property, Seller shall have the right to terminate this contract without any further obligations of Seller. Upon such termination by Seller, Buyer's earnest money shall be refunded to Buyer.

   If the Seller is not able to close by December 14, 2018, whether because of lack of Bankruptcy Court approval or otherwise, then Buyer shall have the right to terminate this contract without any further obligations between the parties except for the Seller's obligation to cooperate with title company and Seller in order to immediately refund to Buyer the earnest money.

2. **SPECIAL WARRANTY DEED.** The deed to be executed by Seller at closing shall be a **Special Warranty Deed**.

3. **SALE "AS IS, WHERE IS AND WITH ALL FAULTS" AND WITHOUT WARRANTY:** Except for the limited warranty of title to be contained in the Special Warranty Deed to be executed by Seller at closing the sale of the above described Property is made "AS IS, WHERE IS AND WITH ALL FAULTS" AND WITHOUT WARRANTY OF ANY KIND, EXPRESS OR IMPLIED. The deed to be executed by Seller at the closing of this Contract shall contain the following provision:

   GRANTEE IS ACQUIRING THE PROPERTY AND THE IMPROVEMENTS THERON "AS IS, WHERE IS, AND WITH ALL FAULTS AND DEFECTS." EXCEPT FOR THE SPECIAL WARRANTY OF TITLE CONTAINED IN THIS DEED, GRANTOR HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY DISCLAIMS ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO THE PROPERTY AND THE IMPROVEMENTS LOCATED THEREON, INCLUDING WITHOUT LIMITATION: (A) THE NATURE, QUALITY OR CONDITION OF THE PROPERTY AND THE QUALITY OF THE CONSTRUCTION OR CONDITION OF THE IMPROVEMENTS LOCATED THEREON, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL, AND GEOLOGY, OR THE PRESENCE OR ABSENCE OF ANY POLLUTANT, HAZARDOUS WASTE, GAS OR SUBSTANCE OR SOLID WASTE ON OR ABOUT THE PROPERTY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE

DocuSign Envelope ID: 697FC0F0-AB38-454F-9702-77B0DE9131C9

SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH GRANTEE MAY INTEND TO CONDUCT THEREON, (D) THE COMPLIANCE OR OF BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY GOVERNMENTAL AUTHORITY OR BODY HAVING JURISDICTION, (E) THE HABITABILITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE OF THE PROPERTY, (F) ANY OTHER MATTER RELATED TO OR CONCERNING THE PROPERTY AND IMPROVEMENTS THEREON.  GRANTEE HAS BEEN GIVEN AN OPPORTUNITY TO INSPECT THE PROPERTY AND IS RELYING SOLELY ON THEIR OWN INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED BY GRANTOR.  IT IS AGREED THAT GRANTOR HAS NOT MADE ANY REPRESENTATIONS OF ANY KIND RELATED TO THE PROPERTY OR THE IMPROVEMENTS THEREON, THE QUALITY OF CONSTRUCTION OF SAID IMPROVEMENTS OR ANY MATTERS RELATED THERETO.  GRANTEE'S DECISION TO PURCHASE THE PROPERTY HAS BEEN MADE BASED SOLELY UPON GRANTEE'S OWN OBSERVATIONS AND THE INSPECTION OF THE PROPERTY BY EXPERTS OF GRANTEE'S OWN SELECTION.  GRANTOR SHALL NO LIABILITY FOR ANY MATTERS RELATED TO THE CONSTRUCTION OF THE IMPROVEMENTS LOCATED ON THE PROPERTY, AND BY ACCEPTANCE OF THIS DEED, GRANTEE FULLY RELEASES GRANTOR, ITS OWNERS, MANAGERS, AGENTS, CONTRACTORS, ATTORNEYS AND ALL PERSONS ACTING ON ITS BEHALF, FROM ANY AND ALL CLAIMS OF EVERY KIND, WHETHER KNOWN OR UNKNOWN, MATURED OR UNMATURED, OR ARISING IN THE PAST, PRESENT OR FUTURE, RELATED TO THE PROPERTY AND IMPROVEMENTS THEREON.  IT IS UNDERSTOOD AND AGREED THAT THIS DISCLAIMER OF WARRANTIES AND RELEASE HAS BEEN TAKEN INTO ACCOUNT IN THE NEGOTIATION OF THE SALES PRICE OF THE PROPERTY.

The above provision shall be contained in the deed to be delivered by Seller to Buyer at the closing of this transaction and such provision shall survive the execution and delivery of the deed.

ACCEPTED and agreed to:

HOUTEX BUILDERS, LLC

By: _____

Name: _____

Title: _____

"Seller"


BORIS ALAIN OTTO

Name Printed: _____

"Buyer"

## **<u>EXHIBIT B</u>**

Form of Special Warranty Deed

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

### SPECIAL WARRANTY DEED

STATE OF TEXAS             §
                          §      KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF HARRIS           §

HOUTEX Builders, LLC ("**Grantor**"), a debtor in the bankruptcy cases jointly administered as *In re HOUTEX Builders, LLC et al.*, pending before the United States Bankruptcy Court for the Southern District of Texas, Case No. 18-34658 (the "**Bankruptcy Case**"), for and in consideration of the sum of $10 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has GRANTED, BARGAINED, SOLD, and CONVEYED and by these presents does GRANT, BARGAIN, SELL, AND CONVEY unto [●] ("**Grantee**"), that certain property in Harris County, Texas, fully described in Exhibit A hereto, together with all improvements, if any, thereon and all rights appurtenances appertaining thereto (collectively, the "**Property**") pursuant to that certain *Order Approving Sale of Real Property* [ECF No. ●] (the "**Bankruptcy Order**") entered in the cases styled as *In re HOUTEX Builders, L.P. et al.* as Case No. 18-34658 in the U.S. Bankruptcy Court for the Southern District of Texas.

This Special Warranty Deed and the conveyance hereinabove set forth is made and accepted subject to all items on Exhibit B attached hereto, to the extent same are valid and affect the Property (the "**Permitted Exceptions**").

TO HAVE AND TO HOLD the Property, subject to the Permitted Exceptions as aforesaid, unto Grantee, and Grantee's successors and assigns, forever; and Grantor does hereby bind Grantor, and Grantor's successors and assigns, to WARRANT and FOREVER DEFEND, all and singular, the Property, subject to the Permitted Exceptions unto Grantee, and Grantee's successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise.

Except as specifically stated herein, Grantor hereby specifically disclaims any warranty, guaranty, or representation, oral or written, past, present or future, of, as, to, or concerning (i) the nature and condition of the Property, including but not by way of limitation, the water, soil, geology and the suitability thereof, and of the Property, for any and all activities and uses which Grantee may elect to conduct thereon or any improvements Grantee may elect to construct thereon, income to be derived therefrom or expenses to be incurred with respect thereto, or any obligations or any other matter or thing relating to or affecting the same; (ii) the manner of construction and condition and state of repair or lack of repair of any improvements located thereon; (iii) except for any warranties contained herein, the nature and extent of any easement, right-of-way, lease, possession, lien, encumbrance, license, reservation, condition or otherwise; and (iv) the compliance of the Property or the operation of the Property with any laws, rules, ordinances, or regulations of any government

or other body.  THE CONVEYANCE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" BASIS, AND GRANTEE ACKNOWLEDGES THAT, IN CONSIDERATION OF THE AGREEMENTS OF GRANTOR HEREIN, EXCEPT AS OTHERWISE SPECIFIED HEREIN, GRANTOR MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING, BUT IN NO WAY LIMITED TO, ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY.

Grantee, by its acceptance hereof, does hereby assume and agree to pay any and all outstanding ad valorem taxes pertaining to the Property.

[*signature page follows*]

EXECUTED as of _____ __, 2018.

HOUTEX BUILDERS, LLC

By: _____
Name:  Charles C. Foster
Title:   Manager

STATE OF TEXAS              §
                                           §
COUNTY OF HARRIS       §

This instrument was acknowledged before me on this ____ day of _____, 2018, by Charles C. Foster, in his capacity as Manager of HOUTEX Builders, LLC.

_____
Notary Public, State of Texas

**Exhibit A**
**Property Description**

Lot one (1), in block two (2), of the Woodlands Carlton Woods Creekside Section 3 in the Village of Creekside Park, a subdivision in Harris County, Texas according to the map or plat thereof recorded under film code no. 560018 of the map records of Harris County, Texas.

**Exhibit B**
**Permitted Exceptions**

1. Any titles or rights asserted by anyone, including, but not limited to, persons, the public, corporations, governments or other entities,

    a. to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or

    b. to lands beyond the line of the harbor or bulkhead lines as established or changed by any government, or

    c. to filled-in lands, or artificial islands, or

    d. to statutory water rights, including riparian rights, or

    e. to the area extending from the line of mean low tide to the line of vegetation, or the rights of access to that area or easement along and across that area.

2. Standby fees, taxes and assessments by any taxing authority for the year 2018, and subsequent years; and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership, but not those taxes or assessments for prior years because of an exemption granted to a previous owner of the property under Section 11.13, Texas Tax Code, or because of improvements not assessed for a previous tax year.

3. Any covenants, conditions or restrictions indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or national origin are hereby deleted to the extent such covenants, conditions or restrictions violate 42 USC 3604 {c}. Film Code No. 560018 of the Map Records of Harris County, Texas; and under County Clerk's File No. 9348561, of the Official Public Records of Montgomery County, Texas and under County Clerk's File No. V691732, X647128, X647130,X720141, Y569289, Y930223, 20080451072, 20090159877, 20090203838, 20090429702, 20090586422, 20100321658, 20100411385, 20100441570, 20110032485, 20110038109, 20110074242, 20110303502, 20110519289, 20120002501, 20120111826, 20120286735, 20120422512, 20120474207, 20120496671, 20130534655, 20130561719, 20130624333, 20140112884, 20140296904, 20140342113, 20150195065, 20150209434, 20150226444, 20150403838, 2016-99152, 2016-266834, 2016-272154, 2016-418297, 2018-228734, of the Official Public Records of Harris County, Texas.

4. A 20 foot building setback line along the front property line as set forth on the recorded plat and dedication.

5. Easement as shown on the recorded plat and dedication:

    Purpose: sanitary sewer
    Location: front

6. Easement as shown on the recorded plat and dedication:

   Purpose: Drainage
   Location: 15 feet on each side of the center line of all gullies, ravines and other natural drainage courses on the herein described property.

7. Easement:

   Recorded: in County Clerk's File No. 9348561, of the Official Public Records of Montgomery County, Texas, as Annexed by instrument filed for record on March 28, 2002, under County Clerk's File No. V691732, of the Official Public Records, Harris County, Texas.
   Purpose: utilities
   Location: 10 feet I rear and front; and 5 feet/ interior sides

8. Easement: Electric Distribution and Communication Facilities, Natural Gas Facilities, Telephone Communication Facilities and Cable Communication Facilities

   Recorded: in County Clerk's File No. Z294015, of the Official Public Records, Harris County, Texas.
   Purpose: utilities
   Location: 5 feet/ southwesterly side and northeasterly side; and 7 feet northwesterly (rear)

9. Terms, Conditions, and Stipulations in the Agreement by and between:

   Parties: CenterPoint Energy Houston Electric, LLC, a Texas Corporation and The Woodlands Land Development Company, LP.
   Recorded: July 10, 2006 in County Clerk's File No. Z437895, of the Official Public records, of Harris County, Texas.
   Type: Agreement for Underground Electric Service

10. Mineral and/or royalty interest:

    Recorded: July 23, 2007 in County Clerk's File No. 20070446842, of the Official Public records, of Harris County, Texas.

11. Mineral and/or royalty interest:

    Recorded: November 16, 2007 in County Clerk's File No. 20070684279, of the Official Public records, of Harris County, Texas.

12. Mineral and/or royalty interest:

    Recorded: February 20, 2008 in County Clerk's File No. 20080082530, of the Official Public records, of Harris County, Texas.

13. Reservation of all of the subterranean waters in or under the property, including, without limitation, all percolating waters and underground reservoirs, and all rights appurtenant to

the full use and enjoyment thereof, and all rights appurtenant to all underground streams in or under the property that are characterized by definite channel, as set forth per instrument filed for record on February 09, 2006, under County Clerk's File No. Y650837, of the Official Public Records of Montgomery County, Texas.

14. All leases, grants, exceptions or reservations of coal, lignite, oil, gas and other minerals, together with all rights, privileges, and immunities relating thereto, appearing in the Public Records.

15. Subject to Initial Land Use Designation executed by The Woodlands Land Development Company, LP., a Texas limited partnership, as set forth per instrument dated June 24, 2004, filed for record on June 25, 2004, under Clerk's File No. X720141 and by instrument dated August 20, 2008, filed for record on August 28, 2008, under County Clerk's File No. 20080451072, of the Official Public Records of Montgomery County, Texas.

16. Subject to Zoning Ordinance, if any, by the City of Spring, Texas

17. Inclusion within Harris County Municipal Utility District No. 386.