# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 18-34658** |
| **HOUTEX BUILDERS, LLC,** *et al.,*[1] | § | |
| | § | **CHAPTER 11** |
| **DEBTORS.** | § | |

## CORRECTED[2] AMENDED JOINT PLAN OF LIQUIDATION OF HOUTEX BUILDERS, LLC, 2203 LOOSCAN LANE, LLC, AND 415 SHADYWOOD, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

[1]   The names of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Houtex Builders, LLC (2111); 2203 Looscan Lane, LLC (1418); and 415 Shadywood, LLC (7627).

[2]   The Debtors file this corrected amended plan pursuant to the *Order On Amended Disclosure Statement* [ECF 338] to correct typographical errors.

EXHIBIT A

# TABLE OF CONTENTS

**ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION** .................................................. **1**

    A.    Defined Terms. ....................................................................................................... 1
    B.    Rules of Interpretation. ........................................................................................ 9
    C.    Exhibits and Schedules. ........................................................................................ 9

**ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS** .......................................................... **10**

    A.    Non-DIP Administrative Claims. ....................................................................... 10
    B.    Professional Compensation and Professional Fee Reserve. ............................ 10
    C.    Priority Claims. .................................................................................................. 10
    D.    General. ............................................................................................................... 11

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND MEMBER INTERESTS** .... **11**

    A.    Summary. ............................................................................................................ 11
    B.    Classification of Claims and Member Interests ................................................ 11
    C.    Treatment of Claims and Member Interests .................................................... 12
    D.    Special Provision Governing Unimpaired Claims. ...................................... ~~17~~18
    E.    Nonconsensual Confirmation. ........................................................................... 18

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** .................................................. **18**

    A.    Sale and Distribution of Non-Remnant Assets. ............................................... 18
    B.    Preservation of Causes of Action ...................................................................... 18
    C.    Remnant Asset Auctions. .............................................................................. ~~18~~19
    D.    Houtex Liquidating Trust. ............................................................................ ~~19~~20
    E.    Operations of the Debtors Between Confirmation Date and Effective Date ... 21
    F.    Establishment of the Administrative Claims Bar Date. ................................... 22
    G.    Term of Injunctions or Stays. ........................................................................... 22
    H.    Debtors' Professionals. ...................................................................................... 22
    I.    Closure of Looscan and Shadywood Cases. ..................................................... 22

**ARTICLE V PROVISIONS GOVERNING DISTRIBUTIONS** ......................................................... **23**

    A.    Houtex Distributions ......................................................................................... 23
    B.    Disputed Claims. ................................................................................................ 23
    C.    Undeliverable Distributions. ............................................................................. 23
    D.    Unclaimed Property. .......................................................................................... 23
    E.    Manner of Cash Payments Under the Plan. ..................................................... 24
    F.    Time-Bar to Cash Payments by Check. ............................................................ 24
    G.    Compliance with Tax Requirements. ................................................................ 24
    H.    No Payments of Fractional Dollars and Minimum Distributions. .................. 24
    I.    Interest on Claims. ............................................................................................. 24
    J.    No Distribution in Excess of Allowed Amount of Claim. ................................ 25
    K.    Setoff and Recoupment. ..................................................................................... 25
    L.    No Distribution Pending Allowance. ................................................................. 25

**ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......... **25**

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ... 25

i

    **B.**      **Claims Based on Rejection of Executory Contracts and Unexpired Leases.** ............................................... 25

    **C.**      **Cure Claims.** ...................................................................... 26

**ARTICLE VII CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ..................................... **26**

    **A.**      **Conditions Precedent to Effective Date** .................................. 26

    **B.**      **Waiver of Conditions** ........................................................... 26

**ARTICLE VIII INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS** ......... **26**

    **A.**      **Compromise and Settlement.** ............................................... 26

    **B.**      **Releases.** ........................................................................... 27

    **C.**      **Exculpation.** ...................................................................... 27

    **D.**      **Injunction.** ........................................................................ 28

    **E.**      **Release of Liens.** ............................................................... 28

    **F.**      **Carve-Out** ......................................................................... 28

**ARTICLE IX RETENTION OF JURISDICTION** ...................................................................... **28**

**ARTICLE X MISCELLANEOUS PROVISIONS** ....................................................................... **29**

    **A.**      **Final Fee Applications.** ....................................................... 29

    **B.**      **Payment of Statutory Fees.** ................................................. 29

    **C.**      **Modification of the Plan.** .................................................... 30

    **D.**      **Revocation of Plan.** ............................................................ 30

    **E.**      **Successors and Assigns.** ...................................................... 30

    **F.**      **Governing Law and Construction.** ....................................... 30

    **G.**      **Reservation of Rights.** ........................................................ 30

    **H.**      **Section 1146 Exemption.** ..................................................... 31

    **I.**      **Section 1125(e) Good Faith Compliance.** .............................. 31

    **J.**      **Further Assurances.** ........................................................... 31

    **K.**      **Service of Documents.** ........................................................ 31

    **L.**      **Filing of Additional Documents.** ......................................... 31

    **M.**      **No Stay of Confirmation Order.** .......................................... 32

    **N.**      **Bankruptcy Code Section 1141 Discharge.** ........................... 32

Pursuant to title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, Houtex Builders, LLC ("Houtex"), 2203 Looscan Lane, LLC ("Looscan"), and 415 Shadywood, LLC ("Shadywood" and (collectively with Houtex and Looscan, the "Debtors") in the above-captioned Chapter 11 Cases hereby respectfully propose the following Joint Plan of Liquidation under chapter 11 of the Bankruptcy Code.

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Defined Terms.

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Accrued Professional Compensation*" means, at any given moment, all accrued and/or unpaid fees and expenses (including, without limitation, fees or expenses Allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under §§ 328, 330(a) or 331 of the Bankruptcy Code, arising under §§ 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(6) of the Bankruptcy Code or otherwise rendered prior to the Effective Date, or thereafter in connection with: (i) applications filed pursuant to §§ 328, 330 and 331 of the Bankruptcy Code; (ii) motions seeking the enforcement of the provisions of the Plan or Confirmation Order, by all Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been filed for any such amount; and (iii) applications for allowance of Administrative Expenses.  To the extent that the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

2.    "*Administrative Claims*" means Claims that have been timely filed before the Administrative Claims Bar Date, pursuant to the deadline and procedure set forth in the Plan or Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under §§ 503(b) (including claims under §§ 503(b)(3)(F) and 503(b)(9)), 507(b) or 1114(e)(2) of the Bankruptcy Code), including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (ii) all fees and charges assessed against the Estate under chapter 123 of title 28 of the U.S. Code, 28 U.S.C. §§ 1911–1930); *provided, however*, that such Administrative Claims shall not include claims for Accrued Professional Compensation.

3.    "*Administrative Claims Bar Date*" means the first day that is established by the Bankruptcy Court in the Confirmation Order as the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim.

4.    "*Allowed*" means, with respect to any Claim or Member Interest, except as otherwise provided herein: (i) a Claim or Member Interest that has been scheduled by a Debtor in its Schedule as other than disputed, contingent or unliquidated; (ii) a Claim or Member Interest that has

been allowed by a Final Order; (iii) a Claim or Member Interest that is allowed: (a) in any stipulation of amount and nature of such Claim or Member Interest executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court; (b) in any stipulation with a Debtor or the Liquidating Trustee, as applicable, of the amount and nature of such Claim or Member Interest executed on or after the entry of the Confirmation Order; or (c) in or pursuant to any contract, instrument or other agreement entered into or assumed in connection herewith; (iv) a Claim or Member Interest that is allowed pursuant to the terms of this Plan; or (v) a Claim as to which a proof of claim has been timely filed and as to which no objection has been filed by the Claims Objection Bar Date.  Any claim that has been or is hereafter listed in the Schedule as contingent, unliquidated, or disputed, and for which no proof of claim is or has been timely filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to § 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtors or the Liquidating Trustee, as applicable.  For the avoidance of doubt, a proof of claim filed after the General Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

5.    "*Auction*" means, with respect to each sale of Remnant Assets, the sale process and auction to be conducted by each Debtor as more fully described in Article IV.  The term "*Auctions*" refers collectively to all Auctions of Remnant Assets.

6.    "*Available Cash*" means, with respect to a Debtor, such Debtor's Cash on hand on the date of determination.

7.    "*Avoidance Actions*" include all avoidance actions under §§ 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 or 724 of the Bankruptcy Code.

8.    "*Bankruptcy Code*" means §§ 101, et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as amended from time to time and as applicable to the Chapter 11 Cases.

9.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

10.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas, the Local Rules of the Bankruptcy Court, and general orders and chamber procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

11.    "*Cash*" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and readily marketable securities or instruments issued by an Entity, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "A" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than one hundred

million dollars ($100,000,000) having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

12.     "*Causes of Action*" means any and all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, defenses, counterclaims and cross claims, now owned or hereafter acquired by the Debtors and/or their Estates that are or may be pending or on or have accrued prior to the Effective Date against any Person or Entity other than a Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Confirmation Date; *provided, however*, that "*Causes of Action*" shall exclude any Causes of Action released in the Plan.

13.     "*Certificate of Deposit*" refers to the certificate of deposit in the amount of approximately $250,000 held at Independence Bank in the name of Houtex.

14.     "*Chapter 11 Cases*" means the chapter 11 cases commenced when the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date and assigned the following case numbers: 18-34660 (Looscan); 18-34659 (Shadywood); and 18-34658 (Houtex).

15.     "*Claim*" has the meaning set forth in § 101(5) of the Bankruptcy Code.

16.     "*Claims Objection Bar Date*" means the deadline for objecting to scheduled Claims or proofs of Claim, which shall be ninety (90) days after the Effective Date; *provided, however*, that the Liquidating Trustee may seek one or more extensions of sixty (60) days by filing a notice of extension on the docket of these jointly administered Bankruptcy cases prior to the expiration of the last period.

17.     "*Class*" means a category of Claims or Member Interests as set forth in Article III herein pursuant to § 1122(a) of the Bankruptcy Code.

18.     "*Collateral*" means, with respect to a Secured Claim, the property in which a secured creditor claims a Lien or similar perfected security interest.  For the avoidance of doubt, Collateral includes proceeds from the sale of property of the Debtors.

19.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket in this Chapter 11 Cases.

20.     "*Confirmation Hearing*" means the hearing to consider confirmation of the Plan in accordance with §§ 1128(a) and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

21.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements and related documents, which order shall be in form and substance satisfactory to the Debtors.

22.     "*Consummation*" means the occurrence of the Effective Date.

23.     "*Creditor*" has the meaning set forth in § 101(10) of the Bankruptcy Code.

24.     "*Court*" means either the Bankruptcy Court or court of competent jurisdiction.

25.     "*Debtors*" or "*Debtors in Possession*" means, collectively, Looscan, Shadywood, and Houtex.

26.     "*Deficiency*" means, with respect to a Secured Claim, the difference between the value of the Collateral securing such Claim and the Allowed Amount of the Claim, if any.

27.     "*DIP Facility*" means, collectively, the debtor-in-possession financing facilities established pursuant to the *Final Order Authorizing Debtors to Obtain Credit Pursuant to Second Funding Commitment Letter* [ECF No. 175].

28.     "*DIP Facility Claims*" means any Claim derived from or based upon the DIP Facility.

29.     "*DIP Lender*" means Charles Foster.

30.     "*Disclosure Statement*" means the *Amended Disclosure Statement in support of Joint Plan of Liquidation*, dated [●] 2019, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, and approved by the Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time in compliance with the Disclosure Statement Order, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

31.     "*Disclosure Statement Order*" means the order approving the Disclosure Statement entered by the Bankruptcy Court on [●], 2019 [ECF No. [●]].

32.     "*Disputed*" means any Claim or Member Interest or any portion thereof:  (i) that is listed on the Schedule as unliquidated, disputed or contingent; (ii) as to which a Debtor or any other party-in-interest with standing has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (iii) otherwise disputed by a Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

33.     "*Disputed Reserve*" means the reserve fund created pursuant to Article V herein.

34.     "*Distributions*" means the distributions of Cash or other consideration on account of Allowed Claims to be made under and in accordance with the Plan.

35.     "*Effective Date*" means the date specified by the Debtors in a notice filed with the Bankruptcy Court as the date on which the Plan shall take effect, which date shall be following the date by which (i) the Confirmation Order becomes a Final Order and no stay of the Confirmation Order is in effect; and (ii) all conditions specified in Article VII of the Plan have been satisfied or waived in accordance with the Plan.

36.     "*Entity*" has the meaning set forth in § 101(15) of the Bankruptcy Code.

37.     "*Estate*" means, with respect to each Debtor, the estate of such Debtor created on the Petition Date by § 541 of the Bankruptcy Code.

38.     "*Executory Contract and Unexpired Lease Assumption and Assignment Schedule*" means the schedule designating the Executory Contracts and Unexpired Leases to be assumed and assigned to a Debtor and setting forth the monetary cure amount a Debtor believes to be owed with respect to each such Executory Contract and Unexpired Lease.

39.     "*Executory Contracts and Unexpired Leases*" means all contracts and leases between a Debtor and any third-parties that are "executory contracts" or "unexpired leases" as such terms are used in § 365 of the Bankruptcy Code.

40.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

41.     "*Final Distribution Date*" means the earlier to occur of (i) the date on which the Liquidating Trust terminates or (ii) twenty-eight (28) days after the date on which the Liquidating Trustee files notice with the Bankruptcy Court that the Liquidating Trustee has determined, in his reasonable discretion and in accordance with the terms of this Plan and the Liquidating Trust Agreement, that the Houtex Liquidating Trust has been fully administered.

42.     "*Final Order*" means an order, determination or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered on the docket in the Debtors Chapter 11 Cases (or on the docket of such other court of competent jurisdiction) which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for re-argument or rehearing or reconsideration has expired and no appeal or petition for certiorari or appropriate motion has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order, determination or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice and as to which the time for any subsequent appeal, petition for certiorari or move for re-argument or rehearing or reconsideration has expired and no such subsequent appeal or petition for certiorari or appropriate motion has been timely taken, or has been resolved by the court to which the order, determination or judgment was so subsequently appealed.

43.     "*General Bar Date*" means December 31, 2018, at 5:00pm (prevailing Central time) as established in the Notice of Chapter 11 Bankruptcy Case [ECF No. 10].

44.     "*General Unsecured Claims*" means all unsecured Claims asserted against the Debtors.

45.     "*Houtex*" means Houtex Builders, LLC.

46.     "*Houtex Causes of Action*" means Causes of Action belonging to Houtex or its Estate against any and all third parties.

47.     "*Houtex Liquidating Trust*" means that certain trust that will come into existence if the DIP Lender is the Successful Bidder on the Houtex Remnant Assets and which all of the Houtex Remnant Assets will vest pursuant to the Plan.

48. "*Houtex Remnant Assets*" means any Property, including any Causes of Action, in which the estate of Houtex has an interest as of the Confirmation Date, excluding any Collateral and the Certificate of Deposit.

49. "*Houtex Remnant Asset Sale Proceeds*" means any Cash proceeds from any sale of the Houtex Remnant Assets.

50. "*Impaired*" means, with respect to a Claim, Member Interest, or Class of Claims or Member Interests, "impaired" within the meaning of § 1124 of the Bankruptcy Code.

51. "*Lien*" has the meaning set forth in § 101(37) of the Bankruptcy Code.

52. "*Liquidating Trust Agreement*" means the agreement governing the Houtex Liquidating Trust dated on or before the Effective Date.   The form Liquidating Trust Agreement is attached hereto as <u>Exhibit 1</u>.

53. "*Liquidating Trust Beneficial Interests*" means the beneficial interests in the Houtex Liquidating Trust, which shall be distributed Pro Rata to the Holders of Claims entitled to the Liquidating Trust Beneficial Interests under the Plan.

54. "*Liquidating Trustee*" means Charles Foster in his capacity as the trustee of the Liquidating Trust.

55. "*Looscan*" means 2203 Looscan Lane, LLC.

56. "*Looscan Causes of Action*" means Causes of Action belonging to Looscan or its Estate against any and all third parties.

57. "*Looscan Remnant Assets*" means any Property, including any Causes of Action, in which the estate of Houtex has an interest as of the Confirmation Date.

58. "*Looscan Remnant Asset Sale Proceeds*" means any Cash proceeds from any sale of the Looscan Remnant Assets.

59. "*Lynbrook House*" means collectively the land, improvements, and accessories located at Lot 24, Block 8 of the Tanglewood SEC 3 Addition, City of Houston, in Harris County and known as 5325 Lynbrook Drive, Houston, Texas 77056.

60. "*Lynbrook House Proceeds*" means any Cash proceeds from any sale of the Lynbrook House.

61. "*Member Interest*" means any member interest in the Debtors that existed immediately prior to the Petition Date, including all common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of the Debtors and options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of the Debtors (whether or not arising under or in connection with any employment agreement), including any claim against the Debtors subject to subordination pursuant to § 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

62.     "*Non-DIP Administrative Claims*" means Administrative Claims that are not DIP Facility Claims.

63.     "*Nored Note*" means that certain promissory note dated May 30, 2014, executed by Jim Nored in favor of Houtex Builders, LLC in the Principal Amount up to $1,600,000.

64.     "*Other Secured Claim*" means a Secured Claim against a Debtor other than (i) the CommunityBank Secured Claim, (ii) the Spirit of Texas Bank Secured Claim and (iii) the Great Southwest Financial Corporation Claim.

65.     "*Person*" means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or any other entity as such term is defined in § 101(15) of the Bankruptcy Code.

66.     "*Petition Date*" means August 23, 2018, the date on which the Debtors filed the Chapter 11 Cases.

67.     "*Plan*" means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, including, without limitation, all applicable exhibits, supplements, appendices and schedules hereto, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, which shall be in form and substance acceptable to the Debtors.

68.     "*Plan Supplement*" means, collectively, (i) the exhibits to any *Notice of Supplement* to this Plan, including, among other documents relevant to the implementation of the Plan, and the Trust Agreement, and (ii) any additional supplement(s) to the Plan which additional supplement(s) shall in each case be in form and substance acceptable to the Debtors and the other parties-in-interest with respect to such documents (to the extent applicable with respect to each document).

69.     "*Priority Claims*" means Claims accorded priority in right of payment under §507(a) of the Bankruptcy Code.

70.     "*Pro Rata*" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that respective Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed Interests under the Plan.

71.     "*Professional*" means any Person or Entity employed pursuant to a Final Order in accordance with §§ 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered and awarded reimbursement of expenses incurred prior to and including the Effective Date pursuant to §§ 327, 328, 329, 330 or 331 of the Bankruptcy Code.

72.     "*Professional Fee Claim Bar Date*" means the date that is forty-five (45) days after the Effective Date.

73.    "*Professional Fee Reserve*" means a reserve funded on the Effective Date from Houtex's Available Cash, as of the Effective Date, which shall initially be funded in an amount equal to the estimated Accrued Professional Compensation for the Debtors through the Effective Date provided by each Professional before the Effective Date.  The Professional Fee Reserve shall not be encumbered.

74.    "*Releasees*" means the Debtors' Professionals; *provided*, *however*, that each Professional shall only be released as specifically set forth in Article VIII of the Plan.

75.    "*Remnant Assets*" means, collectively, the Looscan Remnant Assets, the Shadywood Remnant Assets, and the Houtex Remnant Assets.

76.    "*Remnant Asset Proceeds*" means any Cash proceeds generated from the sale of Remnant Assets.

77.    "*Representatives*" means, with regard to an Entity, its direct and indirect shareholders, managers, officers, directors, employees, advisors, members, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, independent contractors, members and professionals) and each of their predecessors, successors and assigns.

78.    "*Schedule*" means the schedule of assets and liabilities, schedule of executory contracts and statement of financial affairs filed by the Debtors pursuant to § 521 of the Bankruptcy Code.

79.    "*Secured Claims*" means Claims against any of the Debtors that are (i) secured by a Lien on property in which a Debtor has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or (ii) subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in a Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to § 506(a) of the Bankruptcy Code.

80.    "*Shadywood*" means 415 Shadywood, LLC.

81.    "*Shadywood Causes of Action*" means Causes of Action belonging to Houtex or its Estate against any and all third parties.

82.    "*Shadywood Remnant Assets*" means any and all Property, including any Causes of Action, in which the estate of Shadywood has an interest as of the Confirmation Date.

83.    "*Shadywood Remnant Asset Sale Proceeds*" means any Cash proceeds from any sale of the Shadywood Remnant Assets.

84.    "*Successful Bidder*" means, with respect to each Auction of Remnant Assets, the Person or Entity who makes the highest or otherwise best bid for such Remnant Assets.

85.    "*Thornblade*" means the real property, improvements, and accessories located at the Lot one (1), in block two (2), of the Woodlands Carlton Woods Creekside Section 3 in the Village of Creekside Park, a subdivision in Harris County, Texas according to the map or plat

thereof recorded under film code no. 560018 of the map records of Harris County, Texas and commonly known as 3 Thornblade Circle, The Woodlands, TX 77389.

86.     "*Thornblade Sale Proceeds*" means the proceeds resulting from any sale of Thornblade.

87.     "*U.S. Trustee*" means the United States Trustee appointed under § 591 of title 28 of the United States Code to serve in the Southern District of Texas.

88.     "*Unsecured Claims*" means Claims against the Debtors, the repayment of which is not supported by any property of the Debtors under § 541 of the Bankruptcy Code.

89.     "*Unimpaired*" means, with respect to a Claim, Member Interest, or Class of Claims or Member Interests, not Impaired.

## B.     Rules of Interpretation.

1.     For purposes herein:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (ii) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) any reference herein to an existing document or exhibit having been filed or to be filed means that document or exhibit, as it may thereafter be amended, modified or supplemented; (iv) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (v) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply; and (viii) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Rules, as the case may be.

2.     The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3.     All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## C.     Exhibits and Schedules.

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into, and are a part of the Plan, as if set forth herein.  All exhibits and schedules to the Plan, including the Plan Supplement, if one is required, shall be filed with the Clerk of the Bankruptcy Court not later than the earlier of (i) ten (10) days prior to the commencement of the Confirmation Hearing and (ii) five (5) days prior to the deadline for filing objections to confirmation of the Plan.  Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court or is available pursuant to a written request made directly to

counsel for the Debtors, Charles M. Rubio at crubio@diamondmccarthy.com and Michael D. Fritz at mfritz@diamondmccarthy.com.

## ARTICLE II
## ADMINISTRATIVE AND PRIORITY CLAIMS

**A.    Non-DIP Administrative Claims.**

Each holder of any outstanding Allowed Non-DIP Administrative Claim against Houtex shall be paid by the Liquidating Trustee the full unpaid amount of such Non-DIP Allowed Administrative Claim, in Cash, (a) on the later of:  (i) seven (7) days after the Effective Date (or, if not then due, within seven (7) days after the date when such Allowed Administrative Claim is due in the ordinary course of business); and (ii) if such Claim is Disputed and is Allowed after the Effective Date, on the date that is seven (7) days after such Claim is Allowed by a Final Order, or (b) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Each holder of an outstanding Allowed Non-DIP Administrative Claim against Looscan or Shadywood shall be paid from the Looscan Remnant Asset Proceeds or Shadywood Remnant Asset Proceeds, respectively.  The Debtors do not believe there will be any Allowed Non-DIP Administrative Claims on or after the Confirmation Date against Shadywood or Looscan.

For the avoidance of doubt, Non-DIP Administrative Claims do not include Non-DIP Administrative Claims filed after the Administrative Claims Bar Date.

**B.    Professional Compensation and Professional Fee Reserve.**

All Professionals employed by the Debtors in the Chapter 11 Cases shall (i) provide to the Debtors within seven (7) days after the Confirmation Date, an estimate of their Accrued Professional Compensation through the Effective Date, and (ii) file all requests for allowance of compensation and reimbursement of expenses pursuant to §§ 328, 330 or 503(b) of the Bankruptcy Code for services performed and expenses incurred in the Chapter 11 Cases through the Effective Date by no later than the Professional Fee Claim Bar Date.

During January 2019, the principal asset of Shadywood and Looscan were sold.  As a result, all Professional services incurred after February 1, 2019 are principally benefiting Houtex and shall be asserted exclusively against Houtex and not Shadywood or Looscan.

On the Effective Date, Houtex or the Liquidating Trustee, as the case may be, shall establish and fund the Professional Fee Reserve in accordance with the estimates provided by the Professionals in accordance with the preceding sentence.

In the event of excess amounts remaining in the Professional Fee Reserve after all Allowed Claims of Professionals have been paid in full, such excess amounts shall distributed to holders of Allowed Houtex General Unsecured Claims in accordance with the provisions of this Plan or the Liquidating Trust Agreement.

### C.    Priority Claims.

The Liquidating Trustee shall pay each holder of an Allowed Priority Claim against Houtex the full unpaid amount of such Allowed Priority Claim in Cash, on the later of: (i) seven (7) days after the Effective Date; (ii) seven (7) days after the date such Priority Claim becomes Allowed; and (iii) the date such Allowed Priority Claim is payable under applicable non-bankruptcy law.

There are no holders of Priority Claims against Looscan or Shadywood.

### D.    General.

Each Debtor shall pay all Allowed Non-DIP Administrative Claims and Allowed Priority Claims in full.  Houtex or the Liquidating Trustee shall pay all Allowed Claims for Accrued Professional Compensation in full no later than seven (7) days after such Professional Compensation is approved by the Bankruptcy Court from the Professional Fee Reserve.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND MEMBER INTERESTS

### A.    Summary.

1.    In accordance with § 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Non-DIP Administrative Claims or Priority Claims, as described in Article II.

2.    The following table classifies Claims against and Member Interests in the Debtors, for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to §§ 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Member Interest to be classified in a particular Class only to the extent that the Claim or Member Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that such Claim or Member Interest or any portion thereof qualifies within the description of such different Class.  A Claim or Member Interest is in a particular Class only to the extent that any such Claim or Member Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and distribution purposes.

### B.    Classification of Claims and Member Interests

1.    DIP Facility Claims

      a.    Houtex DIP Facility Claim

      b.    Shadywood DIP Facility Claim

      c.    Looscan DIP Facility Claim

2.    Secured Claims

      a.    CommunityBank

      b.   Spirit of Texas Bank

      c.   Great Southwest Financial Corporation

      d.   Other Secured Claims

3.    General Unsecured Claims

      a.   Houtex General Unsecured Claims

      b.   Shadywood General Unsecured Claims

      c.   Looscan General Unsecured Claim

4.    Member Interests

      a.   Houtex Member Interests

      b.   Shadywood Member Interests

      c.   Looscan Member Interests

**C.    Treatment of Claims and Member Interests**

1.    **DIP Facility Claims Classes**

    **a.  Houtex DIP Facility Claim**

      i.    *Classification*: The Houtex DIP Facility Claim Class consists of all of the DIP Facility Claim against Houtex.

      ii.    *Allowance*: The Houtex DIP Facility Claim shall be Allowed in the amount determined by an order of the Bankruptcy Court.

      iii.    *Treatment*: No later than seven (7) days after the Effective Date, except to the extent that the holder of the Allowed Houtex DIP Facility Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the Allowed Houtex DIP Facility Claim, Houtex shall pay the Allowed Houtex DIP Facility Claim from Available Cash.

      iv.    *Voting*: The Allowed Houtex DIP Facility Claim Class is Unimpaired and, therefore, the holder of the Allowed Houtex DIP Facility Claim is not entitled to vote to accept or reject the Plan.

    **b.  Shadywood DIP Facility Claim**

      i.    *Classification*: The Shadywood DIP Facility Claim consists of all of the DIP Facility Claim against Shadywood.

      ii.     *Allowance*:  The Shadywood DIP Facility Claim Class shall be Allowed in the amount determined by an order of the Bankruptcy Court.

      iii.     *Treatment*:  The holder of the Allowed Shadywood DIP Facility Claim shall submit a non-cash bid in the full unpaid amount of his Allowed Shadywood DIP Facility Claim at Auction for the Shadywood Remnant Assets.  If the holder of the Allowed Shadywood DIP Facility Claim is declared the Successful Bidder at the Auction, the holder of the Allowed Shadywood DIP Facility Claim shall receive the Shadywood Remnant Assets.  If holder of the Allowed Shadywood DIP Facility Claim is not the Successful Bidder at an Auction, the holder of the Shadywood DIP Facility Claim shall be paid in full and final satisfaction, settlement and discharge of, and in exchange for the DIP Facility Claim from the proceeds of the Remnant Asset Sale.

      iv.     *Voting*:  The Allowed Shadywood DIP Facility Claim Class is Impaired and, therefore, the holder of the Allowed Shadywood DIP Facility Claim is entitled to vote to accept or reject the Plan.

### c.  Looscan DIP Facility Claim Class

      i.     *Classification*:  The Looscan DIP Facility Claim Class consists of all of the DIP Facility Claim against Looscan.

      ii.     *Allowance*:  The Looscan DIP Facility Claim shall be Allowed in the amount determined by an order of the Bankruptcy Court.

      iii.     *Treatment*:  The holder of the Allowed Looscan DIP Facility Claim shall submit a non-cash bid in the full unpaid amount of his Allowed Looscan DIP Facility Claim at Auction for the Looscan Remnant Assets.   If the holder of the Allowed Looscan DIP Facility Claim is declared the Successful Bidder at the Auction, the holder of the Allowed Looscan DIP Facility Claim shall receive the Looscan Remnant Assets.  If holder of the Allowed Looscan DIP Facility Claim is not the Successful Bidder at an Auction, the holder of the Allowed Looscan DIP Facility Claim shall be paid in full and final satisfaction, settlement and discharge of, and in exchange for the Looscan DIP Facility Claim from the proceeds of the Remnant Asset Sale.

      iv.     *Voting*:  The Allowed Shadywood DIP Facility Claim Class is Impaired and, therefore, the holder of the Allowed Shadywood DIP Facility Claim is entitled to vote to accept or reject the Plan.

2.      **Secured Claims**

### a.  CommunityBank Secured Claim

      i.     *Classification*:  CommunityBank Secured Claim Class consists of the Allowed Secured Claim of CommunityBank of Texas NA against Houtex as set forth in claim number 14 in the Houtex claim register plus all post-petition fees and

expenses.

      ii.    *Allowance*:  CommunityBank Secured Claim shall be Allowed in the amount of 1,584,898.09 plus 303.40 for each day after March 14, 2019 until the Effective Date.

      iii.    *Treatment*:  No later than seven (7) days after the Effective Date, except to the extent that the holder of the CommunityBank Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the CommunityBank Secured Claim, Houtex shall pay the Allowed CommunityBank Secured Claim in full from Available Cash.

      iv.    *Voting*:  The CommunityBank Secured Claim Class is Unimpaired and, therefore, the holder of the Allowed CommunityBank Secured Claim is not entitled to vote to accept or reject the Plan.

### b.  Spirit of Texas Bank Secured Claim

      i.    *Classification:*  Spirit of Texas Bank Secured Claim Class consists of the Allowed Secured Claim of Spirit of Texas Bank against Houtex as set forth in claim number 15 in the Houtex claim register.

      ii.    *Allowance*:  The Spirit of Texas Bank Secured Claim shall be Allowed in the amount of 1,725,759.95.

      iii.    *Treatment*:  Except to the extent that the holder of the Spirit of Texas Secured Claim agrees to less favorable treatment, the holder of the Spirit of Texas Bank shall receive the following: (i) no later than fifteen (15) days after the Confirmation Date, all of the remaining proceeds of the sale of Thornblade plus the certificate of deposit at Spirit of Texas in the amount of $252,000.00, (ii) no later than seven (7) days after the liquidation of the Nored Note, the proceeds of the Nored Note, and (iii) a Houtex General Unsecured Claim for any portion of the Spirit of Texas Bank Secured Claim that is not satisfied by (i) and (ii) (the "Spirit of Texas Bank Deficiency Claim").   At any time, Spirit of Texas Bank may waive its entitlement to the proceeds of the Nored Note by sending written notification of such waiver to Houtex or the Liquidating Trustee and in such case the Nored Note will be liquidated for the benefit of all the Houtex General Unsecured Creditors and the Spirit of Texas Bank Deficiency Claim will be determined by just taking into account the distribution of property in (i) above.

      iv.    *Voting*:  The Spirit of Texas Bank Secured Claim Class is Impaired and, therefore, the holder of the Allowed Spirit of Texas Bank Secured Claim is entitled to vote to accept or reject the Plan.  In addition, Spirit of Texas Bank shall be entitled to vote as a Houtex General Unsecured Claim Class for the Spirit of Texas Bank Deficiency Claim in the amount of $1,323,973.45.

### c.  Great Southwest Financial Corporation Claim

i.  *Classification*: Great Southwest Financial Corporation consists of the Allowed Claim of Great Southwest Financial Corporation against Houtex as set forth in claim number 6 in the Houtex claim register.

ii.  *Allowance*:  The Great Southwest Financial Corporation Claim shall be Allowed in the amount of $387,254.71.

iii.  *Treatment*:  Except to the extent that the holder of the Great Southwest Financial Corporation Claim agrees to less favorable treatment, the holder of the Great Southwest Financial Corporation Claim shall receive a Houtex General Unsecured Claim in the amount of $387,254.71.

iv.  *Voting*:  Great Southwest Financial Corporation Claim is Impaired and, therefore, the holder of the Great Southwest Financial Corporation Claim is entitled to vote to accept or reject the Plan.  Great Southwest Financial Corporation shall be entitled to vote as a Houtex General Unsecured Claim in the amount of $387,254.71.

### d.  Other Secured Claims

i.  *Classification*: Each holder of an Other Secured Claim is placed in a separate class.  The Debtors believe that the Other Secured Claims are the claims for property taxes (estimated in the maximum amount of $210,000 on the Effective Date) and home owners association fees on the Lynbrook house (estimated in the maximum amount of $2,000 on the Effective Date).

ii.  *Allowance*:  Other Secured Claims will be deemed Allowed by order of the Bankruptcy Court.

iii.  *Treatment*:  Any creditor holding an Other Secured Claim that is not expressly otherwise provided for herein shall receive the following: (a) if the value of the collateral securing the Other Secured Claim is equal to or greater than the Allowed amount of such Other Secured Claim then the holder of such Other Secured Claim shall receive the following: (i) the property securing the Other Secured Claim and (ii) a Deficiency Claim for the amount equal to the amount of the Allowed Other Secured Claim less the value of such collateral against the appropriate Debtor, and (b) if the value if the collateral is greater than the amount of the Allowed Other Secured Claim, then the holder of such Other Secured Claim shall receive the indubitable equivalent of such claim as determined by the Debtors.

iv.  *Voting*:  The holders of Allowed Other Secured Claims are Unimpaired and not entitled to vote; provided that if the holder of such Other Secured Claim has a Deficiency Claim, then such holder shall be entitled to vote as a General Unsecured Creditor on account of such Deficiency Claim with respect to the appropriate Debtor.

3.  **Unsecured Claims**

### a.  Houtex General Unsecured Claims

i.      *Classification*:  Houtex General Unsecured Claims Class consist of all General Unsecured Claims against Houtex, including Deficiency Claims against Houtex.

ii.      *Allowance*:  If Houtex listed a General Unsecured Claim on its Schedule in an undisputed capacity, the holder of the Claim does not file a Proof of Claim and no party files an objection to the Claim, the Claim will be Allowed in the amount indicated on the Schedule.  If Houtex did not list a General Unsecured Claim on its Schedule or it listed a General Unsecured Claim as disputed, unliquidated, or contingent, and the holder of the Claim files a Proof of Claim, Houtex shall have until the Claim Objection Deadline to object to the Claim.  The Claim will be Allowed in an amount determined by the Bankruptcy Court after the administration of the claims Objections.  No Distributions shall be made to a holder of a Houtex General Unsecured Claim until the entire Claim has been Allowed or Disallowed pursuant to the terms hereof or by an order of the Bankruptcy Court.

iii.      *Treatment*:  Except to the extent that a holder of an Allowed Houtex General Unsecured Claim agrees to a less favorable treatment, holders of Allowed Houtex General Unsecured Claims shall be treated as follows:  each holder of an Allowed Houtex General Unsecured Claim shall receive its pro rata distribution of the following: (i) the Independent Bank Certificate of Deposit, (ii) the proceeds of the Lynbrook sale after satisfaction of the Houtex DIP Facility Claim, the CommunityBank Secured Claim and all closing costs for the Lynbrook sale including payment of property taxes, broker's commissions and other customary closing costs, and (iii) the Houtex Remnant Assets after satisfaction of all costs incurred for the maintenance and liquidation of the Remnant Assets as will be further detailed in the Liquidating Trust Agreement.

iv.      *Voting*:  The holders of Houtex General Unsecured Claims including Houtex Deficiency Claims are Impaired and entitled to vote on the Plan.

### b.  Shadywood General Unsecured Claims

i.      *Classification*:  Shadywood General Unsecured Claims Class consist of all General Unsecured Claims against Shadwyood.

ii.      *Allowance*:  If Shadywood listed a General Unsecured Claim on its Schedule in an undisputed capacity, the holder of the Claim does not file a Proof of Claim and no party files an objection to the Claim, the Claim will be Allowed in the amount indicated on the Schedule.  If Shadywood did not list a General Unsecured Claim on its Schedule or it listed a General Unsecured Claim as disputed, unliquidated, or contingent, and the holder of the Claim files a Proof of Claim, Shadywyood shall have until the Claim Objection Deadline to object to the Claim.  The Claim will be Allowed in an amount determined by the Bankruptcy Court after the administration of the claims Objections.  No Distributions shall be made to a holder of a Shadywood General Unsecured Claim until the entire Claim has been

Allowed or Disallowed pursuant to the term hereof or by an order of the Bankruptcy Court.

iii.     *Treatment*:   Except to the extent that a holder of an Allowed Shadywood General Unsecured Claim agrees to a less favorable treatment, holders of Allowed Shadywood General Unsecured Claims shall receive a pro-rata distribution of the proceeds of the Shadywood Remnant Assets if the proceeds are greater than the Shadywood DIP Claim amount, if the proceeds are less than or equal to the Shadywood DIP Claim amount, then the holders of Shadywood General Unsecured Claims shall receive nothing on account of their claims.

iv.     *Voting*:   The holders of Shadywood General Unsecured Claims are Impaired and entitled to vote on the Plan.

### c.   Looscan General Unsecured Claims

i.     *Classification*:   Looscan General Unsecured Claims Class consist of all General Unsecured Claims against Looscan.

ii.     *Allowance*: If Looscan listed a General Unsecured Claim on its Schedule in an undisputed capacity, the holder of the Claim does not file a Proof of Claim and no party files an objection to the Claim, the Claim will be Allowed in the amount indicated on the Schedule.  If Looscan did not list a General Unsecured Claim on its Schedule or it listed a General Unsecured Claim as disputed, unliquidated, or contingent, and the holder of the Claim files a Proof of Claim, Looscan shall have until the Claim Objection Deadline to object to the Claim.  The Claim will be Allowed in an amount determined by the Bankruptcy Court after the administration of the claims Objections.  No Distributions shall be made to a holder of a Looscan General Unsecured Claim until the entire Claim has been Allowed or Disallowed pursuant to the term hereof or by an order of the Bankruptcy Court.

iii.     *Treatment*:  Except to the extent that a holder of an Allowed Looscan General Unsecured Claim agrees to a less favorable treatment, holders of Allowed Looscan General Unsecured Claims shall receive a pro-rata distribution of the proceeds of the Looscan Remnant Assets if the proceeds are greater than the Looscan DIP Claim amount, if the proceeds are less than or equal to the Looscan DIP Claim amount, then the holders of Looscan General Unsecured Claims shall receive nothing on account of their claims.

iv.     *Voting*:   The holders of Looscan General Unsecured Claims are Impaired and entitled to vote on the Plan.

4.     **Member Interests**

a.   *Classification:* Member Interests in each of the three Debtors are separately classified.

b.   *Treatment:* The holders of the Member Interests in each of the three Debtors will receive nothing on account of their

Interests. The Member Interests for each of the three Debtors will be transferred to the Liquidating Trust to facilitate the administration of the Liquidating Trust.

    c.   *Voting:* The Member Interest Class for each Debtor deemed to reject the Plan and are not entitled to vote on the Plan.

**D.**    **Special Provision Governing Unimpaired Claims.**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights with respect to any Unimpaired Claim, including, without limitation, any legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

**E.**    **Nonconsensual Confirmation.**

The Debtors reserve the right to seek confirmation of the Plan under § 1129(b) of the Bankruptcy Code. To the extent that any Class votes to reject the Plan, the Debtors further reserves the right to modify the Plan in accordance with Article X herein.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.**    **Sale and Distribution of Non-Remnant Assets.**

    1.   *Thornblade Sale.* Houtex shall pay Spirit of Texas Bank the Thornblade Sale Proceeds.

    2.   *Lynbrook House.* Houtex shall continue its efforts to sell the Lynbrook House. As a condition precedent to the Effective Date of the Plan, Houtex shall have sold the Lynbrook House.

    3.   *Spirit of Texas Certificate of Deposit.* On or after the Confirmation Date, Spirit of Texas Bank shall be entitled to set off the Spirit of Texas Bank Certificate of Deposit in the approximate amount of $252,000 against the Spirit of Texas Bank Secured Claim.

    4.   *Independent Bank Certificate of Deposit.* Houtex holds a Certificate of Deposit in the amount of approximately $250,000 at Independent Bank, which shall be distributed pro rata to Houtex General Unsecured Creditors pursuant to the terms hereof.

    5.   *Nored Note.* The Nored Note will either be provided to Spirit of Texas Bank or it will be contributed to the Liquidating Trust depending on the election of Spirit of Texas Bank.

**B.**    **Preservation of Causes of Action**

Unless any Causes of Action against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, settled, assigned, and/or otherwise conveyed in the Plan or by Court order, the Debtors reserve any and all of Causes of Action, whether arising before or after the date the Chapter 11 Cases were filed. Such Causes of Action include, without limitation (a) all Avoidance Actions and other potential Avoidance Actions, and (b) any and all Claims or Causes of

Action that the Debtors may have or have a right to assert against CD Homes, LLC, Robert Parker or any of their Affiliates including, without limitation, the claims by each of the Debtors against CD Homes, LLC for breach of the Investor Agreements that each provide in relevant part: "Investor [Debtor] and CD [Homes, LLC] agree that if funds are required to make any payments that exceed the sum of the Investor's equity, as defined below and the Loan, all such funds are to be provided by CD [Homes, LLC]." The Disclosure Statement will contain additional details of the preserved Causes of Action.

      **C.**      **Remnant Asset Auctions.**

      1.      At the Confirmation Hearing or such later time as determined by the Debtors (the "Shadywood and Looscan DIP Claim Determination Date"), the Debtors shall seek a determination from the Bankruptcy Court of the Allowed amount of the Shadywood DIP Claim and the Looscan DIP Claim. The amount of the Shadywood DIP Claim and the Looscan DIP Claim will be the initial bids for the Shadywood Remnant Assets and the Looscan Remnant Assets, respectively.

      2.      Within 7 days after the Shadywood and Looscan DIP Claim Determination Date, the Debtors shall file a *Notice of Auction of Remnant Assets* in the form attached hereto as Exhibit 2 (the "Notice of Auction") in order to notify potential bidders and parties-in-interest of the Auction for the Shadywood Remnant Assets and the Looscan Remnant Assets. The Notice of Auction includes the bidding procedures (the "Bidding Procedures") that will govern the sale of the Shadywood Remnant Assets and the Looscan Remnant Assets.

      3.      Within 21 days of the entry of the Shadywood and Looscan DIP Claim Determination Date, any party desiring to bid on the Shadywood Remnant Assets or the Looscan Remnant Assets must provide counsel to the Debtors a certified check in the amount of the Shadywood DIP Claim or the Looscan DIP Claim, respectively.

      4.      If there are any bidders for the Shadywood Remnant Assets or the Looscan Remnant Assets of than the DIP Lender, there will be an Auction for the Shadywood Remnant Assets or the Looscan Remnant Assets, as applicable, as set forth in the Notice of Auction. Any prospective bidder must bring good available funds to the Auction for any amount such bidder bids (without including any amount already provided to the Debtors' counsel).

      5.      Each Auction described in the preceding paragraph shall be governed by the Bidding Procedures.

      6.      If there are no bidders for the Shadywood Remnant Assets or the Looscan Remnant Assets other than the DIP Lender, then the Debtors shall file a notice of on the docket indicating that there is no auction and the Shadywood Remnant Assets and/or the Looscan Remnant Assets shall be transferred to the DIP Lender.

      7.      If there is an auction for the Shadywood Remnant Assets or the Looscan Remnant Assets, then the Debtors shall file a notice following such auction with the results of the auction. Any disputes regarding the auction shall be resolved by the Bankruptcy Court.

8.      All Shadywood Causes of Action and Looscan Causes of Action are included in the Shadywood Remnant Assets and the Looscan Remnant Assets, respectively.

9.      The Successful Bidder for the Shadywood Remnant Assets and the Looscan Remnant Assets, respectively, or their successors and assigns, shall be authorized and empowered as a representative of Shadywood and Looscan, respectively, to institute, prosecute, settle, compromise, abandon or release all Shadywood Causes of Action and Looscan Causes of Action, respectively.

## D.      Houtex Liquidating Trust.

1.      *Formation.* The Houtex Liquidating Trust Agreement shall be executed by Houtex and the Liquidating Trustee, and all other necessary steps shall be taken to establish the Houtex Liquidating Trust. The Houtex Liquidating Trust is intended to be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d) and all relevant parties shall treat the Houtex Liquidating Trust as a liquidating trust, subject to definitive guidance to the contrary from the U.S. Internal Revenue Service.

2.      *Purpose of Liquidating Trust.* The Houtex Liquidating Trust shall be established for pursuing Houtex Causes of Action (and the Nored Note, if applicable) transferred to the Houtex Liquidating Trust, and otherwise liquidating and distributing the Houtex Remnant Assets (and the Nored Note, if applicable), with no objective to continue or engage in the pursuit of a trade or business.

3.      *Causes of Action to be Transferred to the Houtex Liquidating Trust.* All Houtex Causes of Action shall be Houtex Remnant Assets transferred to the Liquidating Trustee. The Liquidating Trustee, or his successors and assigns, shall be authorized and empowered as a representative of Houtex and its Estate to institute, prosecute, settle, compromise, abandon or release all Houtex Causes of Action transferred to the Houtex Liquidating Trust.

4.      *Identity of Liquidating Trustee.* The Liquidating Trustee shall be Charles Foster.

5.      *Authority of Liquidating Trustee.* Subject only to the limitations contained in this Plan or in the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized and empowered to pursue and defend any Causes of Action as a representative of the Estate and shall have the powers of a trustee under §§ 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004, including, without limitation, the right to: (i) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan; (ii) make Distributions to holders of Houtex General Unsecured Claims in accordance with this Plan; (iii) object to Disputed Claims filed against Houtex and prosecute, settle or otherwise resolve such objections; (iv) establish and administer any reserves for Disputed Claims that may be required; (v) perform administrative services related to implementation of this Plan or the Liquidating Trust Agreement; (vi) file all necessary tax returns and other filings with governmental authorities on behalf of the Houtex Liquidating Trust; and (viii) perform such other duties as are provided in the Plan and the Liquidating Trust Agreement.

6.      *Oversight of Houtex Liquidating Trust.* As more fully described in Article X, the Bankruptcy Court shall retain jurisdiction to consider and determine any dispute between holders of Liquidating Trust Beneficial Interests and the Liquidating Trustee.

7. *Cost of Administering Liquidating Trust.* Notwithstanding the foregoing, all expenses of the Houtex Liquidating Trust shall be paid (whether directly or by reimbursement) from the proceeds of the Houtex Liquidating Trust and shall be satisfied prior to any Distributions on account of the Houtex General Unsecured Claims.

8. *Procedure for Distributions from the Houtex Liquidating Trust.* The Houtex Liquidating Trustee shall distribute Available Cash in accordance with the Liquidating Trust Agreement from the Houtex Remnant Assets (and the Nored Note, if applicable) in the Liquidating Trustee's possession (including any Cash received from Houtex on the Effective Date), except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such Distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Houtex Remnant Assets during the administration of the Houtex Liquidating Trust, (iii) to pay reasonable expenses of the Liquidating Trust (including, but not limited to, any taxes imposed on the Houtex Liquidating Trust or in respect of the Houtex Remnant Assets), and (iv) to satisfy other liabilities incurred by the Houtex Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement (including without limitation any applicable reserves).

9. *Compensation of the Liquidating Trustee.* The Liquidating Trustee shall be entitled to reasonable compensation as set forth in the Liquidating Trust Agreement.

10. *Retention of Professionals.* As set forth in the Liquidating Trust Agreement, the Liquidating Trustee may retain and reasonably compensate counsel and other professionals to assist in its duties as Liquidating Trustee on such terms as the Liquidating Trustee deems appropriate without Bankruptcy Court approval.

11. *Dissolution of Liquidating Trust.* Once all Houtex Remnant Assets have been liquidated and all Distributions required to be made by the Liquidating Trustee under the Plan have been made, the Houtex Liquidating Trust shall be dissolved and the Liquidating Trustee shall be discharged. Notwithstanding the foregoing, in no event shall the term of the Houtex Liquidating Trust exceed five (5) years absent Bankruptcy Court approval.

12. *Dissolution of Houtex.* The Liquidating Trustee shall formally dissolve Houtex in accordance with applicable state law prior to or in connection with the dissolution of the Liquidating Trust.

13. *Indemnification of Liquidating Trustee.* The Liquidating Trustee and the Liquidating Trustee's agents and professionals shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Liquidating Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts. Any indemnification claim of the Liquidating Trustee, its agents or professionals, shall be satisfied from the Houtex Remnant Assets (and the Nored Note, if applicable). The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

### E.    Operations of the Debtors Between Confirmation Date and Effective Date

The Debtors shall continue to operate as debtors-in-possession during the period from the Confirmation Date through the Effective Date.  Houtex shall use all reasonable efforts to liquidate the Lynbrook House during such period.  All Debtors shall file Objections to Proofs of Claim and obtain Final Orders resolving such Objections before the Effective Date.

Charles Foster is authorized to continue funding the costs for the maintenance of the Lynbrook House during such period as determined in the Debtor's reasonable business judgment. These amounts advanced will be added to the Houtex DIP Facility Claim amount and shall accrue interest at three percent per annum.   The Debtors shall seek a determination of the Allowed Amount of the Houtex DIP Facility Claim on, or prior to, the Effective Date.

If the Lynbrook House has not sold by January 31, ~~2019,~~2020, Charles Foster has committed to satisfy all the outstanding real property taxes on the Lynbrook House.   For avoidance of doubt, any such advance shall be added to the Houtex DIP Facility Claim.

During the period from the Confirmation Date through the Effective Date, CommunityBank has the right to seek relief from the stay for "cause."

### F.    Establishment of the Administrative Claims Bar Date.

The Confirmation Order shall approve the Administrative Claims Bar Date.

Except as otherwise provided in this Article, on or before the Administrative Claims Bar Date, each holder of a Non-DIP Administrative Claim shall file with the Bankruptcy Court a request for payment of its Administrative Claim.

Notwithstanding anything in this Article, Professionals shall not be required to file a request for fees and expenses arising under §§ 328, 330, 331 or 503(b)(2)–(5) of the Bankruptcy Code, on or before the Administrative Claims Bar Date, as they will instead file final fee applications by the Professional Fee Claim Bar Date.

### G.    Term of Injunctions or Stays.

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Cases are closed.

### H.    Debtors' Professionals.

Upon the Effective Date, the Debtors' Professionals shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Case; *provided, however*, that the Debtors' Professionals shall be deemed retained after such date solely with respect to applications filed pursuant to §§ 330 and 331 of the Bankruptcy Code.  The Liquidating Trustee shall pay the reasonable fees, costs and expenses of such Professionals incurred after the Effective Date, if the Bankruptcy Court approves such fees, costs and expenses.

I.     **Closure of Looscan and Shadywood Cases.**

After (i) the Auctions of the Looscan Remnant Assets and the Shadywood Remnant Assets have concluded, (ii) Final Orders resolving any objections to Claim against Looscan and Shadywood have been issued; and (iii) holders of Allowed Claims against Looscan and Shadywood have been paid pursuant to this Plan, Looscan and Shadywood shall move the Bankruptcy Court for the issuance of final decrees closing the Looscan and Shadywood Chapter 11 Cases.

# ARTICLE V
## PROVISIONS GOVERNING DISTRIBUTIONS

A.     **Houtex Distributions**

Distributions to all holders of Liquidating Trust Beneficial Interests shall be made in accordance with the terms of the Liquidating Trust Agreement.  On the Final Distribution Date, the Liquidating Trustee shall distribute the remaining assets of the Houtex Liquidating Trust to the Persons or Entities entitled to such assets.

B.     **Disputed Claims.**

Any Distribution that is not made on any date specified herein or in the Liquidating Trust Agreement because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be distributed as soon as practicable, and in accordance with the terms of this Plan and the Liquidating Trust Agreement, as applicable, after such Claim is Allowed by a Final Order of the Bankruptcy Court.

C.     **Undeliverable Distributions.**

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made at (i) the address of each holder as set forth in the Schedule, unless superseded by the address set forth on proofs of Claim filed by such holder or (ii) the last known address of such holder if no proof of Claim is filed or if the Debtor or Liquidating Trustee has been notified in writing of a change of address.  If any Distribution is returned as undeliverable, the Debtor or Liquidating Trustee may, in its or his sole discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made, but no Distribution to any holder shall be made unless and until the then-current address of the holder has been determined, at which time the Distribution to such holder shall be made to the holder without interest from and after the Effective Date through the date of Distribution. Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by, the Debtor or Liquidating Trust until the Distributions are claimed or are deemed to be unclaimed property under § 347(b) of the Bankruptcy Code as set forth in this Article V.  The Debtor and or the Liquidating Trustee shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that such discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or the Liquidating Trust Agreement.

23

D.      **Unclaimed Property.**

Distributions that are not claimed by the expiration of one year from the Effective Date shall be deemed to be unclaimed property under § 347(b) of the Bankruptcy Code, and the Claims with respect to which those Distributions are made shall be automatically cancelled.  After the expiration of that one-year period, the right of any Entity to those Distributions shall be discharged and forever barred.  Nothing contained in the Plan shall require the Debtor or Liquidating Trustee to attempt to locate any holder of an Allowed Claim.

E.      **Manner of Cash Payments Under the Plan.**

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank or by wire transfer from a domestic bank, as applicable.

F.      **Time-Bar to Cash Payments by Check.**

Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Article V.F shall be made by the holder of the Allowed Claim directly to the Person or Entity who originally issued the check, in writing, on or before the later of the first anniversary of the Effective Date or the first anniversary of the date on which the Claim at issue became an Allowed Claim.  After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall become unclaimed property in accordance with § 347(b) of the Bankruptcy Code.

G.      **Compliance with Tax Requirements.**

In connection with making Distributions under this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Liquidating Trustee may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article V.C hereof.

H.      **No Payments of Fractional Dollars and Minimum Distributions.**

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar.  The Liquidating Trustee shall not be obligated to make any Distribution of less than $10.

## I.      Interest on Claims.

Interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid on any Claim, or portion thereof, that is a Disputed Claim in respect of the period from the Effective Date to the date such Disputed Claim, or portion thereof, becomes an Allowed Claim and Distributions are made on account thereof.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

## J.      No Distribution in Excess of Allowed Amount of Claim.

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

## K.      Setoff and Recoupment.

The Debtors or the Liquidating Trustee may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any Debtor or Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release on behalf of the Debtors, their Estates, and, if applicable, the Houtex Liquidating Trust, as a successor-in-interest of any right of setoff or recoupment that any of them may have against the holder of any Claim.

## L.      No Distribution Pending Allowance.

Notwithstanding any other provision of the Plan, the Debtors or the Liquidating Trustee shall not distribute any Cash or other property on account of any Claim that is Disputed unless and until such Claim or portion thereof becomes Allowed.

# ARTICLE VI
# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.

The Plan shall constitute a motion to reject all Executory Contracts and Unexpired Leases other than those Executory Contracts and Unexpired Leases designated for assumption either in this Plan or in the Executory Contract and Unexpired Lease Assumption and Assignment Schedule, which schedule shall be filed with the Plan Supplement.  The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all such rejections and assumptions and assignments pursuant to §§ 365(a) and 1123 of the Bankruptcy Code.

## B.      Claims Based on Rejection of Executory Contracts and Unexpired Leases.

Claims resulting from the rejection of Executory Contracts and Unexpired Leases pursuant to Article VI.A, or the expiration or termination of any Executory Contract or Unexpired Lease after the entry of the Confirmation Order, but prior to the Effective Date, must be filed with the

Bankruptcy Court and served on the Liquidating Trustee no later than thirty (30) days after the Effective Date.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to this paragraph for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, their Estates, the Liquidating Trust, their successors and assigns, and its assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article VIII herein.  Unless otherwise ordered by the Bankruptcy Court or provided in this Plan, all such Claims that are timely filed as provided in the Plan shall be treated as General Unsecured Claims with respect to the appropriate Debtor.

### C.    Cure Claims.

The Debtor shall set forth on the Executory Contract and Unexpired Lease Assumption and Assignment Schedule the monetary cure amount the Debtor believes to be owed with respect to each Executory Contract and Unexpired Lease listed thereon.  Unless the counterparty to an Executory Contract or Unexpired Lease agrees to different treatment, the cure amount set forth on the Executory Contract and Unexpired Lease Assumption and Assignment Schedule with respect to such Executory Contract or Unexpired Lease, or any undisputed portion thereof, or a different amount of the cure Claim that is Allowed by a Final Order shall be paid in full, in Cash, by the trustee of the applicable trust to which such contract or lease has been assigned, in each case, as applicable, on the later of: (i) thirty (30) days after the Confirmation Date and (ii) fourteen (14) Days after the date such Claim is Allowed.

### ARTICLE VII
### CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A.    Conditions Precedent to Effective Date

The following are conditions precedent to the occurrence of the Effective Date:

1.    The Confirmation Order has been entered and become a Final Order.

2.    The Liquidating Trust Agreement has been executed and become effective, and all conditions to closing set forth therein shall have been satisfied.

3.    The Lynbrook House, Looscan Remnant Assets, and the Shadywood Remnant Assets shall have been sold.

### B.    Waiver of Conditions

The Debtors may waive the occurrence of, or modify, any of the foregoing conditions precedent to the Effective Date.  Any such waiver may be effectuated at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

## ARTICLE VIII
## INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

### A.     Compromise and Settlement.

Pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Member Interests.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Member Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtors, their Estates, and holders of Claims and Member Interests.

### B.     Releases.

1.     *Releases by the Debtors and the Estates.*  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, including, without limitation, the services of the Releasees in facilitating the expeditious implementation of the Plan, the Debtors hereby provide a full release to the Releasees (and each such Releasee so released shall be deemed released and discharged by the Debtors) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtors, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that the Debtors would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Person or Entity would have been legally entitled to assert for or on behalf of the Debtors or their Estates and further including those in any way related to the Estates, the Chapter 11 Cases or the Plan; *provided, however,* that the foregoing provisions of this Article VIII.B.1 shall not operate to waive or release the Releasees from any obligation under this Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable.

2.     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article VIII.B pursuant to Bankruptcy Rule 9019 and its finding that they are:  (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtor and all holders of Claims and Member Interests; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the Releasees asserting any Claim or Cause of Action thereby released.

### C.     Exculpation.

Notwithstanding anything contained in the Plan to the contrary, the Releasees shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related

to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or Disclosure Statement or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the Plan; *provided, however*, that the foregoing provisions of this Article VIII.C shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; *provided, further*, that each Releasee shall be entitled to rely upon the advice of counsel concerning its duties; *provided, further*, that the foregoing provisions of this Article VIII.C shall not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or any defenses thereto.

### D.    Injunction.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Houtex Liquidating Trust and Liquidating Trustee, their successors and assigns and their assets and properties, any Claims or Member Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

### E.    Release of Liens.

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Debtors shall be fully released and discharged, and all of the Debtors' rights, title and interests in such property shall be distributed or transferred in accordance with this Plan.

### F.    Carve-Out

Nothing in this Article VIII or elsewhere in the Plan shall release any Causes of Action retained by the Debtor and transferred to the Houtex Liquidating Trust under this Plan.

## ARTICLE IX
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and with respect to all matters related to the Chapter 11 Cases, the Debtors, their Estates, all property of their Estates, and the Plan as is legally permissible, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Member Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance, secured status or priority of Claims or Member Interests;

2.     grant, deny or otherwise resolve any and all applications of Professionals for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.     resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which a Debtor was party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

4.     ensure that Distributions to holders of Allowed Claims and Member Interests are accomplished pursuant to the provisions of the Plan;

5.     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date, *provided, however*, the right of the Liquidating Trustee to commence actions in all appropriate jurisdictions shall be fully reserved;

6.     enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

7.     resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

8.     issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9.     enforce the various provisions of the Plan and the Liquidating Trust Agreement;

10.     enforce the Injunction set forth in Article VIIID hereof;

11.     resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article VIIID herein, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

12.     enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13.     resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

14.     enter an order or the decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Cases.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

### A.     Final Fee Applications.

The deadline for submission by Professionals of final applications for Bankruptcy Court approval of Accrued Professional Compensation shall be the Professional Fee Claim Bar Date.

### B.     Payment of Statutory Fees.

All fees payable pursuant to § 1930 of title 28 of the United States Code shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable.  From and after the Effective Date, the Liquidating Trustee shall be liable for and shall pay the fees under 28 U.S.C. § 1930 assessed against Houtex's estate under 28 U.S.C. § 1930 until entry of a Final Decree closing the Houtex case.  In addition, the Liquidating Trustee shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines, until entry of an order closing or converting the Houtex case.  The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be deemed an Administrative Claim against Houtex and its Estate.

### C.     Modification of the Plan.

Subject to the limitations contained in the Plan:  (i) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan, prior to the entry of the Confirmation Order, including amendments or modifications to satisfy § 1129(b) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### D.     Revocation of Plan.

The Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order**,** and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw this Plan or if entry of the Confirmation Order does not occur, or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Member Interests; (b) prejudice in any manner the rights of the Debtors or any other Person or Entity; or (c) constitute an admission of any sort by the Debtors or any other Person or Entity.

### E.     Successors and Assigns.

The rights, benefits and obligations of any Person or Entity named or referred to herein and the Plan Supplement shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

**F.      Governing Law and Construction.**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Texas, without giving effect to the principles of conflict of laws thereof.  Any inconsistency between the Plan and the Confirmation Order shall be construed in favor of and so as to give effect to the Confirmation Order.  All exhibits and schedules to the Plan and the Plan Supplement shall be incorporated in the Plan by this reference, as though set forth at length herein.

**G.      Reservation of Rights.**

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any Person or Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (i) the Debtors with respect to the holders of Claims or Member Interests or other parties-in-interest; or (ii) any holder of a Claim or Member Interest or other party-in-interest prior to the Effective Date.

**H.      Section 1146 Exemption.**

Pursuant to § 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

**I.      Section 1125(e) Good Faith Compliance.**

The Debtors and each of their respective Representatives, shall be deemed to have acted in "good faith" under § 1125(e) of the Bankruptcy Code, and the Confirmation Order shall including a finding of fact to that effect.

**J.      Further Assurances.**

The Debtors, all holders of Claims and Member Interests receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**K.      Service of Documents.**

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors, in addition to any direction of service of notice by any order, shall be sent by first class U.S. mail, postage prepaid as follows:

31

To the Debtors:

> Charles M. Rubio
>
> Diamond McCarthy LLP
>
> Two Houston Center
>
> 909 Fannin, 37th Floor
>
> Houston, Texas 77010

**L.      Filing of Additional Documents.**

On or before the Effective Date, the Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**M.      No Stay of Confirmation Order.**

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

**N.      Bankruptcy Code Section 1141 Discharge.**

The Debtors shall not receive a discharge under chapter 11 of the Bankruptcy Code.

Dated: ~~August 5,~~ September 3, 2019

**Houtex Builders, LLC; 2203 Looscan Lane, LLC; and 415 Shadywood, LLC**

*/s/ Charles Foster*
Manager of Houtex Builders, LLC; 2203 Looscan Lane, LLC; and 415 Shadywood, LLC

*/s/ Charles M. Rubio*
Charles M. Rubio
Texas Bar No. 24083768
Michael D. Fritz
Texas Bar No. 24083029
909 Fannin, Suite 3700
Houston, TX 77010
(713) 333-5100
crubio@diamondmccarthy.com
mfritz@diamondmccarthy.com

*Counsel to Houtex Builders, LLC; 2203 Looscan Lane, LLC; and 415 Shadywood, LLC*

33

<u>Exhibit 1</u>

Form of Liquidating Trust Agreement

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement ("Agreement") is made effective as of [●], by and among Houtex Builders, LLC (the "Debtor"), debtor and debtor-in-possession in the Chapter 11 case pending in the United States Bankruptcy Court for the Southern District of Texas (Houston Division) (the "Bankruptcy Court"), jointly administered under the caption *In re Houtex Builders, LLC*, Case No. 18-34658, and Charles C. Foster, as the Liquidating Trustee ("Liquidating Trustee").

### RECITALS

This Liquidating Trust Agreement is made and entered into pursuant to the terms and provisions of the Debtors' First Amended Plan of Liquidation, dated [●] (as modified and amended, the "Plan") and the order of the Bankruptcy Court, entered in the Debtor's case under Chapter 11 of Title 11 U.S.C. confirming the Plan, approving this Agreement and authorizing the appointment of the Liquidating Trustee.  All terms defined in the Plan shall have the same meaning when used herein unless otherwise defined herein or unless the context hereof clearly requires otherwise.  Terms which are defined in the Bankruptcy Code and are not otherwise defined in the Plan or herein shall have the definition ascribed to them by the Bankruptcy Code.  All applicable terms and provisions of the Plan are incorporated herein by this reference and the parties to this Agreement shall be bound by such terms and provisions.

The primary purpose of this Liquidating Trust is to hold, administer and liquidate the Houtex Remnant Assets for the benefit of holders of Liquidating Trust Beneficial Interests (collectively, the "Holders"), consistent with Treas. Reg. § 301.7701-4(a) and (d).  Under no circumstances shall the Liquidating Trustee have any power to engage in any trade or business or any other activity except as specifically provided herein or in the Plan or such as is otherwise reasonably necessary and advisable for the orderly liquidation and distribution of the Houtex Remnant Assets.

### DECLARATION OF TRUST

**NOW, THEREFORE**, in order to declare the terms and conditions hereof, and in consideration of the premises, of the due acceptance of and confirmation of the Plan pursuant to § 1129 of the Bankruptcy Code, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto have executed this Agreement and the Holders hereby vest in the Liquidating Trustee and his successors in trust and successors and assigns, all right, title and interest in the Houtex Remnant Assets defined in the Plan, including, without limitation, the right to receive, hold, pursue, liquidate and distribute all or any portion of the Houtex Remnant Assets as set forth herein and in the Plan.

**TO HAVE AND TO HOLD** the Houtex Remnant Assets unto the Liquidating Trustee and his successors in trust and successors and assigns forever; in trust under and subject to the terms and conditions set forth herein and in the Plan and for the benefit of the Holders, each of which shall be treated as the grantors and deemed owners of this Liquidating Trust; provided, however, upon the final liquidation of all of the assets of the Liquidating Trust in accordance with the terms and conditions of this Agreement and the Plan, this Agreement shall cease, terminate and be of no further force and effect.  Further provided, however, that the Liquidating Trust shall not remain in existence more than five (5) years from the date of this Agreement except as otherwise provided in

the Plan.

It is hereby further covenanted and declared that the Houtex Remnant Assets are to be held, administered and applied by the Liquidating Trustee subject to the further covenants, conditions and terms hereinafter set forth and set forth in the Plan, and if any inconsistency exists between the terms of this Agreement and the Plan, the terms of the Plan shall control.

The foregoing grants, assignments, transfers and conveyances are in trust for the benefit of the Holders and are subject to the terms of this Agreement and the provisions of the Plan applicable to the Liquidating Trust.  For tax purposes, this transfer will be treated as a deemed transfer to the Holders followed by a deemed transfer by the Holders to the Liquidating Trust, in accordance with the provisions of Revenue Procedure 94-45, 1994-2 C.B. ¶ 684.  For federal tax purposes, this transaction should be treated as the Debtor satisfying its debt to the particular creditor for an amount equal to the Allowed Claim of such Holder.  With respect to the Debtor, this transaction may create income from the cancellation of indebtedness (COD) pursuant to Internal Revenue Code (IRC) Section 108 or gain or loss from the sale or exchange of property.  The tax characterization of the transaction will depend on the fair market of the property transferred, the Debtor's adjusted tax basis in the property, and whether the creditor's claim was a recourse or non-recourse liability.  The creditor's adjusted basis in the property deemed transferred should be equal to the Allowed Claim of the Holder on the date of the deemed transfer.

The Liquidating Trust created by this Agreement is intended: (i) as a trust governed and construed in all respects as a liquidating trust pursuant to Section 301.7701-4(d) of the United States Treasury Regulations and as a grantor trust in favor of the Holders pursuant to Section 1.671-4(a) thereof, and (ii) to comply with the requirements of a liquidating trust, which is a grantor trust, as set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.

## ARTICLE I.
## NAME OF TRUST

**1.1**     **Name.**  For all purposes, including but not limited to filing tax returns and other governmental filings, the Liquidating Trust shall be known as "The Houtex Builders, LLC Liquidating Trust."

## ARTICLE II.
## TRUSTEE'S ACCEPTANCE OF ASSETS; AGREEMENT TO PERFORM
## OBLIGATIONS AS TRUSTEE

**2.1**     **Acceptance.**    The Liquidating Trustee accepts the trust imposed upon the Liquidating Trustee by this Agreement, and agrees to observe and perform that trust, upon and subject to the terms and conditions set forth herein and in the Plan.

**2.2**     **Agreement to Perform Obligations.**  The Liquidating Trustee hereby promises and agree to undertake and perform the obligations created hereunder and the obligations to be performed by the Liquidating Trustee under the Plan.

# ARTICLE III.
## POWERS OF THE TRUSTEE

**3.1** **Title.** Legal title to all of the Houtex Remnant Assets shall be vested in the Liquidating Trustee, except that the Liquidating Trustee shall have the power to cause legal title (or evidence of title) to any of the Houtex Remnant Assets to be held by any nominee or person, on such terms, in such manner, and with such power consistent with this Agreement and the Plan as the Liquidating Trustee may determine.

**3.2** **General Powers of Liquidating Trustee.** Except as may be otherwise provided in this Agreement or in the Plan, and subject to the retained jurisdiction of the Bankruptcy Court, the Liquidating Trustee shall have, without prior or further authorization, control and authority over the Houtex Remnant Assets, over the administration and disposition thereof, and over the supervision and conduct of the Liquidating Trust to the same extent as if the Liquidating Trustee were the sole owner thereof in its own right; but at all times the Houtex Remnant Assets be held for the benefit of the Holders consistent with the terms of the Plan. No person dealing with this Liquidating Trust shall be obligated to inquire as to the authority of the Liquidating Trustee in connection with the acquisition, administration or disposition of assets which comprise the Liquidating Trust. In connection with the administration and use of the Houtex Remnant Assets, the Liquidating Trustee's powers, except as otherwise expressly limited by the Plan or in this Agreement, shall include, but shall not be limited to, the following: (i) to effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan; (ii) to make Distributions to holders of Allowed Claims against the Debtor in accordance with the Plan; (iii) to object to Disputed Claims filed against the Debtor and prosecute, settle or otherwise resolve such objections; (v) to establish and administer any reserves for Disputed Claims that may be required; (vi) to perform administrative services related to implementation of the Plan or this Agreement; (vii) file all necessary tax returns and other filings with governmental authorities on behalf of the Liquidating Trust; and (viii) perform such other duties as are provided in the Plan and this Agreement. In addition, the Liquidating Trustee shall have the power to engage in any additional acts not specifically enumerated or excluded herein, provided that such proposed acts are in the furtherance of the purposes for which this Liquidating Trust has been created.

**3.3** **Operation of Trust.** The Liquidating Trustee shall, in accordance with the terms of the Plan, distribute to the Holders the Liquidating Trust's net income plus all net proceeds from the Disposition of assets at such times as the Liquidating Trustee may determine in the Liquidating Trustee's discretion, but in no event less often than annually, except that the Liquidating Trust shall retain an amount of net proceeds or net income reasonably necessary, in the Liquidating Trustee's reasonable discretion, to maintain the value of its assets or to meet claims and contingent liabilities (including Disputed Claims), and that the Liquidating Trustee shall distribute the Houtex Remnant Assets, including any income or proceeds from Disposition, on the Final Distribution Date in the Plan. In addition, the Liquidating Trustee will make continuing efforts to dispose of the Houtex Remnant Assets, make timely distributions pursuant to the Plan, and not unduly prolong the duration of the Liquidating Trust.

**3.4** **Limitation of Trustee.** Without limiting the generality of the foregoing Sections 3.2 and 3.3, the Liquidating Trustee shall not permit the Liquidating Trust to hold any operating assets of a going business, a partnership interest in a partnership that holds operating assets, or the stock of a corporation with operating assets. In addition, the Liquidating Trustee shall not permit the Liquidating Trust to receive transfers of listed stocks or securities or other readily marketable assets, and the Trust is not permitted to receive or retain cash or cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities (including disputed claims) or to maintain the value of the assets during liquidation. The investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the assets and to further the liquidating purpose of the Liquidating Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

**3.5** **Retention of Attorney and Accountants.** Without limiting the Liquidating Trustee's powers under the Plan, the Liquidating Trustee may retain counsel and qualified accountants of the Liquidating Trustee's choosing, to perform such services as are necessary or appropriate in connection with the administration of this Liquidating Trust.

**ARTICLE IV.**
**THE TRUSTEE– RESIGNATION, REMOVAL, TRUST CONTINUANCE,**
**COMPENSATION, STANDARD OF CARE, RELIANCE BY TRUSTEE**

**4.1** **Resignation.** The Liquidating Trustee may resign by an instrument in writing signed by him and filed with the Bankruptcy Court provided that the Liquidating Trustee shall continue to serve as Liquidating Trustee after his resignation until the appointment of a successor Liquidating Trustee shall become effective in accordance with Section 4.3 or the Bankruptcy Court shall otherwise order.

**4.2** **Removal.** The Bankruptcy Court may, for cause shown, remove the Liquidating Trustee and appoint a successor.

**4.3** **Appointment of Successor Trustee.** In the event of the resignation, death, resignation, incompetency, total disability, or removal of the of the Liquidating Trustee, the Bankruptcy Court shall have the authority, to appoint a successor Liquidating Trustee. Such appointment may specify the date on which such successor Liquidating Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the departing Liquidating Trustee an instrument accepting such appointment, and thereupon the resignation or removal of the departing Liquidating Trustee shall become effective and such successor Liquidating Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the departing Liquidating Trustee.

**4.4** **Trust Continuance.** The resignation or removal of the Liquidating Trustee not operate to terminate the Liquidating Trust created by this Agreement or to revoke any existing agency relationship created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Liquidating Trustee, such Liquidating Trustee shall promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Liquidating Trustee to effect the termination of the Liquidating Trustee's capacity under

4

this Agreement and the vesting of the Houtex Remnant Assets then held by the Liquidating Trustee to his successor; deliver to the successor Liquidating Trustee all documents, instruments, records and other writings related to the Liquidating Trust as may be in the possession of the Liquidating Trustee; and otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Liquidating Trustee.

4.5     **Compensation.**  The Liquidating Trustee shall not be entitled to any compensation. Any successor Liquidating Trustee shall only be entitled to compensation with approval by the Bankruptcy Court.

4.6     **Reliance by Trustee**.  The Liquidating Trustee may rely, and shall be fully protected in acting upon, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document which he, in good faith, believes to be genuine and has been signed or presented by the proper party or parties or, in the case of cables, telecopies and telexes, to have been sent by the proper party or parties.  In the absence of bad faith, willful misfeasance, gross negligence or willful disregard of his duties, the Liquidating Trustee may conclusively rely as to the truth of statements and correctness of the opinions expressed therein. The Liquidating Trustee may consult with counsel and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or suffered by him in accordance therewith.  The Liquidating Trustee shall have the right at any time to seek instructions concerning the administration, management or disposition of the Houtex Remnant Assets from the Bankruptcy Court.

4.7     **Standard of Care**.  The Liquidating Trustee and his respective professionals, shall not be personally liable to the Liquidating Trust or the Holders except for such of their own acts as shall constitute fraud, bad faith, gross negligence, willful misconduct or willful disregard of their duties.  Except as aforesaid, the Liquidating Trustee and his respective employees, professionals, agents and representatives shall be entitled to be exonerated and indemnified from time to time from the Houtex Remnant Assets against any and all losses, claims, costs, expenses and liabilities arising out of or in connection with the Houtex Remnant Assets or the affairs of this Liquidating Trust, including, but not limited to, liability for taxes and expenses (including legal fees) incurred due to the defense of any such claim.  In addition, none of the above parties shall have any liability whatsoever for performance of their duties hereunder to any non-Holder.

4.8     **Liquidating Trustee Not Personally Liable Except to Trust and Holders.**  Any person dealing with the Liquidating Trustee shall look only to the assets in the Liquidating Trust to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of this Liquidating Trust, and the Liquidating Trustee shall have no personal or individual obligation to satisfy any such liability.  Subject to the terms of this Agreement as set forth above, this provision does not diminish the liability or responsibility of the Liquidating Trustee to the Holders in connection with the performance of the Liquidating Trustee's duties hereunder.  No Holder shall have any right by virtue of any provision of this Agreement to institute any action or proceeding at law or in equity against any party upon or under or with respect to the trust estate.

# ARTICLE V.
## RETENTION OF JURISDICTION

**5.1**     **Jurisdiction.**  The Bankruptcy Court shall retain jurisdiction over the Liquidating Trust, the Liquidating Trustee, and the Houtex Remnant Assets as provided in the Plan.

# ARTICLE VI.
## TAX ISSUES

**6.1**     **Required Filing**.  The Liquidating Trustee shall prepare and file with appropriate state and federal agencies and authorities, all such documents, forms, reports and returns (including, but not limited to, state and federal income tax returns) as the Liquidating Trustee shall, with the advice and assistance of professionals engaged by the Liquidating Trustee, including but not limited to legal counsel and accountants, deem necessary, required or appropriate in connection with the creation, existence, operation or termination of the Liquidating Trust.  The Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Sections 1.671-4(a) and 1.671-4(b)(3)(ii) of the United States Treasury Regulations.

**6.2**     **Federal Income Tax Information.**  As soon as practicable after the close of each calendar year, but in no event later than March 15th, the Liquidating Trustee shall mail to each Holder of record during such year, a statement showing information sufficient for each Holder to determine its share of income, deductions and credits for federal income tax purposes in accordance with §§1.671.4(a) and 1.67104(b)(3) of the United States Treasury Regulations.

**6.3**     **Tax Attributes and Characteristics of the Trust.**  The Holders of the Liquidating Trust shall be treated as its grantors and deemed owners.  The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to § 1.671-4(a), or (b) as appropriate, of the United States Treasury Regulations.  Accordingly, all earnings of the Liquidating Trust, including earnings retained in reserve accounts (including the Disputed Claim Reserve), if any, will be allocated to the Holders on an annual basis and each Holder shall be responsible to report and pay the taxes due on his/its respective proportionate share of the Liquidating Trust's income whether or not amounts are actually distributed by the Liquidating Trustee to the Holders to pay the taxes.  The value of the Houtex Remnant Assets transferred into the Liquidating Trust shall be the fair market value of such Houtex Remnant Assets at the time of such transfer.  The Houtex Remnant Assets transferred to the Liquidating Trust shall be valued consistently by all parties including, but not limited to, the Debtor and the Holders, and these valuations will be used for federal income tax purposes.

**6.4**     **Revenue Ruling Requests.**  The Liquidating Trustee on behalf of Holders may, but shall not be required to, file a ruling request (in accordance with the procedures set forth in Revenue Procedure 94-45, 1994-2 C.B. 684) with the Internal Revenue Service to have the Liquidating Trust classified as a liquidating trust as described in Treas. Reg. § 301.7701-4(d).

# ARTICLE VII.
## MISCELLANEOUS

**7.1**     **Effectiveness.**  This Agreement shall become effective upon the Effective Date of

the Plan.  In the event of any conflict between the terms of this Agreement and the Plan, the terms of this Agreement shall control.

      **7.2**    **Counterparts.**  This Agreement may be executed in one or more counterparts, all of which shall be taken together to constitute one and the same instrument.

      **7.3**    **Governing Law**.  This Agreement shall be governed by, construed under and interpreted in accordance with, the laws of the State of Texas and the applicable provisions of the Internal Revenue Code and the Treasury Regulations promulgated thereunder, specifically Treas. Reg. 301.7701-4(d).

      **7.4**    **Headings**.  Sections, subheadings and other headings used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

      **7.5**    **Severability**.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

      **7.6**    **Amendments.**  Upon the request of the Liquidating Trustee, this Agreement may be amended from time to time with the approval of the Bankruptcy Court, and, upon request, after a hearing thereon.

      **IN WITNESS WHEREOF**, the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers thereunto duly authorized as of the day and year first above written.

**DEBTOR**:

**Houtex Builders, LLC**


_____
Charles C. Foster
Owner

**LIQUIDATING TRUSTEE:**

**Charles C. Foster** as Liquidating Trustee of The
Houtex Builders, LLC Liquidating Trust


_____
Charles C. Foster
Liquidating Trustee

Exhibit 2

Notice of Auction of Remnant Assets

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 18-34658 |
| HOUTEX BUILDERS, LLC, *et al.*,²³ | § | |
| | § | CHAPTER 11 |
| DEBTORS. | § | |
| | § | |
| | § | |

<u>NOTICE OF AUCTION OF REMNANT ASSETS</u>

**PLEASE TAKE NOTICE** that in connection with the proposed Amended Joint Plan of Liquidation of Houtex Builders, LLC, 2203 Looscan Lane, LLC ("<u>Looscan</u>") and 415 Shadywood, LLC ("<u>Shadywood</u>")  under Chapter 11 of the Bankruptcy Code [ECF ____] (the "<u>Plan</u>") the following bidding procedures (the "<u>Bidding Procedures</u>") will govern the auction of the Shadywood Remnant Assets and the Looscan Remnant Assets (collectively, the "<u>Assets</u>").  Capitalized terms used but not defined herein have the meanings assigned to such terms in the Plan.

**BIDDING PROCEDURES**

A.     <u>Assets to be Sold</u>.  The Debtor is selling the Assets as they are defined in the Plan. The Assets will be sold free and clear of all liens, claims and encumbrances to the fullest extent allowed under § 363(f) of the Bankruptcy Code.

The Shadywood Remnant Assets and the Looscan Remnant Assets will be sold in separate auctions. Each auction will be governed by the procedures described in this document. References to "Assets" in these procedures refer to the Shadywood Remnant Assets in connection with the auction of the Shadywood Remnant Assets and the Looscan Remnant Assets in connection with the auction of the Looscan Remnant Assets. Similarly, references to "Debtor" refer to Shadywood or Looscan in connection with the Shadywood auction and Looscan auction, respectively.

B.     <u>Bidding Qualifications</u>.  Any party may bid, though the Debtor will only consider bids that meet the requirements of "Qualified Bids" as described in Paragraph D below.

C.     <u>Due Diligence</u>.  The Debtor will provide bidders access to the Debtor's books and records and other materials in order conduct reasonable due diligence investigation about the Assets. All bidders must complete their due diligence prior to the Auction.

---

²³   The names of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: HOUTEX Builders, LLC (2111); 2203 Looscan Lane, LLC (1418); and 415 Shadywood, LLC (7627).

D.     <u>Qualified Bids</u>.  In order to constitute a "<u>Qualified Bid</u>," a bidder  must submit to the following items (the "<u>Bid Package</u>") to the Debtor on or before the Bid Deadline (defined below):

(1)     A purchase offer executed by a person with authority to irrevocable bind the bidder that (i) does not provide for a break-up fee, topping fee, expense reimbursement or other similar arrangement; and (ii) is not subject to any contingencies including any financing contingencies, due-diligence contingencies, approval or consent contingencies, or any other material conditions precedent to the bidder's obligation to close;

(2)     A signed statement (i) disclosing any formal or informal agreements or understandings reached by the bidder with parties-in-interest in the Bankruptcy Case in connection with the bid (or that no such agreements or understandings exist); and (ii) acknowledging that if chosen as the Successful Bidder (defined below), such bidder will consummate the purchase of the Assets promptly upon approval of the Bankruptcy Court;

(3)     a deposit (the "<u>Deposit</u>") in the form of a certified check in the amount of the Shadywood Initial Bid (defined below) plus $1,000 and/or the Looscan Initial Bid (defined below) plus $1,000. The Deposit is subject to the terms in Paragraph F below.

E.     <u>DIP Lender Bid</u>. Charles C. Foster (the "<u>DIP Lender</u>") is making initial Qualified Bids for the Shadywood Remnant Assets and the Looscan Remnant Assets by credit-bidding the amount of the Shadywood DIP Facility Claim and the Looscan DIP Facility Claim.  The amount of the Shadywood DIP Facility Claim is $_____ and the amount of the Looscan DIP Facility Claim is $_____.  Accordingly, the initial Bid for the Shadywood Remnant Assets is $_____ (the "<u>Shadywood Initial Bid</u>") and the initial bid for the Looscan Remnant Assets is $_____ (the "<u>Looscan Initial Bid</u>").

F.     <u>Deposit</u>. Each Deposit shall be held in escrow by the Debtor until three (3) business days after the entry of an order of the Bankruptcy Court approving the Successful Bid (defined below) (the "<u>Refund Date</u>"); provided, however, the Deposit paid by the bidder submitting the Successful Bid shall continue to be held in escrow by the Debtor following entry of such order. There will be no interest paid on the Deposit as the Deposit will be held in an IOLTA account and the interest is given to Texas Access to Justice Foundation in accordance with rules established by the Texas Supreme Court.

If the Successful Bidder (defined below) subsequently defaults or breaches the Successful Bid, then the Deposit submitted by such Successful Bidder, shall be deemed forfeited and shall be retained by the Debtor for the benefit of the Debtor's estate.  Any Deposit paid by a bidder who is not selected as the Successful Bidder shall be returned by the Debtor on or before the Refund Date, unless a bidder chooses to be a Back-Up Bidder (defined below).

G.     <u>Bid Deadline</u>.  All Bid Packages must be submitted to the Debtor at Diamond McCarthy LLP, Attn: Charles Rubio, 909 Fannin, 37th Floor, Houston, Texas 77010 so as to be <u>received</u> not later than [●] (the "<u>Bid Deadline</u>").

H.     <u>Auction</u>.  If there are any bidders for the Assets other than the DIP Lender, then on [●] (the "<u>Auction Date</u>"), beginning at [●] at [●], the Debtor will conduct an auction (the "<u>Auction</u>") to determine the highest or best bid.  The Debtor may conduct the Auction in the manner he determines will achieve the maximum recovery for the Debtor's estate.

I.     <u>Auction Process</u>.  The Debtor shall commence the Auction with the highest bid received, and if there is a tie, then then the earliest highest bid received.  Qualified Bidders will be permitted to increase their bids and to agree to modifications to their bids in order to make their bids more favorable to the Debtor's estate, provided that each bid subsequent to the Initial Bid shall be at least $1,000 greater than the preceding bid (the "<u>Incremental Bid Amount</u>"). Such bidding shall continue until the Debtor concludes the Auction of the Assets.

At the conclusion of the Auction, the Debtor shall identify the highest and best bid (the "<u>Successful Bid</u>"), based upon the foregoing Auction process and the Debtor's determination of the highest or otherwise best bid from a qualified bidder (the "<u>Successful Bidder</u>").

All bidding shall be conducted at the Auction and no bids shall be tendered or accepted after the Auction has concluded.  Any bidder that submits a Qualified Bid that is not selected as the Successful Bid may choose to serve as a "back-up bidder" (each, a "<u>Back-Up Bidder</u>") and to keep its highest bid at the Auction open for acceptance pending the Successful Bidder's completion of the purchase of the Assets (each, a "<u>Back-Up Bid</u>") (it being understood that the Debtor shall continue to hold in escrow the Deposit of any party serving as a Back-Up Bidder); provided, however, the Debtor shall not be obligated to seek approval of any such Back-Up Bid.

J.     <u>Hearing on Successful Bid.</u>  Any party that disputes the results of an Auction must file a Motion for Hearing on Successful Bid within seven days of the conclusion of the Auction.

Dated:  [●], 2019

Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/*_____
Charles M.  Rubio
TBA No. 24083768
Michael D. Fritz
TBA No. 24083029
909 Fannin, Suite 3700
Houston, TX 77010
(713) 333-5100
crubio@diamondmccarthy.com
mfritz@diamondmccarthy.com

*Counsel to Debtors and Debtors-In-Possession*

Document comparison by Workshare 9.5 on Tuesday, September 3, 2019
4:05:01 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\Rubioc\OneDrive\Diamond McCarthy\Houtex\Chapter 11 Plan\Houtex - Amended Plan 8.5.19 [ECF 329] [Filed Version].docx |
| Description | Houtex - Amended Plan 8.5.19 [ECF 329] [Filed Version] |
| Document 2 ID | file://C:\Users\Rubioc\OneDrive\Diamond McCarthy\Houtex\Chapter 11 Plan\Houtex - Corrected Amended Plan.docx |
| Description | Houtex - Corrected Amended Plan |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 9 |
| Deletions | 8 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |

| Total changes | 17 |
|---|---|