

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/04/2020

| | | |
|---|---|---|
| IN RE: | § | |
| HOUTEX BUILDERS, LLC, *et al* | § | CASE NO: 18-34658 |
| | § | |
| 415 SHADYWOOD, LLC | § | CASE NO: 18-34659 |
| | § | |
| 2203 LOOSCAN LANE, LLC | § | CASE NO: 18-34660 |
| | § | Jointly Administered Order |
| Debtor(s) | § | |
| | § | CHAPTER 11 |

## ORDER

Before the Court are multiple disputes between multiple legal entities that are basically controlled by two parties. If one ignores the various business entities and legalities, at its core this bankruptcy case is a dispute between a real estate investor, Charles Foster (hereinafter "Foster") and a home builder, Robert Parker ("Parker"). Foster controls the debtor entities, which were set up to speculate in multimillion-dollar homes and Parker, who controls the entity that was to construct these homes and equally profit from the home sales.

Both Foster and Parker are sophisticated businessmen and are well educated, however, their joint business plans ultimately were not successful, and various litigation ensued. Each blames the other for the businesses' failures and each tells a very different story of how this occurred. It is a tangled web, which this Court will attempt to unravel.

This is an interim order. By agreement of the parties a two-day trial was held to first determine the contractual relationships and agreements between the parties. The purpose of this order is to set the parameters of those contract relationships and agreements before a final hearing, when all remaining issues will be adjudicated. This Court does not consider this to be a final order.

1 / 19

## FACTUAL AND PROCEDURAL BACKGROUND

HouTex Builders, LLC ("HouTex") (Case No. 18-34658), 415 Shadywood, LLC (Case No. 18-34659), and 2203 Looscan, LLC (Case No. 18-34660), filed separate petitions for relief under Chapter 11 of the Bankruptcy Code on August 23, 2018.  The three debtors are each special purchase entities established for the purpose of constructing houses.  HouTex was formed for the construction of several houses, including houses located at 3 Thornblade, 15 Thornblade, 5325 Lynbrook, 3019 Ella Lee, 3054 Locke Lane and 6111 Crab Orchard.  415 Shadywood, LLC was formed for the construction of a house located at 415 Shadywood ("Shadywood"). 2203 Looscan, LLC was formed for the construction of a house located at 2203 Looscan ("Looscan").  At the time of these bankruptcy filings, the houses located at 415 Shadywood and 2203 Looscan were incomplete.  The debtors are all owned 100% by Charles C. Foster and his wife, Lily Foster.  An order granting joint administration of the three debtors was entered on September 4, 2018 under Case No. 18-34658 (ECF No. 32).

### Involuntary Action 19-32825

The three instant debtors were also the petitioning creditors in an involuntary action, Case No. 19-32825 filed on May 20, 2019, against HL Builders, LLC a/k/a CD Homes, LLC.  An amended petition was filed on July 11, 2019.  After a three-day trial, and briefing by the parties, Judge Eduardo V. Rodriguez dismissed the involuntary petition on February 18, 2020 (ECF No. 53).  In the opinion dismissing the case, Judge Rodriguez found that the petitioning creditors lacked standing to file the Amended Involuntary Petition because their claims are the subject of a bona fide dispute as to liability and amount, that HouTex's claim was contingent regarding the property located at 5325 Lynbrook¸ and that the petitioning creditors failed to demonstrate that

HL Builders, LLC a/ka/ CD Homes, LLC was not generally paying its debts as they became due pursuant to 11 U.S.C. § 303(h).

### Claim Objections

In the instant case, the debtors have filed omnibus objections to the claims of CD Homes (ECF No. 334), 1040 Hyde Park, LLC (ECF No. 335), and Anna Williams (ECF No. 336), ("Parker entities").  CD Homes, LLC has filed an objection to the claim of Charles Foster (ECF No. 373).  In addition, there is currently pending confirmation of the amended chapter 11 plan (ECF No. 342), CD Homes, LLC's request for hearing on disposition of personal property from the 5325 Lynbrook Drive Property Closing (ECF No. 455), a motion to establish DIP claim amounts and the response by CD Homes, LLC (ECF Nos. 459 and 462), a motion for sanctions filed by the debtors against Robert Parker and the response by Robert Parker (ECF Nos. 482 and 493).

On May 28, 2020, trial was held regarding the relationship amongst the debtors, Charles Foster and CD Homes, LLC prior to proceeding with the objections to the claims.  All disputed claims of CD Homes, LLC, 1040 Hyde Park, LLC and Anna Williams were filed by Robert Parker, as the authorized agent of the claimants.  Charles Foster, the owner of the debtors, filed the remaining claim at issue.

CD Homes, LLC filed three unsecured claims in the jointly administered case, Claim Nos. 12-1, 13-1 and 16-1.  Claim No. 12-1 was filed on December 26, 2018 in the amount of $14,011.15.  In support of this claim, the claimant attached various invoices addressed to CD Homes and Anna Williams.  Claim No. 13-1 was filed on December 26, 2018 in the amount of $1,567.83, and included, in support of the claim, an invoice to Hampton Lane Builders LLC.  Claim 16-1 was filed on December 31, 2018 in the amount of $500,000.00.  There is no

supporting documentation attached to this claim.  The debtors filed objections to each of these claims as part of an omnibus objection on August 14, 2019 (ECF No. 334).

On November 15, 2019, CD Homes, LLC filed an amended claim (Claim No. 16-2) amending the claim from $500,000.00 to $1,723,653.00.  Again, there was no supporting documentation in support of this claim.  No objection has been filed to the amended claim.

CD Homes, LLC filed four separate unsecured claims in the Shadywood case, Claims No. 4-1, 5-1, 6-1 and 7-1.  Claim No. 4-1 was filed on December 26, 2018 in the amount of $643.31, and contains, in support of the claim, an invoice to CD Homes dated August 20, 2018 from Reliant.  On the same date, December 26, 2018, CD Homes, LLC filed claim No. 5-1 in the amount of $79,095.00.  In support of this claim, the first page of various promissory notes was attached.  The first note is in the amount of $150,000.00 from HouTex to Jim D. Nored regarding construction at 3019 Ella Lee Lane, Houston, TX, the second is in the amount of $47,000.00 from HouTex to Jim D. Nored on the residence at 3 Thornblade Circle, Spring, TX, and the third is a note in the amount of $67,500.00 from 415 Shadywood, LLC to Jim D. Nored regarding 415 Shadywood, Houston, TX.  There is also an assignment of the third promissory note from Jim D. Nored to CD Homes, LLC.  Claim No. 6-1 was filed on December 26, 2018 in the amount of $227,914.00, and again attaches the first page of promissory notes.  There are three separate notes, the first from HouTex to Jim D. Nored in the amount of $150,000.00, regarding 3019 Ella Lee Lane, Houston, TX, the second from HouTex to Jim D. Nored in the amount of $132,000.00 regarding 15 Thornblade, and the third from 415 Shadywood to Jim D. Nored in the amount of $194,500.00 on 415 Shadywood, Houston, TX.  There is an assignment attached regarding the third note only from Jim D. Nored to CD Homes, LLC. The last claim, Claim No. 7-1 filed on December 26, 2018 is in the amount of $2,084.65.  In support of this claim, two invoices were

attached from BMC dated June 19, 2018 and July 2, 2018.  Both invoices are addressed to CD Homes, LLC.  The debtors objected to Claim Nos. 4-1, 5-1 and 6-1 in the Shadywood case on September 19, 2019 (ECF No. 19), and again in the omnibus objection (ECF 334).

Two additional claims were filed by CD Homes, LLC in the Looscan case, Claim Nos. 3-1 and 4-1.  Claim No. 3-1, filed on December 26, 2018, in the amount of $80,224.76 and included invoices from BMC addressed to CD Homes, LLC, dated from June 11, 2018 through August 22, 2018.  Claim No. 4-1 filed by CD Homes, LLC on December 26, 2018 in the amount of $1,125.16, included invoices addressed to CD Homes, LLC from Gainsborough Waste, Reliant and Gurrola Reprographics. The debtors objected to Claim Nos. 4-1, 5-1 and 6-1 in the Looscan case on September 19, 2019 (ECF No. 14), and as part of the omnibus objection (ECF No. 334).

The omnibus objection to these nine claims was filed in the jointly administered case by the debtors on August 14, 2019 (ECF No. 334) stating that CD Homes is responsible for the costs in the underlying claims pursuant to the Investor Agreements signed by the parties.

Claimant 1040 Hyde Park, LLC filed an unsecured claim on December 26, 2018 in HouTex' case (Claim No. 10-1).  The supporting documentation for the claim includes the first page of a promissory note from Lily Charles Homes, LLC to Jim D. Nored in the amount of $106,600.00 regarding the construction of a house at 4519 West Alabama, Houston, TX,, and the first page of a promissory note from HouTex to Jim D. Nored in the amount of $339,000.00 dated May 13, 2013 for the construction of a house at 5325 Lynbrook, Houston, TX . There is also an assignment of the $339,000 note from Jim D. Nored to 1040 Hyde Park, LLC.

A second unsecured claim was filed by 1040 Hyde Park, LLC on December 26, 2018 (Claim No. 11-1) in the amount of $140,480.00.  This claim also included the first page of two

promissory notes.  The first one is a promissory note from HouTex to Jim D. Nored in the amount of $72,000.00.  The note referenced construction of a house at 3054 Locke Lane, Houston, TX.  The second one is a promissory note from HouTex to Jim D. Nored in the amount of $90,640.00, stating it is junior to another loan.  This note references the same property as the second note in Claim No. 10-1, 5325 Lynbrook, Houston, TX.  There is an amended assignment of the $90,640.00 promissory note from Jim D. Nored to 1040 Hyde Park, LLC.

Claim No. 8-2 was filed by 1040 Hyde Park, LLC on December 31, 2018 in the Shadywood case.  The claim is an unsecured claim in the amount of $79,095.00 and includes an assignment of a promissory note from 415 Shadywood, LLC to Jim D. Nored in the amount of $67,500.00.  The assignee is 1040 Hyde Park, LLC.  Another claim was filed by 1040 Hyde Park on December 31, 2018 (Claim No. 9-2) in the amount of $227,914.00, attaching an assignment from Jim D. Nored to 1040 Hyde Park, LLC of a promissory note from 415 Shadywood, LLC to Jim D. Nored.  Debtors filed an objection to both these claims in the Shadywood case on September 19, 2019 (ECF No. 21).

An omnibus objection to Claims Nos., 10-1, 11-1, 8-2 and 9-1 was filed in the jointly administered case by the debtors on September 19, 2019 (ECF No. 335) stating that there is insufficient documentation to show liability to the Debtor and that CD Homes was responsible for the costs in the underlying claims pursuant to the Investor Agreements.

Unsecured proof of claims were filed by Anna Williams in each of the three debtors' cases.  Williams filed a claim in the amount of $14,032.45 on December 26, 2018 in the HouTex case (Claim No. 9-1).  The documentation attached to the claim reflects a credit card in the name of Anna Williams paid for materials furnished for 5325 Lynnbrook Drive and 5431 Cedar Creek

Drive in the amount of $14,032.45 on November 20, 2017.  The claim also includes an attached invoice from Ferguson Enterprises, Inc. to CD Homes, LLC for the entire amount.

Williams also filed an unsecured claim in the Shadywood case in the amount of $63,226.28 (Claim No. 3-1).  The documentation attached to the claim contains various invoices from BMC West (dated from June 2, 2017 to December 10, 2017), Dal-Tile (dated September 6, 2017 and August 3, 2017), Elegant Additions (dated May 10, 2017 and May 24, 2017), Lighting Inc. (dated November 7, 2017 and November 30, 2017), and Perfection (dated July 6, 2017) all addressed to CD Homes, LLC for multiple properties, and credit card statements in the name of Anna Williams.  The debtors filed an omnibus objection in the Shadywood case to the three claims on September 19, 2019 (ECF No. 20).

Williams filed another unsecured claim in the Looscan case on December 26, 2018 in the amount of $64,465.80 (Claim No. 5-1).   The documentation in support of the claim consisted of invoices from BMC to CD Homes, LLC, (dated between May 15, 2017 and July 31, 2017), and one from Forja Designs LLC, (dated June 26, 2017).  Williams' credit card statements were also attached.  The debtors filed an omnibus objection in the Looscan case to the three claims on September 19, 2019 (ECF No. 13).

An omnibus objection to these three claims was also filed in the jointly administered case by the debtors on August 14, 2019 (ECF No. 336) stating that there is insufficient documentation to show liability of these claims by any of the debtors and that CD Homes was responsible for the costs in the underlying claims.   In addition, the objection states that CD Homes was responsible for the amounts claimed as set forth in the Investor Agreements between the debtors and CD Homes.

Charles C. Foster filed Claim No. 17-1 on December 31, 2018 in the amount of $3,649,386.24 as a contingent secured claim, and as an unsecured claim. CD Homes, LLC objected to the claim stating that Charles C. Foster is an insider of the debtors, received preferential payments from the debtors, and that the claim is contingent.

## Parties Contentions

Debtors assert that each of the debtors and CD Homes, LLC have valid enforceable contracts that spell out the duties and responsibilities of the parties and establish the contractual relationship between the parties. Each set of contracts are virtually identical, the only difference being various dollar amounts involved in each contract. Each set of contracts contains three separate agreements. The main agreement at issue is the Investor Agreement. The Investor Agreements set forth how the projects will be financed, and provides for an equity loan and a construction loan for each project. Each of the debtors, through their principal, Charles Foster was responsible for the equity loan and the construction loan. Those funds were to be turned over to CD Homes, LLC, which was then responsible for construction and marketing of the properties after completion. If the equity loans and the construction loans were insufficient to complete the project through the closing, then CD Homes, LLC would be responsible for completing the project without getting any additional funds from any of the debtors. It is the debtors' contention that they performed their part of the contracts by providing the equity and construction loans.

CD Homes, LLC agrees that the contracts state that it is to ensure that the projects are completed and sold with the funds from the equity and construction loans. However, CD Homes, LLC states that the debtors modified the contracts through the parties' course of dealing, so that it was no longer responsible if the equity and construction loans were insufficient to

complete a project.  Specifically, CD Homes, LLC states that the debtors delayed several projects leading to increased costs that were not contemplated when the investor agreements were signed.  In addition, CD Homes, LLC states that the debtors failed to fund the equity and construction loans, so additional investors had to be located, which CD Homes, LLC did, although that increased the costs.  The debtors state that it did not matter if CD Homes, LLC located additional investors as the debtors still guaranteed each loan, not CD Homes, LLC.

## FINDINGS OF FACT

The parties have filed proposed findings of Fact and Conclusions of Law at ECF No. 499 (the Foster entities) and ECF No. 497 (the Parker entity).  The Court adopts, or by omission rejects and additionally makes the following findings:

Beginning in the mid 2000's Foster and Parker, via various business entities began to build residential homes in the Houston area.  In 2013 and 2014, they entered into contracts, later described, for the business entities that are the debtors in this case.  The debtors in the case are Houtex Builders, LLC, 415 Shadywood, LLC and 2203 Looscan, LLC. Each of the debtors are special purpose entities set up to build one or more multimillion-dollar homes. Charles C. Foster and his wife Lily Foster are the members and managers of each of the debtors.  However, Foster is the de facto manager of all the debtor entities and Lily Foster has little or no involvement in the formation or management of the debtor entities.  The Court will use "Foster", the "Foster entities", "debtor" and "debtor entities" interchangeably.

CD Homes is a home construction company.  Anna Williams ("Williams") is the purported owner of CD Homes.  Anna Williams' husband, Robert Parker, is a purported consultant for CD Homes, however, he appears in most, but not all aspects to be its principal operator and manager.  The Court will use "Parker", the "Parker entity" and "CD Homes"

interchangeably.  It will also use the term "Parker entities" to describe any entity controlled or owned by Parker and/or Williams.

## Bankruptcy Case 04-34127

On March 18, 2004, Robert F. Parker, the representative of CD Homes, filed a petition for relief under Chapter 7 in the Southern District of Texas in Case 04--34127. On August 23, 2004, a related adversary (Case No. 04-03658) was filed by creditor, Finger Interests Number One, Ltd., seeking non-dischargeability of debt pursuant to 11 U.S.C. §523(a)(2), (a)(4) and (a)(6) in the amount of $604,871.38. On November 02, 2004, that debt was deemed by Order (ECF No. 7) non-dischargeable in the amount of $604,871.38 to accrue post judgment interest at the promissory note rate of 18% per annum. Subsequent to the non-dischargeability judgment, in Cause No. 2015-43968, titled *NMRO Holdings, LLC vs. Robert F. Parker* filed in the 157th Judicial District Court of Harris County, Texas, plaintiff sought to establish Anna William's liability for Robert F. Parker's debts deemed non-dischargeable in the aforementioned bankruptcy. In Cause No. 2015-43968, any claims asserted by plaintiff to establish Anna William's liability for Robert F. Parker's debts were dismissed.  This cause was appealed to the Court of Appeals of the First District of Texas in Case No. 01-16-00816-CV, titled *NMRO Holdings, LLC v. Anna Williams and CD Homes, LLC.* In a mandate entered October 24, 2017, the Court of Appeals held that the trial court's judgment contained no reversible error and affirmed the trial court's judgment, which determined that Anna Williams was not liable for the judgment against Robert Parker. The Court of Appeals further ordered plaintiff to pay all appellate costs.

The structure and management of CD Homes has the appearance of providing Parker legal shelter from his non-dischargeable judgment creditor. He also appears in most aspects to

operate and manage CD Homes.  His wife, the purported owner, likewise appears to have very little to do with the active operation or management of CD Homes.  Parker testified that he receives no compensation from CD Homes for his time or labor, except for four consulting fees of $3,000 each raised in the cross examination.  The exhibits relied on in the cross examination show 12 additional disbursements to Parker in 2017 and 2018, for a total of $48,000,  However, Williams, for her limited participation in CD Homes has withdrawn just over 5.7 million in "member draws"[1] from CD Homes.  Parker therefore runs, manages, and appears to operate a mid-sized home building company for little compensation, with almost all of the profits directed to his wife.[2]

There were four properties held by the debtor entities as of the date of filing.  During 2013 and 2014, each of the debtor entities entered into a set of almost identical contracts with CD Homes.  These contracts were in connection with the four projects and consisted of three individual contracts, an Investor Agreement, a Construction Agreement and an Option Agreement.  They were for the following properties:

5325 Lynbrook, Houston, Texas 77056;

3 Thornblade Circle, Spring, Texas 77389;

2203 Looscan Lane, Houston, Texas 77019; and

415 Shadywood, Houston, Texas 77057.

Both the Lynbrook and Thornblade properties were owned by Houtex, the remaining properties were owned by the individual LLC's named after the properties' addresses.

---

[1] These "Member Draws" may have been used to pay legitimate business expenses.  The record is not yet complete, but the Court notes the lack of specificity in the testimony as to the use of these funds.  Trial Exhibit 45, the member draws between 9/25/12 and 3/7/2018 net to $5,736,994.83.

[2] Appearance is not a holding that these events have occurred as these factual and legal issues are not currently before the Court.

CD Homes has argued that the contracts have been modified, but the evidence did not support that argument.  However, the Court holds that while they have not been modified, they are often incomplete and poorly drafted.  For example, they do not account for the contingency of possible delays in the construction of the homes.

The Court finds that the written Contracts between the debtors and CD Homes establish the contractual relationship between the Debtors and CD Homes, except where the contracts are incomplete, silent, or vague.

The Court does not accept various arguments and evidence put forth by Parker on behalf of CD Homes that there were multiple modifications to the contracts.[3]  These allegations, except as to construction delays, are not supported by a totality of the evidence; however, home construction was possibly delayed.  While there was conflicting evidence as to the length of the delay, the scope of delay and who was at fault for these delays, the Court finds that the party responsible for any construction delay should be responsible for any costs associated with such delay.  Evidence of construction delays and the fault of such delay should be offered at the final hearing.

The three contracts for each home are fully contained in Houtex Trial Exhibits 1 – 4.  Each has the following provision in the Contractor Agreement (paragraph 2, Time for Performance), differing only by the date specified for the commencement of work:

For Looscan Lane, in a document dated August 14, 2014, it provides:

"Section 2.  Time for Performance: Contractor shall commence work or about June 30, 2015, and shall substantially complete the work on or before twelve months from such date,

---

[3] The Court notes its concerns regarding the testimony of Parker.  Testimony as a witness, especially a witness who is a party to litigation is often self-serving.  There is nothing inherently wrong with such testimony.  However, when a witness such as Parker has exacting recall of facts that are favorable to his position but does not remember or lacks the same exacting knowledge of facts that are unfavorable to his position or avoids answering these types of inquiries on cross examination his testimony becomes suspect.

with allowance for delays due to circumstances beyond its control including strikes, casualty, weather or materials unavailability."

Therefore, the parties contemplated substantial completion within 20½ months of the contracts' signing.

For Shadywood, the date specified for commencement of work is January 31, 2015. The contracts were signed on October 24, 2014. Therefore, the parties contemplated substantial completion within 14 months of the contracts' signing.

For Thornblade, the date specified for commencement of work is June 30, 2015. The contracts were signed on July 2, 2014. Therefore, the parties contemplated substantial completion within 24 months of the contracts' signing.

For Lynbrook, the date specified for commencement of work is September 30, 2013. The contracts were signed on May 16, 2013. Therefore, the parties contemplated substantial completion within 16 ½ months of the contracts' signing.

These time periods to substantially complete construction appear to be reasonable given the factual circumstances and were fairly negotiated. However, the Contractor Agreement or other contracts on each property do not specify what should occur if the work is not substantially complete on or before the calculated completion date. As the Court concludes, delays, which appear to exist, and which may have been substantial, must be attributed to the party at fault.

Interpreting the cost and allocation of construction delays ultimately affects both the profitability of the individual homes, as well as which entity shall bear the potential loss involved with the delay. This is because the Investor Agreements are specific and unmodified (each is almost identical, except as noted). The Investor Agreement provides that the investor (the Foster entities) shall be responsible for an initial cash infusion to fund the cost of

construction of each home.  This consisted of funds from a construction loan, more than likely drawn down by CD Homes during the house's construction, and an initial equity infusion, required by the bank to acquire the construction loan, as banks typically were unwilling to fully finance both acquisition and construction costs.  These loans were made by Foster and/or his entities and he was liable for payment of these loans due to personal guarantees.  His credit secured the financing.  The Court finds that the Investor Agreement specially provides that the initial equity infusions could be generated from funds which may have been from borrowed funds by the Foster entities and personally guaranteed by Foster.  Foster was highly leveraged in these projects, but this was his choice.  The party with whom he contracted, the builder, CD Homes (Parker's de facto entity), had no responsibility for loan repayment but was to be the general contractor; and importantly, contracted to be responsible for any required funds for construction costs that exceeded the sum of the investor's provided cash; i.e., the construction loan and initial equity infusion. The various contracts were arm's length transactions between the parties, each bringing to the contracts, that which the other party could not.

While the various contracts do differ as to dollar amounts stated, the Court stresses the importance of paragraph 8 of the Investor Agreement (contract terms are "quoted", court's interpretation are in *italics*):

"The title company is to distribute Net Profits" *(this is a misnomer, this is the sales price of the completed home)* "as follows: First, Net Proceeds will be used to repay the outstanding balance of the Loan." *(this is the construction loan, as noted above)* "Second, Net Proceeds will be used to repay the equity loan." *(contracts differ as to equity loan amounts $638,625 for Looscan, $405,000 for Shadywood, $459,750 for Thornblade, $339,000.00 for Lynbrook.  This is the equity infusion to support the construction loan, as noted above)* "Third,

Net Proceeds will be used to pay investor $50,000.   *(This is the investor's initial profit)* "Fourth, Net Proceeds will be used to pay 15% per annum on the Equity Loan." *(This covers the interest on the equity loan)* "Fifth, Net Proceeds will be used to pay CD $50,000." *(This is the builder's initial profit)* "All remaining Net Proceeds will be split equally between Investor and CD." *(This is the final profit split)* "If Net Proceeds are less than the amount required to make the first through the sixth payments listed above, then CD is to provide at closing the funds necessary to make up the shortfall." *(This requires CD Homes/Parker to pay any additional construction costs)*.

In summary, the testimony and documentary evidence from the hearing support a finding that Foster or his entities agreed to be responsible for funding the construction of these four homes by providing upfront a fixed amount of cash both by a construction loan and an equity contribution.   In exchange the builder, Parker or his entity, estimated all costs for construction and was to build the homes.   Further, the parties at the completion of construction contemplated the homes could be sold, funds provided at closing of the real estate, that thereafter loans and equity contributions would be repaid, and profits distributed per the various contract terms.   Foster was the "money man" and Parker was the "construction guy."   Each supplying to his ability.   However, cost overruns or the lack of profits were the responsibility of CD Homes, the Parker entity and not the Foster entities.   That Parker, who is by experience and education an intelligent home builder, would make an estimation of costs for the building of homes to derive a profit is logical.   That Foster, a well-regarded lawyer would accept these estimates with no home building experience is also logical.   This was the benefit of the bargain between the Foster entities and Parker entities and it is the shortfall of "Net Profits" that is the basis for the dispute between the parties.   However, this shortfall contractually falls to CD

Homes, the Parker entity except as noted below.

Parker is not without defenses, however, to any claims due to a "Net Profits" shortfall. The contracts and the testimony support this Court holding that these contracts would be completed within 12 months of the dates specified in the contracts.  However, the properties may not have been completed with 12 months and the uncontradicted testimony was that costs, such as 15% interest on equity loans and real property taxes would have exceeded Parker's original good faith estimates per the contracts.  Parker or his entities should not be responsible for covering these delayed costs unless he or his entities was at fault.  Likewise, Foster should be responsible for covering these costs, if he or his entity was at fault in causing the construction delay, as the contracts are silent on this issue.

The contracts provide that "[t]he acceptance of any cost in the calculation of Net Proceeds and the allocation of any cost to a specific cost category will be based solely on the records for CD and as determined in CD's sole discretion."  Parker or his entity should provide a per property accounting of the construction costs to Foster or his entities, with the exception of costs that were claimed to have been incurred due to construction delay.  These pre-delay costs shall be binding on the Court's calculations as contractually provided, except as to future findings of fraud, misdirected funds and/or misappropriation.[4]  Parker or his entity shall provide a per property accounting of the delayed construction costs to Foster or his entities.  These delay costs shall be examined for accuracy and allocated by the Court based on fault of the parties, but the Parker entities may not recover from the debtor costs associated with timely construction that exceeds the cash contributions of Foster or his entities.  The Court as

---

[4] Various allegations exist in the pleadings regarding fraud and misappropriation.  These claims have not yet been litigated. They relate to alleged document backdating, fraudulent liens, and promissory notes, and misdirected or misappropriated funds by either Parker or Foster.

described below places the burden on Parker and his entities to account for their claims.

## CONCLUSIONS OF LAW

The Court has applied a preponderance of the evidence standard to these proceedings. During the claims allowance process, the burden of proof rests on different parties at different times. *In re Leverett*, 378 B.R. 793, 798–99 (Bankr. E.D. Tex. 2007) (*citing In re Woodmere Inv'rs. Ltd. P'ship*, 178 B.R. 346, 354–55 (Bankr. S.D.N.Y. 1995)). Under Rule 3001(f), a properly filed proof of claim is prima facie evidence of the validity of the claim. *In re Gilbreath*, 395 B.R. 356, 361 (Bankr. S.D. Tex. 2008), *as amended* (Nov. 19, 2008). A claimant who has complied with Bankruptcy Rule 3001 may rest on its proof of claim and refrain from presenting any additional evidence at the hearing on an objection. The claimant will prevail unless the objecting party produces evidence of equal or greater probative force to that of the proof of claim to refute some aspect of the proof of claim. *In re Gulley*, 436 B.R. 878, 893 (Bankr. N.D. Tex. 2010). Upon claimant's compliance, the burden of proof then shifts to the objecting party to produce "evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Leverett*, 378 B.R. at 799 (*citing Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. BAP 2000)).  If the objector does come forward with such probative evidence, the burden of proof then shifts to the party who would bear the burden respecting this claim outside of bankruptcy in the contested matter from that point forward. *In re Bates*, 570 B.R. 757, 763–64 (Bankr. W.D. Tex. 2017)(*citing Leverett*, *id.* at 799 (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 26, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000)).

The Foster entities have met their initial burden in relation to the claim objections and have provided evidence of equal or greater probative force to that of the proof of claim to refute some aspect of the proof of claim.  The Parker entities must now meet their burden and account for their proof of claims at the final hearing.  However, the Parker entities have yet to meet their initial burden on their objection to the claim of Foster.

There were no modifications to the written contracts given the evidence and testimony.  It is basic contract law that the party seeking to establish a modification of a contract carries the burden to demonstrate such modification.  *Omni USA, Inc. v. Parker-Hannifin Corp.*, 798 F. Supp. 2d 831, 849 (S.D. Tex. 2011)(citing *Hathaway v. General Mills, Inc.,* 711 S.W.2d 227, 228–29 (Tex.1986)). Here the burden was not met by the Parker entity.  There must be an offer, acceptance and consideration for a modification to occur. *Hill v. Heritage Resources, Inc.,* 964 S.W.2d 89, 113–14 (Tex.App.-El Paso 1997, writ denied); *in accord S & D Group, Inc. v. Talamas,* 710 S.W.2d 680, 683 (Tex.App.-Corpus Christi 1986).  Parker or CD Homes did not produce sufficient evidence to demonstrate a modification of any of the written contracts by offer and acceptance.  Additionally, the Court notes that the contracts were drafted by lawyers for CD Homes and should they be reasonably doubtful as to construction they must be construed against the drafter. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.,* 699 F.3d 832, 842 (5th Cir. 2012) (citing *Forest Oil Corp. v. Strata Energy, Inc.,* 929 F.2d 1039, 1043–44 (5th Cir.1991)).

## FINAL HEARING

The Court sets a video conference to determine a final hearing date at 9:00 a.m. on June 30, 2020.  Parties should reference the Court's website for connection instructions.  Should the

parties seek clarification or additional findings, either of fact or law, they must file motions not later than June 23, 2020.

**SO ORDERED.**

SIGNED: 06/04/2020.

Jeffrey P. Norman
United States Bankruptcy Judge