IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| HOUTEX BUILDERS, LLC, *et al.* | § § | CASE NO. 18-34658 |
| 415 SHADYWOOD, LLC | § § | CASE NO. 18-34659 |
| 2203 LOOSCAN LANE, LLC | § § § | CASE NO. 18-34660 Jointly Administered |
| DEBTOR(s) | § § | CHAPTER 11 |

ORDER GRANTING CD HOMES, LLC'S
MOTION SEEKING ENTRY OF
<u>ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>
(Relates to Docket 508)

CAME ON FOR CONSIDERATION CD Homes, LLC's Motion Seeking Entry of Additional Findings of Fact and Conclusions of Law and it appearing that the Court has jurisdiction to consider the Motion and the relief sought therein; and due notice of the Motion having been provided in accordance with Federal Rules of Bankruptcy Procedure, the Bankruptcy Local Rules and this Court's orders; and good and sufficient cause appearing therefore, it is

ORDERED that the Motion is hereby granted in all respects; and it is

FURTHER ORDERED that each of the following additional findings of fact and conclusions of law[1] is hereby adopted:

---

[1] Each finding of fact more appropriately considered a conclusion of law is so deemed; each conclusion of law more appropriately considered a finding of fact is so deemed.

1. Each of the written Contracts provided a construction commencement date and further provided that contractor would substantially complete the work on or before twelve months from such date, "with allowance for delays due to circumstances beyond its control including strikes, casualty, weather or materials unavailability."[2]

2. The written Contracts lacked any provisions governing a delay in project construction arising from other factors.

3. Under Texas law, where a written agreement is incomplete, parol evidence is admissible to show collateral agreements, but only insofar as the evidence does not contradict those terms of the writing that are complete and unambiguous.[3]

4. Based upon a projected construction start date of June 30, 2015, the Looscan project's projected completion date was June 30, 2016.

5. Based upon a projected construction start date of September 30, 2013, the Lynbrook project's projected completion date was September 30, 2014.

6. Based upon a projected construction start date of January 31, 2015, the Shadywood project's projected completion date was January 31, 2016.

7. Based upon a projected construction start date of June 30, 2014, the 3 Thornblade Project's projected completion date was June 30, 2015.

8. After the parties executed the written Contracts, a steep recession hit the Houston real estate market, caused in large part by the collapse in the price of oil beginning in late 2014. When the recession occurred, Charles Foster, the manager and owner of Debtors, was highly leveraged in his multiple real property investments with CD Homes.

9. Prior to the recession, Charles Foster met infrequently with Robert Parker regarding the projects. Beginning in the first quarter of 2015, the parties met regularly; first on a monthly and later weekly basis with respect to the projects.

10. After the recession, Charles Foster personally became deeply involved in the projects' decision-making to the extent that he reviewed all invoices and wrote all checks.

---

[2] *See* Contractor Agreement, Section 2, Time for Performance.

[3] *Jack H. Brown, Inc. v. Toys "R" Us, Inc.*, 906 F.2d 169, 175 (5th Cir. 1990).

11. Gravely concerned with his substantial financial exposure amidst the severe downturn in the Houston real estate market and despite the contractual obligation that contractor substantially complete construction by the projected completion date, Charles Foster demanded and caused CD Homes to refrain from commencing or completing construction on the Debtors' four projects until Foster specifically authorized such construction ("Debtors' Delay").

12. CD Homes opposed construction delay because the substantial costs to carry high-end real estate, including property taxes, insurance and accruing loan interest charges, would negate profit and result in loss in the projects.

13. The Debtors' Delay hindered CD Homes' ability to timely commence or complete the projects.

14. Under Texas law, a contractor is entitled to recover its damages from an owner upon proof that : i) its work was delayed or hindered; ii) it suffered damages because of the delay or hindrance; and iii) the owner was responsible for the act or omission which caused the delay or hindrance.[4]

15. As a result of the Debtor's delay, the Looscan project was not substantially completed by the projected completion date (the "Looscan Delay.")

16. To the extent the Looscan delay resulted in additional costs and expenses to the project, those delay costs shall be the responsibility of Debtor, 2203 Looscan Lane, LLC.

17. As a result of the Debtor's delay, the Lynbrook project was not substantially completed by the projected completion date (the "Lynbrook Delay.")

18. To the extent the Lynbrook delay resulted in additional costs and expenses to the project, those delay costs shall be the responsibility of Debtor, HouTex Builders, LLC.

19. As a result of the Debtor's delay, the 3 Thornblade project was not substantially completed by the projected completion date (the "Thornblade Delay.")

20. To the extent the Thornblade delay resulted in additional costs and expenses to the project, those delay costs shall be the responsibility of Debtor, HouTex Builders, LLC.

21. As a result of the Debtor's delay, the Shadywood project was not substantially completed by the projected completion date (the "Shadywood Delay.")

---

[4] *City of Houston v. F.R. Ball Construction Co.*, 570 S.W.2d 75, 77 (Tex.Civ. App. – Houston [14th Dist.] 1978, writ ref'd n.r.e.).

22. To the extent the Shadywood delay resulted in additional costs and expenses to the project, those delay costs shall be the responsibility of Debtor, 415 Shadywood, LLC.

23. Each investment contract required Charles Foster to fund equity.

24. Charles Foster did not directly fund equity for any of the four projects; instead, CD Homes located third party equity lenders at Charles Foster's instruction.

25. Charles Foster guaranteed the $1.6 million Spirit of Texas bank loan which funded portions of the required equity for some of the projects including 3 Thornblade.

26. Charles Foster did not guarantee the Jim Nored equity loan on the Lynbrook project; instead, such loan was secured only by a deed of trust against the Lynbrook property.

27. Charles Foster did not guarantee the Hap May/Gary Hmaiden equity loan on the Looscan project; instead, such loan was secured only by a deed of trust against the Longmont property.

Dated:

_____
Jeffrey Norman
United States Bankruptcy Judge