

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
12/18/2020

| | | |
|---|---|---|
| IN RE: | § | |
| HOUTEX BUILDERS, LLC, *et al* | § | CASE NO: 18-34658 |
| | § | |
| 415 SHADYWOOD, LLC | § | CASE NO: 18-34659 |
| | § | |
| 2203 LOOSCAN LANE, LLC | § | CASE NO: 18-34660 |
| | § | Jointly Administered Order |
| Debtor(s) | § | |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION

Before the Court are various claim objections described herein.  For the reasons so stated the claim objections to Proof of Claim Nos. 9-1, 10-1, 11-1, 12-1, 13-1, and 16-3 in the jointly administered case are sustained and these claims are disallowed, objections to Proof of Claim Nos. 3-1, 4-1, 5-1, 6-1, 7-1, 8-2, and 9-3 in the Shadywood case are sustained and these claims are disallowed, the claim objections to Proof of Claim Nos. 3-1, 4-1, 5-1 in the Looscan case are sustained and these claims are disallowed.  The claim objections to Claim No. 17 in the jointly administered case, Claim No. 10 in Shadywood and Claim No. 7 in Looscan are overruled.

### Jurisdiction

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A), and (b)(2)(B).

### Factual and Procedural Background

The debtors in this case filed three separate petitions for relief under Chapter 11 on August 23, 2018, and are HouTex Builders, LLC ("HouTex") (Case No. 18-34658), 415 Shadywood, LLC ("Shadywood") (Case No. 18-34659), and 2203 Looscan, LLC ("Looscan") (Case No. 18-34660). The three debtors are each special purchase entities established for the purpose of constructing houses. HouTex was formed for the construction of several houses, including houses located at 3 Thornblade, 15 Thornblade, 5325 Lynbrook, 3019 Ella Lee, 3054 Locke Lane and 6111 Crab Orchard.  Shadywood was formed for the construction of a home located at 415 Shadywood.  Looscan was formed for the construction of a house located at 2203 Looscan. At the time of these bankruptcy filings, the houses located at 415 Shadywood and 2203 Looscan were incomplete. The debtors are all owned 100% by Charles C. Foster and his wife, Lily Foster. An order granting joint administration of the three debtors was entered on September 4, 2018 under Case No. 18-34658.[1]

---

[1] ECF No. 32.

## Introduction

This is a story of a broken business relationship between two individuals Charles Foster and Robert Parker and their various legal entities, who over time have had multiple joint ventures[2] to construct, market and sell multi-million-dollar homes.  There are multiple disputes amongst multiple legal entities that are basically controlled by two parties.  If one ignores the various business entities and legalities, at its core this bankruptcy case is a dispute between a real estate investor, Charles Foster (hereinafter "Foster") and a home builder, Robert Parker ("Parker").  Foster controls the debtor entities, which were set up to speculate in multimillion-dollar homes and Parker, who controls the entity that was to construct these homes and equally profit from the home sales.  Their legal relationships, which were based in part on trust and agreement, are now defunct, having lost multiple millions of dollars.  As was argued in closing arguments, these two parties who once agreed to build these multi-million-dollar homes cannot now agree on anything, and their testimony is evidence of that disagreement.  The court therefore is in the position of determining the truth and veracity of disagreeing principal witnesses whose testimony is very contradictory and either supported or not by voluminous documentary evidence.  The court finds both principal witnesses'[3] testimony lacking in some regards but based on the burden of proof,[4] the court finds the testimony of Foster more probable that the testimony of Parker.

This memorandum order contains additionally findings and conclusions from an interim order[5], which is incorporated by reference.  Trial was held over eight days, two days for the interim order and six days for this final order.  The record includes or will include[6] thousands of pages of documents including accounting records.

The accounting records in this case are troubling.  Accounting can be a simple, logical and auditable process when done correctly, however, the accounting records that Parker kept for the various legal entities in this case are not simple, at times illogical and confusing.  At various points in the testimony, these accounting records appear to be intentionally untraceable.  There were no general ledgers in any of the various legal entities, which over time involved at least 13 projects, with a total cost of over 30 million dollars.  Generally accepted accounting principles (GAAP)[7] were not followed by Parker.  Parker's various job folders, his slips of paper including invoices in those folders, his limited check registers and his summaries are not accounting.  Contrary to the testimony of Parker, the court finds that he had no centralized accounting system, and what accounting he did have was inadequate for projects of the size and magnitude he managed.  The court noted on the record that Parker's accounting records may have made sense only to him.  Even if the accounting records could be traced, and the court finds it has no duty to

---

[2] The term joint ventures are used generically and do not describe any legal entities.
[3] Robert Parker ("Parker") who principally managed the construction of multimillion-dollar homes and Charles Foster ("Foster"), who was an investor.
[4] The court has applied a "preponderance of the evidence" standard.
[5] ECF No. 508.
[6] The court anticipates that the record may be supplemented with additional documents after this order is entered. See ECF No. 652.  These documents will have no effect on the court's ruling given the findings in this order.
[7] A set of rules that encompass the details, complexities, and legalities of business accounting.  The Financial Accounting Standards Board (FASB) uses GAAP as the foundation for its comprehensive set of approved accounting methods and practices.

do so for Parker, the evidence presented does not support Parker's various claims, in part due to this court's findings of his truth and veracity.

Parker on one project created a false lien,[8] in order to divert funds at a real estate closing to relatives with no relation to the real estate. This false lien was also intentionally back dated by both he and his wife, Anna Williams as the notary. The court notes that Parker's wife is a claimant in this case. The court will never condone such activity under any circumstances. It very seriously impugns Parker's credibility. Parker also, as later described, filed duplicative claims[9] and then failed to seek withdrawal until this trial based on what counsel attempted to excuse as an oversight. The court does not believe this excuse. This has been a very heavily litigated case and such oversight would have been impossible. Additionally, Parker created accountings on the sale of projects that were either false or that were created with the intent to deceive Foster. They falsely reported profits and that the debts against such projects had been fully paid when they had not.[10] Parker therefore manipulated several of the project's finances to his own benefit. He also intentionally misrepresented the profits on these projects in order to induce Foster to continue to do further construction projects. If Foster had been aware of the actual profits on these projects, he would have not invested in further projects with Parker.

Foster's testimony is not without its faults. As a lawyer, his lack of knowledge over events, legal issues and especially the promissory notes he signed, was troubling. However, unlike Parker, his testimony, other than his lack of detail or knowledge, was not seriously impeached. He came across as truthful, but very unmindful, even negligent of business affairs that totaled in the millions of dollars. Moreover, his testimony that he never asked that projects be delayed was more credible than Parker's and supported by other testimony.[11] Again, the court stresses it finds the testimony of Foster more probable than the testimony of Parker and its findings of fact and conclusions of law are based, in part, on this Court's findings as to the truth and veracity of the competing witnesses.

### The Claims and Objections

Omnibus objections have been filed in the consolidated case by the debtors to the claims of CD Homes, LLC ("CD Homes")[12], 1040 Hyde Park, LLC ("Hyde Park")[13], and Anna Williams[14]. Anna Williams is the owner of each of these entities. CD Homes has filed an objection to the claim of Charles Foster[15].

On May 28, 2020, a preliminary hearing was held regarding the relationship amongst the

---

[8] ECF No. 590-42; see also Transcript, Day Four, pages 30-31.
[9] ECF No. 590-97 and 590-96.
[10] Drafted by Parker, ECF No. 590-22, it does not account for a "carry forward" note. Also, the document references on page 3 "Deal Structure" and that **"CD Homes guarantees Investor against loss."** This was not the case. Additionally, ECF No. 590-91, does not include in its accounting a "carry forward" note. Both exhibits refer to "profits" not cash flow as claimed by Parker in his testimony.
[11] Denton Chiles, Ruthie Porterfield and Jim Nored as an adverse witness.
[12] ECF No. 515.
[13] ECF No. 335.
[14] ECF No. 336.
[15] ECF No. 373.

debtors, Charles Foster and CD Homes, prior to proceeding with the objections to the claims. All disputed claims of CD Homes, Hyde Park and Anna Williams were filed by Robert Parker, as the authorized agent of the claimants. Charles Foster, the owner of the debtors, filed the remaining claim at issue. The burden of proof has been determined by an order entered after that trial.[16]

CD Homes filed three unsecured claims in the jointly administered case, Claim Nos. 12-1, 13-1 and 16-3.[17]   Claim No. 12-1 was filed on December 26, 2018 in the amount of $14,011.15.[18] Claim No. 13-1 was filed on December 26, 2018 in the amount of $1,567.83.[19] Claim No.16-1 was filed on December 31, 2018 in the amount of $500,000.00. There is no supporting documentation attached to this claim.  The amended Claim No. 16-2 increased the claim to $1,723,653.00, yet still failed to attach any documentation in support of the claim. The latest amendment, Claim No. 16-3, included one page referencing various exhibits that have been filed in this case.[20]   The debtors filed objections to each of these claims as part of an amended omnibus objection on June 23, 2020, including an objection to 16-2.[21]   Claim No. 16-3 was filed after that omnibus objection.

CD Homes filed four separate unsecured claims in the Shadywood case, all on December 26, 2018. Claim No. 4-1 was filed in the amount of $643.31.[22]   CD Homes filed Claim No. 5-1 in the amount of $79,095.00.[23]   Claim No. 6-1 was filed in the amount of $227,914.00.[24]   The last claim, Claim No. 7-1, is in the amount of $2,084.65.[25]   The debtors objected to Claim Nos. 4-1, 5-1, 6-1 and 7-1 in the Shadywood case on June 23, 2020,[26] and again in the omnibus

---

[16] ECF No. 508, debtor entities have met their initial burden of proof as to the claims of Anna Williams and CD Homes, LLC; therefore, the burden of proof is on the claimants, Anna Williams and CD Homes.  The burden of proof is on the objecting party on the objections to claims of 1040 Hyde Park, LLC and the claim of Charles Foster.

[17] Claim 16-1 was amended on November 15, 2019 (Claim No. 16-2), and again on October 6, 2020 (Claim 16-3).

[18] In support of this claim, the claimant attached various invoices addressed to CD Homes and Anna Williams.  One invoice from CenterPoint was dated September 7, 2018 in the amount of $29.57 (post petition), two invoices from Reliant Energy were duplicates and were for 1647 Vassar.

[19]The claim included an invoice to Hampton Lane Builders LLC that was dated post-petition.

[20] "Documents supporting the claim are included in Claimant's trial exhibits as part of the substantial active litigation between the parties, and have been previously produced to Debtors as Claimant's Exhibits 1-14, Bates #CDH 000001-002369 with respect to the September 10, 2020 Hearing on Debtor's Motion to Compel CD Homes, LLC's Response to Discovery and Request for Sanctions [Doc. #564]."

[21] ECF No. 515.

[22] An invoice to CD Homes dated August 20, 2018 from Reliant is attached in support of the claim.

[23] In support of this claim, the first page of various promissory notes was attached. The first note is in the amount of $150,000.00 from HouTex to Jim D. Nored regarding construction at 3019 Ella Lee Lane, Houston, TX, the second is in the amount of $47,000.00 from HouTex to Jim D. Nored on the residence at 3 Thornblade Circle, Spring, TX, and the third is a note in the amount of $67,500.00 from 415 Shadywood, LLC to Jim D. Nored regarding 415 Shadywood, Houston, TX. There is also an assignment of the third promissory note from Jim D. Nored to CD Homes, LLC dated September 10, 2018, after the bankruptcies were filed.

[24]This claim attaches the first page of promissory notes. There are three separate notes, the first from HouTex to Jim D. Nored in the amount of $150,000.00, regarding 3019 Ella Lee Lane, Houston, TX (a duplicate of the promissory note attached to claim No. 5-1), the second from HouTex to Jim D. Nored in the amount of $132,000.00 regarding 15 Thornblade, and the third from 415 Shadywood to Jim D. Nored in the amount of $194,500.00 on 415 Shadywood, Houston, TX. There is an assignment attached regarding the third note only from Jim D. Nored to CD Homes, LLC dated September 10, 2018, after the bankruptcies were filed.

[25] In support of this claim, two invoices were attached from BMC dated June 19, 2018 and July 2, 2018. Both invoices are addressed to CD Homes, LLC.

[26] ECF No. 40.

objection,[27] and the amended omnibus objection.[28]

Two additional claims were filed by CD Homes in the Looscan case, Claim Nos. 3-1 and 4-1. Claim No. 3-1, was filed on December 26, 2018, in the amount of $80,224.76.[29] Claim No. 4-1 filed by CD Homes on December 26, 2018 is in the amount of $1,125.16.[30] The debtors objected to Claim Nos. 3-1, and 4-1 in the Looscan case on June 23, 2020,[31] and as part of the amended omnibus objection on June 23, 2020.[32]

The amended omnibus objection to these nine claims was filed in the jointly administered case by the debtors on June 23, 2020 (ECF No. 515) stating that CD Homes is responsible for the costs in the underlying claims pursuant to the contractual documents signed by the parties.

Claimant Hyde Park filed an unsecured claim in the amount of $606,346.00 on December 26, 2018 in the HouTex case (Claim No. 10-1).[33] A second unsecured claim was filed by Hyde Park on December 26, 2018 (Claim No. 11-1) in the amount of $140,480.00.[34]

Claim No. 8-2 was filed by Hyde Park on December 31, 2018 in the Shadywood case. The claim is an unsecured claim in the amount of $79,095.00.[35] This claim was amended on October 6, 2020 (Claim No. 8-3) to include complete copies of the promissory notes. Another claim was filed by Hyde Park on December 31, 2018 (Claim No. 9-2) in the amount of $227,914.00.[36] This claim was also amended on October 6, 2020 to include all pages of the promissory notes.

An omnibus objection to Claims Nos. 10-1, 11-1, 8-2 and 9-2 was filed in the jointly

---

[27] ECF 334.

[28] ECF No. 515.

[29] The claim included invoices from BMC addressed to CD Homes, LLC, dated from June 11, 2018 through August 22, 2018.

[30] This claim attached invoices addressed to CD Homes, LLC from Gainsborough Waste, Reliant and Gurrola Reprographics. The Gainsborough Waste invoices are dated June 25, 2018 and July 30, 2018, but were paid by CD Homes post-petition on September 23, 2018.

[31] ECF No. 33.

[32] ECF No. 515.

[33] The supporting documentation for the claim includes the first page of a promissory note from Lily Charles Homes, LLC to Jim D. Nored in the amount of $106,600.00 regarding the construction of a house at 4519 West Alabama, Houston, TX, and the first page of a promissory note from HouTex to Jim D. Nored in the amount of $339,000.00 dated May 13, 2013 for the construction of a house at 5325 Lynbrook, Houston, TX . There is also an assignment of the $339,000 note from Jim D. Nored to 1040 Hyde Park, LLC.

[34] This claim also included the first page of two promissory notes. The first one is a promissory note from HouTex to Jim D. Nored in the amount of $72,000.00. The note referenced construction of a house at 3054 Locke Lane, Houston, TX. The second one is a promissory note from HouTex to Jim D. Nored in the amount of $90,640.00, stating it is junior to another loan. This note references the same property as the second note in Claim No. 10-1, 5325 Lynbrook, Houston, TX. There is an amended assignment of the $90,640.00 promissory note from Jim D. Nored to 1040 Hyde Park, LLC.

[35] This claim includes an assignment of a promissory note from 415 Shadywood, LLC to Jim D. Nored in the amount of $67,500.00. The assignee is 1040 Hyde Park, LLC.

[36] The claimant attached an assignment from Jim D. Nored to 1040 Hyde Park, LLC of a promissory note from 415 Shadywood, LLC to Jim D. Nored.

administered case by the debtors on September 19, 2019[37] stating that there is insufficient documentation to show liability to the debtors and that CD Homes was responsible for the costs in the underlying claims pursuant to the contractual documents. Claims 8-3 and 9-3 included additional documentation.

Unsecured proof of claims were filed by Anna Williams in each of the three debtors' cases. Williams filed a claim in the amount of $14,032.45 on December 26, 2018 in the HouTex case (Claim No. 9-1).[38] Williams also filed an unsecured claim in the Shadywood case in the amount of $63,226.28 (Claim No. 3-1).[39]   The debtors filed an omnibus objection in the Shadywood case to the three claims on September 19, 2019.[40]

Williams filed another unsecured claim in the Looscan case on December 26, 2018 in the amount of $64,465.80 (Claim No. 5-1).[41]   The debtors filed an omnibus objection in the Looscan case to the three claims on September 19, 2019.[42]

An omnibus objection to these three claims was also filed in the jointly administered case by the debtors on August 14, 2019[43] stating that there is insufficient documentation to show liability of these claims by any of the debtors and that CD Homes was responsible for the costs in the underlying claims. In addition, the objection states that CD Homes was responsible for the amounts claimed as set forth in the contractual documents entered into between the debtors and CD Homes.

Charles C. Foster filed Claim No. 17-1 on December 31, 2018 in the amount of $3,649,386.24 as a contingent secured claim, and as an unsecured claim in the jointly consolidated case for payments made in 2017 and 2018 and distribution from the contractual relationship with CD Homes.  CD Homes objected to this claim and the two following claims stating that Charles C. Foster is an insider of the debtors, received preferential payments from the debtors, and that the claim is contingent.[44] Foster also filed Claim No. 10-1 in the Shadywood case in the amount of $694.164.72[45], and Claim No. 7-1 in the Looscan case in the amount of $941,212.14[46] asserting a contingent secured claim and an unsecured claim for payments made

---

[37] ECF No. 335.
[38] The documentation attached to the claim reflects a credit card in the name of Anna Williams paid for materials furnished for 5325 Lynnbrook Drive and 5431 Cedar Creek Drive in the amount of $14,032.45 on November 20, 2017 based on an attached invoice from Ferguson Enterprises, Inc. to CD Homes, LLC.
[39] The documentation attached to the claim contains various invoices from BMC West (dated from June 2, 2017 to December 10, 2017), Dal-Tile (dated September 6, 2017 and August 3, 2017), Elegant Additions (dated May 10, 2017 and May 24, 2017), Lighting Inc. (dated November 7, 2017 and November 30, 2017), and Perfection (dated July 6, 2017) all addressed to CD Homes, LLC for multiple properties, and credit card statements in the name of Anna Williams.
[40] ECF No. 20.
[41] The documentation in support of the claim consisted of invoices from BMC to CD Homes, LLC, (dated between May 15, 2017 and July 31, 2017), and one from Forja Designs LLC, (dated June 26, 2017). Williams' credit card statements were also attached.
[42] ECF No. 13.
[43] ECF No. 336.
[44] ECF No. 373.
[45] CD Homes objected to the claim at ECF No. 24 in the Shadywood case.
[46] CD Homes objected to the claim at ECF No. 17 in the Looscan case.

in 2018 and distribution from the contractual relationship with CD Homes with contentions similar to those in Claim No. 17-1.

## Findings of Facts

The Court adopts, or by omission rejects the proposed findings filed by counsel and additionally makes the following findings: Beginning in the mid 2000's Foster and Parker, via various business entities, began to build residential homes in the Houston area.  In 2013 and 2014, they entered into contracts, later described, for the business entities that are the debtors in this case.  Each of the debtors are special purpose entities set up to build one or more multimillion-dollar homes. Charles C. Foster and his wife, Lily Foster, are the members and managers of each of the debtors.  However, Foster is the de facto manager of all the debtor entities and Lily Foster has little or no involvement in the formation or management of the debtor entities.   The Court will use "Foster", the "Foster entities", "debtor" and "debtor entities" interchangeably.  CD Homes is a home construction company. Anna Williams ("Williams") is the purported owner of CD Homes. Anna Williams' husband, Robert Parker, is a purported consultant for CD Homes; however, he appears in most, but not all aspects to be its principal operator and manager.  Robert Parker was also the manager of the Foster entities until he was terminated in January 2018.  The Court will use "Parker", the "Parker entity" and "CD Homes" interchangeably. It will also use the term "Parker entities" to describe any entity controlled or owned by Parker and/or Williams.

During 2013 and 2014, each of the debtors entered into a set of contracts with CD Homes and each set included an Investor Agreement, a Construction Agreement and an Option Agreement (the "Investor Agreement").  The Investor Agreement establishes how the projects are financed, and how any proceeds are distributed.  The Investor Agreement also provided a construction commencement date and further provided that contractor would substantially complete the work on or before twelve months from such date, "with allowance for delays due to circumstances beyond its control including strikes, casualty, weather or materials unavailability."[47]

This Court adopts the findings of facts and conclusions of law from the hearing on May 28, 2020 as set forth in its order entered on June 26, 2020.[48]  At that time, the Court held that while the contracts have not been modified, they are often incomplete and poorly drafted. For example, they do not account for the contingency of possible delays in the construction of the homes.  The Court also previously held that the written Contracts between the debtors and CD Homes establish the contractual relationship between the debtors and CD Homes, except where

---

[47] Houtex exhibits 1-4 Contractor Agreements, Section 2. Time for Performance
Based upon a projected construction start date of "on or about June 30, 2015", the Looscan project's projected substantial completion date was "on or before twelve (12) months from such date".
Based upon a projected construction start date of "on or about September 30, 2013", the Lynbrook project's projected substantial completion date was "on or before twelve (12) months from such date".
Based upon a projected construction start date of "on or about January 31, 2015", the Shadywood project's projected substantial completion date was "on or before twelve (12) months from such date".
 Based upon a projected construction start date of "on or about June 30, 2014", the 3 Thornblade project's projected substantial completion date was "on or before twelve months from such date"
[48] ECF No. 517.

the contracts are incomplete, silent, or vague.

The bases for the various objections from Anna Williams, CD Homes and Hyde Park are reimbursements for the amounts paid by CD Homes or other entities owned by Anna Williams for materials or services at the various construction projects, or for notes purportedly issued to Jim Nored and thereafter assigned to CD Homes or Hyde Park.

The Court finds that the evidence at this trial was that the debtors did not cause any delays regarding the projects, instead it was CD Homes that caused the delays, and CD Homes is therefore liable for any costs associated with the delays.[49] This includes the claims of Anna Williams, CD Homes, and Hyde Park.

Robert Parker arranged for third party financings in the debtors' names and used these funds to pay costs.   Mr. Parker's testimony was contradictory regarding some of these transactions.  He testified that a promissory note to Jim D. Nored was paid off with interest, and that the same promissory note was rolled forward to fund additional projects.[50]  Notwithstanding the contracts, the parties agree that Foster also paid some of the construction costs beginning in 2018, and he is seeking reimbursement for those costs.

The Court finds that Jim D. Nored ("Nored") never actually loaned any money to the debtors, he may have provided funds to either Parker or CD Homes and then he signed whatever documents that Robert Parker gave him, including the promissory notes attached to the claims and assignments of those notes.  The Court finds Nored's and Parker's testimony regarding his claimed loaned funds to be inconsistent and not reliable.

### Claims filed by Anna Williams

Anna William's claims may have legitimacy because they are based potentially on her payment of the debts of others by the use of her personal credit cards.  However, the debtors are not liable for these debts as they were the result of construction delays caused by CD Homes. CD Homes is responsible for the payment of these debts, not the debtors.  Claim No. 9-1 in the amount of $14,032.45 Case No. 18-34658 is based on one invoice from Ferguson Enterprises, Inc. addressed to CD Homes dated September 14, 2017, almost a year prior to the filing of the bankruptcy. The invoice references both 5325 Lynbrook Drive and 5431 Cedar Creek Drive, without any accounting by Ms. Williams in the attachments to the claim as to the allocation of costs between the two projects, or whether 5431 Cedar Creek Drive was one of HouTex' projects.[51]   There was no evidence that these obligations were the result of delays caused by

---

[49] For example, Parker testified that the delays on the Looscan project included a three to four month delay waiting on tile.  Transcript, Day Two, page 52, lines 8-15.  Denton Chiles also testified to numerous construction delays due to vendors not receiving payments, inspection issues, material delays, design changes and workers not showing up due to failure by the builder to pay them.  Transcript, Day Three, direct testimony of Denton Chiles.

[50] Transcript Day Three, pages 164-166 and pages 174–175.

[51] Robert Parker testified that "Anna is requesting $2,836.04 but in order to tie it to a credit card payment, you must add in a charge for Shadywood so that if you look at 3643 and 3644, those total $10,603.52.  Those are Shadywood. If you look at 3641 and 3642, which are billed to Looscan, that's $2836.04.  If you add the two, you get $13,439.56 and that's the payment that was made on the Luxury Card for 3645.  We talked earlier how there could be payments for multiple properties.  This is an – with one credit card charge.  This is a perfect example."  Transcript Day One,

actions of the debtors, and the objection to this claim is sustained.

Claim No. 3-1 in the amount of $63,226.28 Case No. 18-34659 contains invoices all addressed to CD Homes dated a year prior to the filing of the bankruptcy, (4/10/17, 5/23/17, 6/27/17, 6/30/17, 6/2/17, 7/6/17, 7/31/17, 8/3/17, 8/10/17, 9/6/17, 11/7/17, 11/30/17, 12/10/17), without any allocation as to what costs are attributed to which projects, as the invoices reference multiple projects including projects not owned by the debtors located at 1260 S. Berlin Road and 3819 Asalone.  There was no evidence that these obligations were the result of delays caused by actions of the debtors, and the objection to this claim is sustained.

Claim No. 5-1 in the amount of $64,465.80 Case No. 18-34660 is based on invoices addressed to CD Homes, and one invoice addressed to Wynne Design Works dated a year prior to the filing of the bankruptcy (6/15/17, 6/26/17, 6/30/17, 7/31/17).  The invoices reference both Shadywood and Looscan, and there is no allocation of what portion should be attributed to just to Looscan.  There was no evidence regarding the relationship of Wynne Design Works and the debtors.  There was no evidence that these obligations were the result of delay caused by actions of the debtors, and the objection to this claim is sustained.

### Claims filed by CD Homes

Claim No. 12 in the amount of $14,011.55 Case No. 18-34658 contains one invoice from CenterPoint addressed to CD Homes in the amount of $29.57 that was paid post-petition, and two invoices from Reliant Energy for services at 1647 Vassar in the amount of $607.27 (one is a duplicate of the other).  These are disallowed.  Moreover, the invoice from Wynne Design Works addressed to HL Builders/Anna Williams is dated June 7, 2016 in the amount of $11,635.79, over two years prior to the filing of the bankruptcy.  There was no evidence regarding the relationship with HL Builders and the debtors, other than HL Builders is another entity owned by Anna Williams.  There is no evidence that the two-year delay was caused by the debtors, and the objection to this claim is sustained.

Claim No. 13 in the amount of $1,567.83 is filed as a priority unsecured claim under 11 U.S.C. § 503(a) claiming an administrative expense for a water bill for service at 3 Thornblade dated December 19, 2018, more than four months after the debtors filed bankruptcy.  The invoice is addressed to Hampton Lane Builders.  Robert Parker testified that Hampton Lane Builders was a separate entity controlled by his wife.[52]  He did not explain what the relationship between Hampton Lane Builders and the debtors was and why the debtors should be responsible for this administrative claim.  He also testified that it had not been paid by his wife.[53]  Therefore, the objection to this claim is sustained.

Claim No. 16-3 in the amount of $1,723,653.00 has no documentation, other than a one-

---

page 137, lines 7-16.
[52] Mr. Rubio "Okay.  and who is Hampton Lane Builders or – what is Hampton Lane builders, LLC?"  Mr. Parker "It's an LL – that's a limited liability company owned by Anna."  Transcript Day Three, page 173, lines 17-20.
[53] Mr. Parker's testimony "Okay.  I can't tell if it's been paid.  Doesn't look like it."  The Court "there is no proof of payment attached to the proof of claim."  Mr. Parker  "All right.  There you go then there's your answer."  Transcript Day One, page 180, lines 6-11.

page notice that the claim refers to multiple exhibits in this case.  The referenced documents indicate that the claim is for expenses incurred by CD Homes for the various projects.  However, Parker testified that the claim included interest and fees on bank loans, the bank loans and third-party lenders' amounts were then subtracted from that to ascertain the total amount that was funded by CD Homes.[54]   There is no evidence of any actual accounting in support of this amount, or that these obligations were the result of delays caused by the actions of the debtors, and the objection to this claim is sustained.

Claim No. 4 in the amount of $643.31 Case No. 18-34659 is based on an electric bill addressed to CD Homes dated August 3, 2018.  There was no evidence that this obligation was the result of delay caused by actions of the debtors, and the objection to this claim is sustained.

Robert Parker testified that Claim No. 5-1 Case No. 18-34659 filed by CD Homes in the amount of $79,095.00 was replaced by the filing of Claim No. 8-1 by Hyde Park, in Case No. 18-34659, and that Claim No. 5-1 should be disallowed.  He had no explanation as to why this claim was not withdrawn in December 2018, requiring the debtors' objection. Rather, Parker stated "One [claim] replaced the other. The Hyde Park [claim] replaced the CD Homes [claim]."[55] When questioned by the Court as to why Parker or counsel failed to withdraw these claims prior to the beginning of the hearing, no sufficient response was given. Rather, counsel for Parker stated "It's an oversight. Clearly the Hyde Park replaced the CD Homes claim."[56] Based on the duplicative nature of this claim, the objection to this claim is sustained.

Robert Parker testified that Claim No. 6-1 filed by CD Homes in the amount of $227,914.00 was replaced by the filing of Claim No. 9-1 by Hyde Park in Case No. 18-34659, and that Claim No. 6-1 should be disallowed.[57]  Similar to his testimony regarding Claim No. 5, Parker again had no explanation as to why this claim was not withdrawn in December 2018, other than his counsel's explanation of an oversight as set forth above.  The objection to this claim is sustained.

Robert Parker testified that Claim No. 7-1 filed by CD Homes in Case No. 18-34659 in the amount of $2,084.65 for invoices by BMC Texas Sales has no evidence of payment attached to it and he does not know if it was ever paid by CD Homes.[58]  BMC Texas Sales filed Claim No. 3-1 in 18-34658 and attached the same invoices stating they were unpaid.  Parker failed to explain why it was not withdrawn after the debtors' objection based on it being a duplicate claim.  The objection to this claim is sustained.

Robert Parker testified that Claim No. 3-1 filed by CD Homes in Case No. 18-34660 in the amount of $80,224.76 is a duplicate of Claim No. 4 filed by BMC Texas Sales, LLC in Case

---

[54] Transcript Day Three, page 1235 lines 8-13.
[55] Transcript Day Three, page 178, lines 11-12.
[56] Transcript, page 179, lines 20-21.
[57] Transcript Day Three, page 178.
[58] Mr. Parker stated that "I certainly have personal knowledge that it was delivered.  I don't recall about the payment."  Transcript, pages 176, line 25 and page 17, line 1; and Transcript Day Three, "I don't -- didn't know if this is the same where we're being sued by BMC and we wanted to be sure that one or the other of us get paid so again I'm not certain."  pages 180-181.

No. 18-34658.  In similar nature to the above referenced claims, Parker testified that CD Homes did not pay this claim, but felt compelled to file this claim, and failed to withdraw it after the debtor's objection based on it being a duplicate claim.[59]  The objection to this claim is sustained.

Claim No. 4 in the amount of $1,125.16 filed by CD Homes in Case No. 18-34660 is based on invoices addressed to CD Homes dated from June 25, 2018 to August 1, 2018, of which $794.52 invoiced by Gainsborough Waste was paid post-petition on September 23, 2018.  CD Homes cannot recover for a post-petition expense.  Moreover, there was no evidence that these obligations were the result of delay caused by the debtors and the objection to this claim is sustained.

### Claims filed by Hyde Park

Claim No. 10-1 in the amount of $606,346.00 Case No. 18-34658 contains the first pages only of various promissory notes, the first of them being a promissory note from Lily Charles Homes, LLC to Jim D. Nored of $106,500.00, with a maturity date of December 20, 2013 regarding 4519 W. Alabama, and a settlement statement dated May 14, 2013 on the 4519 W. Alabama St. Property, as well as a "Payment Reconciliation" dated May 21, 2013 stating that the $106,000.00 note was cancelled.  The claim also included a promissory note from HouTex to Jim D. Nored in the amount of $339,000.00 dated May 13, 2013 regarding the 5325 Lynbrook property, and a settlement statement on Lynbrook dated May 16, 2013.  There is also an assignment from Jim D. Nored of the $339,000.00 note to Hyde Park dated May 25, 2018. Nored testified that he gave Parker money at least 10 years ago, but not for this specific note. Nored also testified that he received no consideration for this assignment, that he signed whatever documents were provided by Robert Parker.[60]  The objection to this claim is sustained.

Claim No. 11-1 in the amount of $140,480.00 is based on the first page of various promissory notes from HouTex to Jim D. Nored, and an assignment of only one of the notes in the amount of $90,640.00 from Jim D. Nored to 1040 Hyde Park, LLC dated May 25, 2018. Nored testified that he gave Parker money at least 10 years ago, but not for this specific note. Nored also testified that he received no consideration for this assignment, that he signed whatever documents were provided by Robert Parker. The objection to this claim is sustained.

Claim No. 8-3 in the amount of $79,095.00 is based on promissory notes to Jim D. Nored.  There is one assignment of one of the notes in the amount of $67,500.00 from Jim D. Nored to Hyde Park dated December 31, 2018.[61]  However, that same note had previously been assigned from Mr. Nored to CD Homes on September 10, 2018.  There is no additional assignment from CD Homes back to Jim D. Nored.  The promissory notes were all to Jim D. Nored and not to Hyde Park.  There was no evidence that the debtors received any consideration for this note and the objection to this claim is sustained.

---

[59] Mr. Parker testified "I don't think it has yet been paid for because of the dispute between BMC and ourselves. This claim was filed to be sure that it's taken care of whether the funds go straight to BMC, comes to us and then to BMC."  Transcript, page 177, lines 21-24.
[60] Transcript Day Five, pages 4-19.
[61] Parker testified that the assignment from Mr. Nored was done for no additional consideration.  Transcript Day Three, page 154, lines 5-10.

Claim No. 9-3 in the amount of $227,914.00 is based on promissory notes. Again, there is an assignment of one of those notes in the amount of $194,500.00 from Jim D. Nored to 1040 Hyde Park dated December 31, 2018, but that same note had previously been assigned from Mr. Nored to CD Homes on September 10, 2018. The promissory notes were all made out to Jim D. Nored, there is no intervening assignment from CD Homes back to Mr. Nored. There was no evidence that the debtors received any consideration for this note and the objection to this claim is sustained.

### Claims filed by Charles Foster

CD Homes filed objections to claims filed by Charles Foster. Based on the aforementioned sustained objections to claims filed by CD Homes, Parker, and Williams, and the resulting disallowance of claims filed by CD Homes, Parker, and Williams, those parties now lack standing to object to Foster's filed claims. Therefore, the objections to Claim No. 17 in Case No. 18-34658, Claim No. 10 in Case No. 18-34659, and Claim No. 7 in Case No. 18-34660 are overruled based on the lack of standing of the objecting party.

Alternatively, CD Homes failed to provide any evidence in support of their objections to the claims filed by Charles Foster. CD Homes objection is based on allegations that Mr. Foster received funds as a preference, that his claim should be subordinated as he is an insider and that they are contingent claims. However, the only evidence presented is that Charles Foster guaranteed the $1.6 million Spirit of Texas bank loan which funded portions of the required equity for some of the projects, that he paid some of the construction costs for the projects, and that he signed or guaranteed other bank loans for the projects.

Therefore, Claim No. 17 in Case No. 18-34658 in the amount of $3,649,386.24, Claim No. 10 in Case No. 18-34659 in the amount of $694,164.72, and Claim No. 7 in Case No. 18-34660 in the amount of $941,212.14 are allowed, and the objections are overruled.

Robert Parker managed the retirement savings of Nored and had an interest in any profits he obtained for Nored. In controlling those funds, Parker acted on both sides of the purported transactions between the Debtors and Nored. Parker did not disclose his interest in the transactions to Charles Foster or the debtors.

By rolling the purported obligations of Nored over to new properties, Parker knowingly and intentionally created the false impression in the debtors that the early projects that CD Homes and the debtors built were profitable and successful. This misrepresentation induced the debtors to enter into the notes with Nored.

Robert Parker, as agent for CD Homes and Hyde Park misrepresented the claims of these entities. Claim No. 5 and Claim No. 8 in the Shadywood bankruptcy case are based on the same underlying note, despite conflicting assignments. Claim No. 6 and Claim No. 9 in the Shadywood bankruptcy case are also identical. Parker declared under penalty of perjury that both were correct despite the logical impossibility.

## Conclusions of Law

The Bankruptcy Code provides that a creditor's claim is deemed allowed, unless a party in interest objects.[62]   To have standing to object, the party "must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action, and redressable by a favorable ruling."[63]   A "party in interest" is anyone with a legally protected interest that could be affected by a bankruptcy proceeding.[64]   Since CD Homes' claims have been disallowed, it no longer has a legally protected interest in this proceeding, and does not have standing to object to the claims filed by Charles Foster.  Moreover, the objections filed by CD Homes are not clear from the face of the pleading as required by Local Bankruptcy Rule 3007-1.[65]

During the claims allowance process, the burden of proof rests on different parties at different times.[66]   Under Rule 3001(f), a properly filed proof of claim is prima facie evidence of the validity of the claim.[67]   A claimant who has complied with Bankruptcy Rule 3001 may rest on its proof of claim and refrain from presenting any additional evidence at the hearing on an objection. The claimant will prevail unless the objecting party produces evidence of equal or greater probative force to that of the proof of claim to refute some aspect of the proof of claim.[68]  Upon claimant's compliance, the burden of proof then shifts to the objecting party to produce "evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."[69]   If the objector does come forward with such probative evidence, the burden of proof then shifts to the party who would bear the burden respecting this claim outside of bankruptcy in the contested matter from that point forward.[70]

Although based on the contractual relationship between the parties, none of the claims filed by Anna Williams, CD Homes or Hyde Park contained copies of the underlying contractual documents that they urged supported their claims.  Even if they had been attached, as set forth in this Court's previous order, under Texas law, where a written agreement is incomplete, parol evidence is admissible to show collateral agreements, but only insofar as the evidence does not contradict those terms of the writing that are complete and unambiguous.[71]

---

[62] 11 U.S.C. 502(a).

[63] *Horne v. Flores*, 557 U.S. 433, 445, 129 S.Ct. 2579, 174 L.Ed.2d 406 2009).

[64] *In re Mechanicsburg Fitness, Inc.* (592 B.R. 798 (Bankr. M.D. Penn. 2018) c*iting Global Indus. Tech., Inc.* 645 F.3d 201, 210 (3rd Cir. 2011).

[65] LR 3007-1 states that "[T]he legal and factual basis for the objection must be clear from the face of the pleading."

[66] *In re Leverett*, 378 B.R. 793,a798–99 (Bankr. E.D. Tex. 2007) (*citing In re Woodmere Inv'rs. Ltd. P'ship*, 178 B.R. 346, 354–55 (Bankr. S.D.N.Y. 1995)).

[67] *In re Gilbreath*, 395 B.R. 356, 361 (Bankr. S.D. Tex. 2008), as amended (Nov. 19, 2008).

[68] I*n re Gulley*, 436 B.R. 878, 893 (Bankr. N.D. Tex. 2010).

[69] *In re Leverett*, 378 B.R. at 799 (*citing Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. BAP 2000)).

[70] *In re Bates*, 570 B.R. 757, 763–64 (Bankr. W.D. Tex. 2017)(*citing Leverett, id.* at 799 (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 26, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000)).

[71] *Jack H. Brown Inc. v. Toys "R" Us, Inc.*, 906 F.2d 169, 175 (5th Cir. 1990).

13 / 14

Additionally, under Texas law, a contractor is entitled to recover its damages from an owner upon proof that: i) its work was delayed or hindered; ii) it suffered damages because of the delay or hindrance; and iii) the owner was responsible for the act or omission which caused the delay or hindrance.[72] Anna Williams, CD Homes and Hyde Park failed in their burden of proof to show that the owner was responsible for any delays in these projects.  In fact, the evidence showed that it was CD Homes that was responsible for delays.

**Conclusion**

For the reasons so stated it is **ORDERED** that claim objections to Proof of Claim Nos. 9, 10, 11, 12, 13, and 16 in the jointly administered case are sustained, and these claims are disallowed.  The objections to Proof of Claim Nos. 3, 4, 5, 6, 7, 8, and 9 in the Shadywood case are sustained, and these claims are disallowed.  The claim objections to Proof of Claim Nos. 3, 4, 5 in the Looscan case are sustained and these claims are disallowed.  The claim objections to Claim No. 17 in the jointly administered case, Claim No. 10 in Shadywood, and claim no. 7 in Looscan are overruled, and those claims are allowed.

**SO ORDERED.**

SIGNED: 12/18/2020.

_____
**Jeffrey P. Norman**
**United States Bankruptcy Judge**

---

[72] *City of Houston v. F.R. Ball Construction Co.*, 570 S.W.2d 75, 77 (Tex. Civ. App. – Houston [14th Dist.] 1978, writ ref'd n.r.e.).

14 / 14