UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 18-34658 |
| | § | |
| HOUTEX BUILDERS, LLC, *et al.*, | § | Chapter 11 |
| | § | |
| DEBTORS. | § | Jointly Administered |

## MOTION FOR STRUCTURED DISMISSAL

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**A HEARING ON THIS MOTION WILL BE HELD JUNE 9, 2021, AT 11:00 AM, BEFORE THE HON. JEFF NORMAN. THE HEARING WILL BE CONDUCTED REMOTELY. AUDIO PARTICIPATION IS BY TELEPHONE AT 832-917-1510 AND CONFERENCE CODE 174086. VIDEO IS BY GOTOMEETING WITH CODE "JUDGENORMAN".**

**THE MOVANTS INTEND TO SEEK EXPEDITED CONSIDERATION OF THIS MOTION. IF THE COURT CONSIDERS THIS MOTION ON AN EXPEDITED BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

Debtors Houtex Builders, LLC ("**Houtex**"), 2203 Looscan Lane, LLC ("**Looscan**"), and 415 Shadywood, LLC ("**Shadywood**" and, collectively with Houtex and Looscan, the "**Debtors**"), and Charles C. Foster ("**Foster**") jointly file this Motion for Structured Dismissal ("**Motion**").

HL Builders LLC and Fuqua & Associates, PC, as its claim-assignee ("**HL**"); Diamond McCarthy LLP ("**DM**"), Parkins Lee & Rubio LLP ("**PLR**"); Jones Murray & Beatty LLP ("**JMB**"); and Schmuck, Smith, Tees & Company, P.C. ("**SST**" and collectively with the Debtors, Foster, HL, DM, PLR and JMB, the "**Parties**" and each a "**Party**") consent to the proposed resolution and the proposed agreed order.

## Summary

1. The Debtors are administratively insolvent. This proposed structured dismissal, to which all of the Parties consent, will bring to an end a complicated case with extensive tentacles that has resulted in significant amount of litigation and fees to sort out during the case. Unfortunately for the estates, the proceeds of assets sales and litigation were insufficient to provide recovery to unsecured creditors, let alone payment in full to administrative claimants, who were in large part the professionals who were able to marshal the facts and present the evidence to the Court so that the estates would be administered.

2. The administrative claimants have spent long hours discussing and negotiating a solution that is consistent with the Bankruptcy Code and the case law. The Parties submit that a structured dismissal, in which this Court authorizes the treatment of certain DIP claims and disbursement of the remaining cash to the administrative claimants in the amounts set forth herein is in the best interest of the Debtors' estates. The global resolution is further meant to address any potential issues raised by the Debtors' accounting to the U.S. Trustee.

## The Debtors' Accounting

3. On April 16, 2021, Debtors' counsel filed its *Emergency Motion of Counsel for the Debtors for a Status Conference (a) to Apprise the Court of Certain Post-Petition Payments made to Parkins Lee &Rubio LLP and (b) to Discuss Issues Relating to Debtors' Motion to Establish DIP Claim Amounts*. Dkt. 742.

4. That day, the Court entered its *Order Setting Hearing*, which ordered the Debtors and Debtors' counsel to "report or account to the United States Trustee as the United States Trustee may require; file with the Court any such accounting or report that is provided to the United States Trustee, which shall contain any relevant information concerning the transactions described within the motion, plus any other transactions that may be discovered during the accounting process." Dkt. 743.

5. The Debtors immediately instructed their accountants to prepare a full accounting of all transactions of the Debtors during these cases.

6. The complete accounting was delivered to the U.S. Trustee's trial attorney in this case, Jana Whitworth, on Friday, April 30. The accounting has been filed at Dkt. 746.

7. As identified in the accounting, Foster deposited and Debtors disbursed from the Debtors bank accounts amounts that were outside the ambit of the various DIP financing orders.

8. To fully address any potential concern with these payments, Foster agrees as part of this global resolution to take an offset in the full amount of these transactions against his own super-priority administrative and other administrative claims, thus negating any potential economic impact of the disbursements on the Debtors' estate.

9. During the accounting process, the Debtors and Foster further disclosed to the U.S. Trustee an apparent error regarding a certificate of deposit at Independent Bank. The CD was purchased by Foster with his own money to secure a personal line of credit. For a time, however, the CD was in the name of HouTex. This error was corrected post-petition. The CD was never listed as an asset on any of the Debtors' schedules, however, at one point, Independent Bank shared an account

3

"screenshot" with Debtors' counsel that indicated the CD was in HouTex's name. This led the Debtors erroneously to include that asset in their proposed plan.

### Foster's Superprioirty Claims

10. Foster extended post-petition credit to each of the Debtors. *See Final Order Authorizing Debtors to Obtain Credit Pursuant to Second Funding Commitment Letter*, Dkt. 175 ("**DIP Order**").

11. Foster was granted superpriority administrative claims and liens on unencumbered assets for the amounts advanced. Dkt. 175 ¶¶ 3-4.

12. To HouTex, Foster was authorized to advance $7,593.25 under an interim order, $35,653.00 under the prior commitment letter, and $209,645.00 under the Second Commitment letter. Advances are subject to 3% interest. These terms are outlined in the Second Commitment Letter attached to the DIP Order at Dkt. 175 at 6-7.

13. The Debtors' accounting confirms that Foster advanced the maximum amounts under the Order of $252,891.26. The interest through April 30, 2021, is calculated in the accounting at $17,077.94 for a total superpriority administrative claim against HouTex of $269,969.20.

14. The accounting further details disbursements from the HouTex estate of $156,911.54. This amount is in excess of the amount authorized under the DIP Order. Foster has agreed to deduct from his allowed superpriority claim of $269,969.20, $156,911.54, leaving him a net superiority administrative claim of $113,057.66.

15. With respect to Looscan and Shadywood, Foster has superpriority administrative claims of at least $72,032.34 and $79,528.62, respectively, plus interest. The accounting identifies an amount of $2,982.85 for Looscan as an amount in excess of what Foster was authorized under the DIP Order. Foster has agreed to deduct this amount from his superpriority administrative claims, leaving Foster with administrative claims of $69,049.49 and $79,528.62, respectively, plus interest against the estates of Looscan and Shadywood.

16. The accounting also identifies payments in the amount of $2,266.00 and $2,266.00 from Looscan and Shadywood, respectively, to SST, which have not yet been approved by a fee application.

## Proposed Distributions on Structured Dismissal

17. The Parties agree that this resolution, settlement and release among each other is subject to Court approval, and all Parties retain and reserve all rights pending entry of an order of this Court, which must become final on or before June 30, 2021.

18. None of the Parties is aware of any other administrative claimant.

19. The Debtors have $234,844.17 in the HouTex DIP account as of May 7, 2021. Shadywood and Looscan have no cash.

20. None of the Debtors have any other assets with any value. Once the Debtors sold the real estate, the Debtors' remaining asset of potential value was in litigation against the Parker entities. The Debtors transferred those claims to Spirit of Texas Bank in an approved settlement. Dkt. 709.

21. The Debtors collectively face over $2 million in administrative claims.

22. The Parties each have potential grounds to object to the administrative claims of the other Parties. The Parties seek to avoid the costs and risks of litigating those objections. Although the merits of the administrative claims vary, none of the Parties believe there is a reasonable scenario in which allowed administrative claims are less than the cash on hand.

23. The Parties agree to the following final distributions:

   a. **Diamond McCarthy LLP**, which asserts administrative claims for professional fees and expenses of over $500,000, a majority of which has been approved on an interim basis and paid, will receive $40,000 of cash from the Houtex estate.

b. **HL Builders LLC**, through its claim-assignee Fuqua & Associates, P.C., which asserts an administrative claim for $82,312.85, plus interest, as awarded in *In re HL Builders, LLC*, Case No. 19-32825 (Bankr. S.D. Tex.) will receive $50,000 in cash from the Houtex estate.

c. **U.S. Trustee & Clerk of the Court**, are owed quarterly fees and filing fees that the Debtors estimate at $2,500, will be paid in full, in cash from the Houtex estate.

d. **Schmuck, Smith, Tees & Company, P.C.**, have continued to provide accounting services to the debtors, will be paid in full fees and expenses that the Debtors estimate at $5,000 in cash from the Houtex estate.

e. **Charles C. Foster**, will receive on account of his net superpriority administrative claim, a cash distribution of $113,057.66. Of this amount, Foster shall simultaneously assign $105,000 to **Parkins Lee & Rubio LLP**, in satisfaction of their legal fees and expenses in connection with these cases and Foster's individual obligations to Parkins Lee & Rubio LLP under the terms of their engagement letter appearing at Dkt. 700-1 as approved by this Court at Dkt 713.

f. **Charles C. Foster**, who asserts an administrative claim separate and apart from his superiority administrative claim, shall receive any remaining amount in the HouTex DIP account after the distributions listed in a-e, above, and any fees of SST, the Court or the U.S. Trustee in excess of the estimates above.

24. To ensure finality in these cases, the Parties have also agreed to grant each other full, final and mutual releases for all claims arising from or related to these cases as part of the structured dismissal; provided, however, that these releases do not impair any claims transferred to Spirit of Texas

Bank, or any claims that may exist between any of the Parties that do not arise from or relate to these cases.

25. The Parties shall be required to implement the Structured Dismissal on the first day after the Order approving this Motion becomes a final order. The Parties shall close the settlement and complete all of the required transfers as set forth in paragraph 23 above, within 5 business days after the Order becomes a final order.

26. Each Party was and is represented by competent counsel who advised them in connection with these cases and this proposed settlement.

27. As these payments are settlement of controversies, the requirement of Parties who may traditionally be required to file fee or other type of applications is waived, and previously awarded and paid interim fees would be deemed approved on a final basis.

## Basis for Relief

28. "Structured dismissals occur regularly in this and other bankruptcy courts. . . . If appropriate notice is given and the process is fair and does not illegally or unfairly trample on the rights of parties, the proposal should be approved." *In re Buffet Partners, L.P.*, 2014 WL 3735804 at *2, Case No. 14-30699 (Bankr. N.D. Tex. July 28, 2014).

29. Section 1112(b) authorizes the Court to convert or dismiss a chapter 11 case, "whichever is in the best interests of creditors and the estate, for cause . . ." *Id.* (quoting § 1112). Section 305(a) similarly authorizes the Court to dismiss or suspend a case "at any time if . . . the interests of creditors and the debtor would be better served by such dismissal or suspension."

30. Section 349(b) sets the general rule that dismissal should restore the parties to their pre-petition condition, but also authorizes the Court "for cause, [to] order[] otherwise."

31. Structured dismissals pass muster as long as they do not alter the parties' rights without their consent or violate the absolute priority rule. *See, e.g., Czyewski v. Jevic Holding Corp.*, 137 S.Ct. 973,

7

985 (2017) (rejecting a structured dismissal that violated the absolute priority rule but declining to hold that structured dismissals were not authorized under the Bankruptcy Code).

32. Here, administrative insolvency leaves only the administrative claimants as economic parties-in-interest, and they all support and agree to the proposed structured dismissal. Therefore, no parties' rights are altered without their notice and agreement.

33. Because all of the assets have been administered, there is no value to the Debtors' estates in a conversion to chapter 7, which would only add a layer of administrative expense and further dilute the recovery of the administrative claimants.

34. This resolution is in the best interest of the creditors and the estate because it efficiently disposes of the few remaining assets without increasing legal costs or risks for the parties.

35. If the Court finds that a structured dismissal is not appropriate, the Court has the authority to approve this resolution among the Parties as a compromise under Bankruptcy Rule 9019(a). As noted above, the settlement was negotiated at arm's length amount the economic parties-in-interest, there will have been notice and a hearing, and the resolution is fair and equitable.

## Conclusion

36. The Debtors and Foster ask the Court to approve the proposed settlement and structured dismissal set forth in the proposed order, which is agreed as to form and substance by the Parties.

Respectfully submitted, May 7, 2021.

| PARKINS LEE & RUBIO LLP | JONES MURRAY & BEATTY LLP |
|---|---|
| */s/ Charles M. Rubio* <br> Charles M. Rubio P.C. <br> Pennzoil Place <br> 700 Milam, Suite 1300 <br> Houston, Texas 77002 <br> Phone: (212) 763-3331 <br> Email: crubio@parkinslee.com | */s/ Christopher R. Murray* <br> Christopher R. Murray <br> TBN 24081057; SDOT 1305742 <br> 4119 Montrose Suite 230 <br> Houston, TX 77006 <br> 832-529-1999 (Office) <br> chris@jmbllp.com |
| *Counsel to the Debtors* | *Counsel to Charles Foster* |

**Certificate of Service**

I certify that his pleading was served through the Court's ECF system on all parties registered to receive such service on May 7, 2021.

/s/ Christopher R. Murray